# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND
### *Southern Division*

| | |
|---|---|
| ROBERT ROTHMAN,<br>450 Knights Run Avenue<br>Unit 2002<br>Tampa, FL 33602<br><br>and<br><br>DWIGHT C. SCHAR,<br>550 South Ocean Blvd.<br>Palm Beach, FL 33480<br><br>and<br><br>FREDERICK W. SMITH,<br>649 Sweetbriar Road<br>Memphis, TN 38120<br><br>          Plaintiffs,<br><br>  – against –<br><br>DANIEL SNYDER,<br>11900 River Road<br>Potomac, MD 20854<br>Montgomery County<br><br>          Defendant. | Case No. ___PJM 20 CV 3290___<br><br>~<br><br>**~~FILED UNDER SEAL~~**<br>**PARTIALLY REDACTED**<br><br><br>**COMPLAINT FOR PERMANENT<br>INJUNCTION AND OTHER<br>EQUITABLE RELIEF** |

Plaintiffs Robert Rothman, Dwight C. Schar, and Frederick W. Smith (**"Plaintiffs"**), by and through their undersigned counsel, bring this Complaint against Defendant Daniel Snyder (**"Mr. Snyder"**) and allege as follows:

## NATURE OF THE CASE

1.    Plaintiffs are stockholders of Washington Football Inc. (**"WFI"** or the **"Company"**), which owns the National Football League (**"NFL"**) team franchise in the

Washington, D.C. area.[1]   Plaintiffs together own 40.499% of WFI, while Mr. Snyder – WFI's principal owner and Chief Executive Officer – owns 40.459% of WFI.   Since 2003, each Plaintiff has owned at least 10% of WFI.

2.     WFI's governing Second Amended Stockholders Agreement (the "**Stockholders Agreement**") expressly recognizes Plaintiffs' rights to sell their WFI stock.   The Stockholders Agreement also provides that in the event one or more of the Plaintiffs receives a purchase offer, the other stockholders shall have the right, exercisable within fifteen (15) days of a written notice of intention to sell from the Plaintiff(s), to elect to purchase the Plaintiff(s)' shares proposed to be · sold at a purchase price equal to (and on other terms substantially comparable to) that specified in the notice of intention to sell.

3.     On October 16, 2020, Plaintiffs received a *bona fide* proposal to purchase their shares.

4.

5.     On October 23, 2020, Plaintiffs, by their counsel, provided WFI and the other stockholders of WFI with notice of Plaintiffs' intention to sell their WFI stock on the terms

---

[1] Until recently, the Washington NFL football franchise team was named the Washington Redskins.  In July 2020, the franchise announced that the team temporarily will be called the Washington Football Team, until a new team name and team logo are determined.

proposed in the October 16 Letter of Intent. On November 5, 2020, Plaintiffs and Mr. Snyder agreed that the 15-day deadline for responding to the notice would be extended until November 12, 2020.

6. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

7. ████████████████████

████████████████████████████████████████ Mr. Snyder

had now purportedly "elected to exercise his Right of First Refusal ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

8. █████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████████████████████████

9. █████████████████████████████████

████████████████████████████████████
████████

10. █████████████████████████████████

███████████████████████████

11. █████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████

12.    Mr. Snyder's position also threatens to disrupt an orderly process – including, among other things, necessary due diligence – for Plaintiffs to proceed to sell their WFI stock pursuant to the October 16 Letter of Intent. ███████████████████

████████████████████████████████████

████████████████████████████████████

███████ Mr. Snyder's conduct thus threatens to irreparably deny Plaintiffs the time-sensitive

opportunity to sell their WFI stock in response to the proposal set forth in the October 16 Letter of Intent.

13.     Plaintiffs hereby exercise their express contractual right under the Stockholders Agreement to seek provisional or ancillary remedies in this Court, including declaratory and injunctive relief.  While the Stockholders Agreement includes an arbitration provision, it also expressly provides: *"Nothing in this arbitration provision shall be deemed to . . . (ii) limit the right of any of the parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief."*

14.     Specifically, Plaintiffs seek an injunction (i) precluding Mr. Snyder from exercising any rights of first refusal under the Stockholders Agreement on the basis ███████████████

███████████████████████████████████████████████████████████

███████████ (ii) precluding Mr. Snyder from purportedly exercising his right of first refusal

████████████████████████████████████████████████████████████

████████████████████████████████████████ and (iii) precluding Mr.

Snyder, ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████

15.     Plaintiffs satisfy all of the criteria for injunctive relief: they have a strong likelihood of success on their allegations for declaratory judgment (First Claim for Relief) and breach of contract (Second Claim for Relief); if not enjoined, Mr. Snyder's efforts to exercise an improper right of first refusal will irreparably harm Plaintiffs, because it will disrupt their limited-time opportunity to pursue and accept the purchase offer embodied in the October 16 Letter of Intent;

the balance of equities heavily favors Plaintiffs, because the proper enforcement of contract terms agreed by Mr. Snyder is not inequitable, while it would be highly inequitable for Plaintiffs to be denied their contractual right to sell their WFI stock; and the public interest is served by the proper enforcement of contracts, and ensuring the orderly transition of ownership ████████████

████████████████████ of a prominent NFL team.

## THE PARTIES

**Plaintiffs**

16.     Plaintiff Robert Rothman is a citizen and resident of Florida. Mr. Rothman owns 15.168% of the shares of WFI. He purchased 10.163% of WFI directly from WFI in 2003 and then purchased an additional 5.005% from a third party in 2005. Mr. Rothman is also the Chairman and Chief Executive Officer of Black Diamond Capital, a private investment company that he formed in 1999.

17.     Plaintiff Dwight C. Schar is a citizen and resident of Florida. Mr. Schar owns 15.168% of the shares of WFI. He purchased 10.163% of WFI directly from WFI in 2003 and then purchased an additional 5.005% from a third party in 2005. Mr. Schar is also Chairman of the Board of NVR, Inc., a publicly traded company.

18.     Plaintiff Frederick W. Smith is a citizen and resident of Tennessee. Mr. Smith owns 10.163% of the shares of WFI. He purchased his WFI shares directly from WFI in 2003. Mr. Smith is also the founder, chairman, president and Chief Executive Officer of FedEx Corporation, a $69-billion global transportation, business services, and logistics company.

**Defendant**

19.     Defendant Daniel Snyder is a citizen and resident of Montgomery County, Maryland. Mr. Snyder purchased WFI in 1999 for $800 million. The Washington Football

Team's website touts him as the "owner" of the team (*see* https://www.redskins.com/team/front-office-roster/dan-snyder). Since 2003, Mr. Snyder has owned 40.459% of the shares of WFI. Mr. Snyder is and has been at all relevant times the Chief Executive Officer and Chairman of the Board of WFI. Mr. Snyder is the only stockholder of WFI who holds voting shares.

**Relevant Non-Parties**

20.    WFI is a corporation organized and existing under the laws of Maryland, with its principal place of business in Maryland, as reflected in the corporate documents and the records filed with the State of Maryland. WFI is the corporate entity that owns the Washington Football Team.

21.    The other stockholders of WFI are Arlette Snyder (Mr. Snyder's mother), and Michele Snyder (Mr. Snyder's sister), who respectively hold 6.489% and 12.552% of WFI's shares.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Complaint seeks solely injunctive relief; however, the value of the injunctive relief sought exceeds $75,000, as it concerns the potential sale of stock

23.    This Court has personal jurisdiction over Mr. Snyder because he is a resident of Maryland.

24.    Venue is proper in this District under 28 U.S.C. § 1391(a) because (i) Mr. Snyder resides in this District; and (ii) a substantial portion of the conduct at issue herein occurred in this District.

7

25. While the Stockholders Agreement includes an arbitration clause, it expressly provides: *"Nothing in this arbitration provision shall be deemed to . . . (ii) limit the right of any of the parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief. Any of the parties hereto may obtain such ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of any action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies."* Stockholders Agreement § 17(b).

26. The Stockholders Agreement also provides that: "The parties acknowledge that the remedy at law for breach of the provisions of this Agreement will be inadequate and that, in addition to any other remedy any party may have, it shall be entitled to an injunction restraining any breach or threatened breach and/or a decree of specific performance, without any bond or other security being required and without the necessity of proving actual damages." *Id.* § 17(c).

## FACTUAL BACKGROUND

### A. Plaintiffs Seek to Sell Their Ownership Stakes in WFI.

27. In 2019, Plaintiffs began considering a sale of their stock in WFI, and in August 2019, they collectively retained consultants to assist with a potential sale. On May 14, 2020, Plaintiffs notified Mr. Snyder of their continued interest in collectively selling their respective ownership stakes in WFI.

28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8

**B.    The Governing Stockholders Agreement**

29.    WFI's stockholders – including Mr. Snyder and Plaintiffs – entered into the Stockholders Agreement in 2005.

30.    Under the Stockholders Agreement, Mr. Snyder is the sole "Voting Stockholder," the one individual who holds all of WFI's Voting Stock. Stockholders Agreement §§ 1(e), 5(a).

31.    Under the Stockholders Agreement, each of the Plaintiffs is an "Additional Stockholder," which is "a person or entity (other than a Founding Stockholder) that after July 14, 1999 becomes a holder of Stock . . . ." *Id.* § 1(b); *see also id.* Ex. A ("Schedule of Stockholders" listing the names and ownership percentages of each WFI stockholder). Plaintiffs have no voting stock.

32.    Section 7 of the Stockholder Agreement concerns "Voluntary Sale of Stock: Rights of First Refusal." It expressly recognizes the rights of Plaintiffs, as Stockholders, to sell their WFI stock. Section 7(a) states:

> If a Stockholder (a "Selling Stockholder") proposes to effect a Sale of any shares of Stock (other than as permitted by Section 6(c)), then such Selling Stockholder shall give to the Company a written notice (a "Notice of Intention to Sell") setting forth in reasonable detail the terms and conditions of such proposed transaction, including the identity of the proposed purchaser of such shares and enclosing any agreements, draft agreements or letters of intent relating to such proposed Sale. The Company shall deliver such notice of Intention to Sell to the other Stockholders (the "Other Stockholders") promptly upon relief thereof.

33.    Section 7(b) in turn describes the "rights of first refusal" that "shall apply with respect to a proposed Sale of Non-Voting Stock by a Non-Voting Stockholder," including Plaintiffs. Section 7(b)(i) provides that any exercise of a right of first refusal must be *"at a purchase price equal to (and on other terms substantially comparable to) that specified in the Notice of Intention to Sell."* (emphasis added).

9

34.     And Section 7(b)(v) provides, in relevant part, that "If (A) the Other Stockholders do not elect to purchase *all of the Non-Voting Stock that is the subject of the Notice of Intention to Sell* . . . such elections *will be void* and the Selling Stockholder may consummate the sale of all of the Non-Voting Stock proposed to be sold to the proposed third party purchaser pursuant to the terms set forth in the Notice of Intention to Sell" (emphasis added).[2]

### C.     Plaintiffs Receive a *Bona Fide* Offer to Purchase Their WFI Stock

35.     On October 16, 2020, Plaintiffs received a written proposal (the October 16 Letter of Intent) regarding the acquisition of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The October 16 Letter stated that the prospective purchasers are highly enthusiastic about the opportunity to acquire ▮▮▮▮▮▮▮▮▮▮▮▮

36.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2]   While Section 7(b)(i) states that Mr. Snyder can exercise his right of first refusal by "elect[ing] to purchase all or part of the shares of Non-Voting Stock proposed to be sold by the Selling Stockholder," this refers only to the first stage of the right of first refusal process. ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



38.    The October 16 Letter of Intent also states that the proposal is subject to

satisfactory completion of confirmatory due diligence, which will include, among other items,

diligence of a business, financial, legal and tax nature.

39.    The October 16 Letter of Intent sets forth in Paragraph F the terms of a period for

exclusive negotiations:

> Upon the Seller's execution of this Proposal, the Sellers covenant and agree, for the
> benefit of the Purchasers, that during the Exclusivity Period (as defined below) the
> Sellers will negotiate exclusively with the Purchasers and will not, and will cause
> its Representatives not to, directly or indirectly, solicit offers for, initiate, continue,
> encourage, negotiate, discuss or enter into any agreement, understanding or
> commitment regarding a possible transaction involving an investment, debt or
> equity, in WFI, the sale, license or other disposition of all or Cany material part of
> WFI or all or any material portion of WFI's assets or issued or unissued capital
> stock, whether by merger, recapitalization, arrangement, amalgamation purchase of
> shares, purchase of assets, take-over bid or otherwise, in each case with any party
> other than the Purchasers, or provide or disclose any information regarding WFI,
> the Sellers or any of its assets in connection with such a transaction or afford access
> to the employees, properties, books, contracts or records of WFI in connection with
> such a transaction, in each case to any party other than the Purchasers or otherwise
> knowingly facilitate any effort relating to such a transaction. Upon execution of
> this Proposal, the Sellers will, and will cause their Representatives to, cease any
> discussions or negotiations with respect or, or that might knowingly lead to, any
> such transaction. During the Exclusivity Period and for the purpose of ensuring the
> interests of both parties to enter into a transaction prior to the expiration of the
> Exclusivity Period are and remain aligned during such period, the Sellers shall
> notify the Purchasers promptly if any offer or proposal (without need to disclose
> the name of the offering party) for any such transaction is received by the Sellers

or any of its Representatives during the Exclusivity Period or if any such information is requested from, or any such negotiations or discussions are sought to be initiated or continued with, the Sellers or any of their Representatives, indicating the specific terms of such inquiry, proposal or offer. "Exclusivity Period" means the period beginning on the date hereof and continuing for thirty (30) days following the execution of this Proposal by the Sellers. The business day's advance written notice to the other; provided that, the Exclusivity Period shall automatically be extended for subsequent on week periods in the event neither party has terminated the Exclusivity Period and the Sellers may not deliver any such termination notice prior to seven (7) business days following the execution of this Proposal unless the Purchasers have ceased active, good faith negotiations with the Sellers.

40.    The October 16 Letter of Intent also explains:



41.

**D.    Plaintiffs Transmit a Notice of Intention to Sell to Mr. Snyder and the Other Stockholders of WFI**

42.    On October 23, 2020, Plaintiffs, by their counsel, transmitted to Mr. Snyder and

WFI a formal Notice of Intention to Sell WFI Stock, which attached the October 16 Letter of

Intent





43.

44.

45.     Plaintiffs' counsel responded on October 29, 2020: "We agree to the time period (November 9th is, as we discussed, the deadline to respond to the 15 days set forth in the Notice), but if you do not believe it is a valid Notice we would rather know sooner than later (and certainly would strongly dispute the same as it meets all of the requirements set forth in section 7 of the Stockholders Agreement).

46.     On or about November 3, 2020, Plaintiffs' counsel spoke with Mr. Snyder's counsel. During the conversation, Mr. Snyder's counsel proposed that the parties agree to extend the expiration of the 15-day period for Mr. Snyder and the other WFI stockholders to respond to the Notice of Intention to Sell.

14



47. On November 3, 2020, following the aforementioned conversation among counsel, Mr. Snyder's counsel transmitted an email to Plaintiffs' counsel stating, among other things, that the parties had agreed to "extend the time to respond to the Notice of Intent to Sell by three days from November 9 to 11:59 pm on November 12, 2020," and requesting that Plaintiffs "acknowledge by return email." Plaintiffs' counsel did so acknowledge by return email that same day, and Mr. Snyder's counsel then thanked Plaintiffs' counsel for that acknowledgement.

48. Then on November 9, 2020, Mr. Snyder's counsel notified Plaintiffs' counsel by letter that Mr. Snyder and the other WFI stockholders considered the Notice of Intent to Sell dated October 23, 2020, to be deficient in certain respects.

49.



50. And Mr. Snyder's counsel concluded his November 9 letter by stating: ███████

██████████████████████████ Mr. Snyder has elected to exercise his Right of First Refusal

51.

52. Furthermore, this asserted exercise of Mr. Snyder's right of first refusal also failed

to comply with Section 7(b)(i) of the Stockholders Agreement, which requires that any exercise

of the right of first refusal be "at a purchase price equal to *(and on other terms substantially*

*comparable to)* that specified in the Notice of Intention to Sell." ███████████████

53.     On November 10, 2020, Mr. Snyder's counsel made several requests to speak with Plaintiffs' counsel by phone. When Plaintiffs' counsel called Mr. Snyder's counsel in response, Mr. Snyder's counsel made clear that in the event Plaintiffs did not accept Mr. Snyder's approach to the Notice of Intent to Sell and the purported exercise of Mr. Snyder's right of first refusal, Mr. Snyder would proceed to bring a claim on these issues – and that Mr. Snyder's counsel had the claim ready to file.

54.     There is thus now a ripe dispute between Plaintiffs and Mr. Snyder regarding the proper interpretation of Section 7 of the Stockholders Agreement, Section 7's application to Plaintiffs' joint Notice of Intention to Sell, Section 7's application to Mr. Snyder's response

55.     Among other things, Mr. Snyder's position, and his conduct flowing from, threaten Plaintiffs with the irreparable loss of the opportunity to accept and consummate the time-sensitive proposal set forth in the October 16 Letter of Intent

**FIRST CLAIM FOR INJUNCTIVE RELIEF**
**For Declaratory Judgment Regarding Section 7 of the Stockholders Agreement, and Defendant's Purported Exercise of His Rights of First Refusal Pursuant Thereto.**

56.     Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 55 as if fully set forth herein.

57.     Pursuant to 28 U.S.C. § 2201, this Court has the authority to declare the rights and other legal relations of any interested party seeking such declaration.

17

58.    Mr. Snyder has improperly asserted that, pursuant to Section 7 of the Stockholders

Agreement, (i) he may unilaterally ███████████████████████████████████████████

████████████████████████████████████████████████████████████ (ii) he may

exercise his right of first-refusal by ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████ and (iii) he may exercise his right of first refusal by ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

59.    In fact, █████ notice by Plaintiffs to Mr. Snyder of their intention to sell their WFI

stock █████████████ in response to the proposal in the October 16 Letter of Intent to purchase

████████████████████████████████████████████████████████████████████████

████████████████████████████████ is fully consistent with Section 7 of

the Stockholders Agreement.

60.    There exists an actual controversy of a practicable issue between Plaintiffs and Mr.

Snyder that is within the jurisdiction of this Court involving the rights and liabilities of the parties

pursuant to Section 7 of the Stockholders Agreement, which controversy may be determined by a

declaratory judgement of this Court.

61.    Plaintiffs are very likely to "succeed on the merits" of their declaratory judgment

claim against Mr. Snyder.

62.    Plaintiffs are also threatened with imminent irreparable injury because Mr. Snyder's

asserted interpretation of Section 7 of the Stockholders Agreement, and his conduct based thereon,

threatens to irreparably deny Plaintiffs the time-sensitive opportunity to sell their WFI stock in response to the proposal set forth in the October 16 Letter of Intent.

63.     In addition, Section 17(c) of the Stockholders Agreement provides: "The parties acknowledge that the remedy at law for breach of the provisions of this Agreement will be inadequate and that, in addition to any other remedy any party may have, it shall be entitled to an injunction restraining any breach of threatened breach and/or a decree of specific performance without . . . the necessity of proving actual damages." Stockholders Agreement § 17(c).

64.     The balance of equities heavily favors Plaintiffs and WFI, because Mr. Snyder will suffer no loss through enforcement of contract terms to which he agreed in the Stockholders Agreement (thus meaning there will be no diminution of his own rights), while in the absence of injunctive relief Plaintiffs would be threatened with the irretrievable loss of the time-sensitive opportunity to sell their WFI stock in response to the proposal set forth in the October 16 Letter of Intent.

65.     The public interest also will be served by an injunction, because the public has an interest in the enforcement of contracts. The public in the District of Columbia-Maryland-Virginia region also has interest in particular in the proper enforcement of contracts regarding ownership of the Washington Football Team – and this is all the more so here, ███████████████████

████████████████████████████████████████████████████████████████

███████████████

66.     Plaintiffs thus seek, and are entitled to an injunction

        (i)     precluding Mr. Snyder from exercising any rights of first refusal under the Stockholders Agreement ████████████████████████████████

████████████████████████████████████████████████████████████████

19

    (ii)    precluding Mr. Snyder from purportedly exercising his right of first refusal

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

    (iii)    precluding Mr. Snyder, on the basis ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████

67.    As noted *supra*, the Stockholders Agreement specifically gives Plaintiffs the right to seek injunctive relief in "court," notwithstanding a general arbitration provision in the Stockholders Agreement. Indeed, the strength of that right to seek injunctive relief in court is emphasized by the express provision in the Stockholders Agreement that such a claim for injunctive relief may be brought in court before, during or after the pendency of any "arbitration proceeding" – specifically, a party may ask the court to provide "provisional or ancillary remedies such as (but not limited to) *injunctive relief*...before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement (restraining any breach or threatened breach and/or a decree of specific performance)." Stockholders Agreement § 17 (emphasis added).

68.    Based on the aforementioned rights, this Court should declare that Mr. Snyder has improperly asserted that, pursuant to Section 7 of the Stockholders Agreement,

    (i)    ███████████████████████████████████████████████

███████████████████████████████████████████████

Case 8:20-cv-03290-PJM Document 1 SEALED Filed 11/13/20 Page 21 of 26



(ii)

(iii)

69.    Based on the aforementioned rights, this Court should declare that

## SECOND CLAIM FOR INJUNCTIVE RELIEF
### For Breach of Section 7 of the Stockholders Agreement, and Defendant's Purported Exercise of His Rights of First Refusal Pursuant Thereto.

70.    Mr. Snyder, Plaintiffs, and WFI are parties to the Stockholders Agreement.

71.    At all times relevant hereto, Plaintiffs have fully performed all duties and obligations required by the Stockholders Agreement.

72.    As detailed *supra*, Section 7 of the Stockholders Agreement provides Mr. Snyder with the ability to exercise a specific right of first refusal ("Agreement Right of First Refusal").

73.    As detailed *supra*, Mr. Snyder unlawfully purported to exercise the Agreement Right of First Refusal by

21



("Snyder's Improper Notice of Election").

74. Snyder's Improper Notice of Election is not within Mr. Snyder's rights under Section 7 of the Stockholders Agreement.

75. Snyder's Improper Notice of Election constitutes a breach of Section 7 of the Stockholders Agreement.

76. Plaintiffs are very likely to "succeed on the merits" of their breach of contract claim against Mr. Snyder.

77. Plaintiffs are also threatened with imminent irreparable injury because Mr. Snyder's breach of Section 7 of the Stockholders Agreement, and his conduct based thereon, threatens to irreparably deny Plaintiffs the time-sensitive opportunity to sell their WFI stock in response to the proposal set forth in the October 16 Letter of Intent.

78. In addition, Section 17(c) of the Stockholders Agreement provides: "The parties acknowledge that the remedy at law for breach of the provisions of this Agreement will be inadequate and that, in addition to any other remedy any party may have, it shall be entitled to an injunction restraining any breach of threatened breach and/or a decree of specific performance without . . . the necessity of proving actual damages." Stockholders Agreement § 17(c).

79.     The balance of equities heavily favors Plaintiffs and WFI, because Mr. Snyder will suffer no loss through enforcement of contract terms to which he agreed in the Stockholders Agreement (thus meaning there will be no diminution of his own rights), while in the absence of injunctive relief Plaintiffs would be threatened with the irretrievable loss of the time-sensitive opportunity to sell their WFI stock in response to the proposal set forth in the October 16 Letter of Intent.

80.     The public interest also will be served by an injunction, because the public has an interest in the enforcement of contracts. The public in the District of Columbia-Maryland-Virginia region also has interest in particular in the proper enforcement of contracts regarding ownership of the Washington Football Team – and this is all the more so here, ██████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████.

81.     As noted *supra*, the Stockholders Agreement specifically gives Plaintiffs the right to seek injunctive relief in "court," notwithstanding a general arbitration provision in the Stockholders Agreement. Indeed, the strength of that right to seek injunctive relief in court is emphasized by the express provision in the Stockholders Agreement that such a claim for injunctive relief may be brought in court before, during or after the pendency of any "arbitration proceeding" – specifically, a party may ask the court to provide "provisional or ancillary remedies such as (but not limited to) *injunctive relief*...before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement (restraining any breach or threatened breach and/or a decree of specific performance)." Stockholders Agreement § 17 (emphasis added).

**PRAYER FOR RELIEF ON PLAINTIFFS' FIRST AND SECOND CLAIMS FOR INJUNCTIVE RELIEF**

82.     **WHEREFORE,** Plaintiffs respectfully demand:

A. That this Court determine and adjudicate the rights and liabilities of the parties pursuant to Section 7 of the Stockholders Agreement;

B. That this Court find and declare that Mr. Snyder has improperly asserted that, pursuant to Section 7 of the Stockholders Agreement, (i) he may unilaterally ███████████████████████

██████████████████████████████████████████████████████████████████

██████████ (ii) he may exercise his right of first refusal by ████████████████████

██████████████████████████████████████████████████

██████████████████ and (iii) he may exercise his right of first refusal by ████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████

C.  That this Court also find and declare that ██████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████

D. That this Court find that Mr. Snyder's purported exercise of his right of first refusal --

*by which Mr. Snyder* ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

24

████████████████████████████  ████  █████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ constituted a breach of Section 7 of the Stockholders Agreement.

    E. That this Court enter an injunction:

        (i) precluding Mr. Snyder from exercising any rights of first refusal under the Stockholders Agreement on the basis of ██████████████████████████████

███████████████████████████████████████████████████████

        (ii) precluding Mr. Snyder from purportedly exercising his right of first refusal by

███████████████████████████████████████████████████████

█████████████████████████████████████████

        (iii) precluding Mr. Snyder, ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████

    F. That this Court grant such other and further relief as the Court deems just and proper.

Dated: November 13, 2020
      Bethesda, MD

Respectfully submitted,

Adam L. Van Grack (D. Md. Bar No. 17976)
Theodore B. Kiviat  (D. Md. Bar No. 29019)
Longman & Van Grack, LLC
10411 Motor City Drive, Suite 750
Bethesda, MD 20817
(301) 291-5027 (tel.)
(301) 291-5028 (fax)
avangrack@lvglawfirm.com
tkiviat@lvglawfirm.com


Stephen R. Neuwirth (pro hac vice pending)
Julia M. Beskin (pro hac vice pending)
Jeremy Baldoni (pro hac vice pending)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (tel.)
(212) 849-7100 (fax)
stephenneuwirth@quinnemanuel.com
juliabeskin@quinnemanuel.com
jeremybadloni@quinnemanuel.com


Jonathan Cooper (D. Md. Bar No. 21345)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, NW
Suite 900
Washington, DC  20005
(202) 538-8000 (tel.)
(202) 538-8100 (fax)
jonathancooper@quinnemanuel.com

*Attorneys for Plaintiffs*