## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### *Southern Division*

ROBERT ROTHMAN et al.

              Plaintiffs,

  – against –

DANIEL SNYDER

              Defendant,

**FILED UNDER SEAL**

Case No. PJM-20-3290

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Preliminary Statement .................................................................................................... 1

Background ..................................................................................................................... 4

    A.    The Parties ................................................................................................. 4

    B.    Relevant Non-Parties ................................................................................. 5

    C.    Plaintiffs' Rights to Sell their Stock under the Stockholders Agreement .............. 5

    D.    Plaintiffs Receive a *Bona Fide* Offer to Purchase Their WFI Stock ..................... 6

    E.    Plaintiffs Transmit a Notice of Intention to Sell to Mr. Snyder and the Other Stockholders of WFI ................................................................................. 9

    F.    Mr. Snyder Obstructs Plaintiffs' Sale of their Shares ............................................. 11

    G.    Procedural history. ................................................................................. 13

Legal Standard ............................................................................................................. 14

Argument ..................................................................................................................... 15

I.    A TRO and Preliminary Injunction Are Warranted .......................................................... 15

    A.    Plaintiffs will likely succeed on the merits. ..................................................... 15

    B.    Plaintiffs will suffer irreparable harm absent a TRO and preliminary injunction. 26

    C.    The balance of equities favors granting preliminary relief. ................................. 29

    D.    Injunctive relief serves the public interest. ..................................................... 31

II.    No Bond Is Warranted. ................................................................................. 33

Conclusion ................................................................................................................... 34

**TABLE OF AUTHORITIES**

**Page**

CASES

*Asa v. Pictometry Int'l Corp.,*
  757 F. Supp. 2d 238 (W.D.N.Y. 2010) ............................................................. 34

*Carbide & Carbon Chemicals Corp. v. U.S. Indus. Chemicals,*
  140 F.2d 47 (4th Cir. 1944) ............................................................................ 26

*Charlotte Mecklenburg Bd. of Educ. v. 34 ED, LLC,*
  2020 WL 3971921 (W.D.N.C. July 14, 2020) ............................... 23, 30, 32, 33

*Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.,*
  807 F.3d 553 (4th Cir. 2015) .......................................................................... 25

*Clay v. Chase Bank USA, N.A.,*
  2011 WL 1066570 (D. Md. Mar. 21, 2011) ..................................................... 15

*Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.,*
  No. 19 CIV. 8692 (AKH), 2019 WL 5257995 (S.D.N.Y. Oct. 17, 2019) ..................... 3, 26

*Ellicott Mach. Corp. v. Modern Welding Co.,*
  502 F.2d 178 (4th Cir. 1974) ..................................................................... 26, 32

*Gen. Parts Distrib., LLC v. St. Clair,*
  2011 WL 6296746 (D. Md. Dec. 14, 2011) ..................................................... 14

*Grand Metro. P.L.C. v. Butterworth,*
  1988 WL 1045191 (N.D. Fla. Nov. 28, 1988) ................................................. 33

*Heist v. E. Sav. Bank, FSB,*
  165 Md. App. 144, 884 A.2d 1224 (2005) ....................................................... 22

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
  174 F.3d 411 (4th Cir. 1999) .......................................................................... 14

*Hyde Park Partners, L.P. v. Connolly,*
  839 F.2d 837 (1st Cir. 1988) ................................................................. 3, 26, 27

*ICENY USA, LLC v. M&M's, LLC,*
  421 F. Supp. 3d 204 (D. Md. 2019) ..................................................... 16, 32, 33

*In re Microsoft Corp. Antitrust Litig.,*
  333 F.3d 517 (4th Cir. 2003) .......................................................................... 14

*James & Jackson, LLC v. Willie Gary, LLC,*
  906 A.2d 76 (Del. 2006) ................................................................................. 24

*Kansas City S. v. Grupo TMM*, S.A.,
    2003 WL 22659332 (Del. Ch. Nov. 4, 2003) ................................................................. 29

*Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*,
    514 F. App'x 365 (4th Cir. 2013) ............................................................................. 22

*Maages Auditorium v. Prince George's Cty.*,
    4 F. Supp. 3d 752 (D. Md. 2014) ............................................................................. 14

*Martin-Marietta Corp. v. Bendix Corp.*
    690 F.2d 558 (6th Cir. 1982) .......................................................................... 26, 27

*Maryland Dep't of Human Resources v. U.S. Dep't of Agric.*,
    976 F.2d 1462 (1992); ............................................................................................ 34

*Miranda v. Barr*,
    2020 WL 2794488 (D. Md. May 29, 2020) ............................................................. 14

*Morgan Keegan & Co. v. Louise Silverman Tr.*,
    2012 WL 113400 (D. Md. Jan. 12, 2012) ................................................. 22, 30, 33, 34

*Morgan Keegan & Co. v. Silverman*,
    706 F.3d 562 (4th Cir. 2013) .................................................................................... 23

*Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co.*,
    140 F.3d 459 (2d Cir.1998) ..................................................................................... 22

*NaturaLawn of Am., Inc. v. W. Grp., LLC*,
    484 F. Supp. 2d 392 (D. Md. 2007) ......................................................................... 33

*Paradyme Mgmt. v. Curto*,
    2017 WL 11458384 (D. Md. Dec. 14, 2017) ........................................................... 14

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) .............................................................................. 14, 34

*Precigen, Inc. v. Shuyuan Zhang*,
    2020 WL 3060398 (D. Md. June 9, 2020) ............................................................... 31

*Ray v. William G. Eurice & Bros.*,
    201 Md. 115 93 A.2d 272 (1952) ............................................................................ 16

*Remedy Intelligent Staffing, Inc. v. Metro. Employment Corp. of Am.*,
    2008 WL 5156609 (D. Mass. Dec. 9, 2008) ............................................................ 24

*Rescuecom Corp. v. Chumley*,
    522 F. Supp. 2d 429 (N.D.N.Y. 2007) ..................................................................... 23

*Roe v. Dep't of Defense*,
    947 F.3d 207 (4th Cir. 2020) .................................................................................... 14

*San Francisco Real Estate Investors v. Real Estate Investors of America*,
    701 F.2d 1000 (1st Cir. 1983 ................................................................................... 27

*Seery v. DePuy Orthopaedics, Inc.*,
    2014 WL 12609706 (D.S.C. Dec. 31, 2014) ................................................................. 23

*Slice v. Carozza Properties, Inc.*,
    215 Md. 357 137 A.2d 687 (1958) ........................................................................... 16

*Solar Eclipse Inv. Fund XXXV, LLC v. $5,000,000.00 U.S. Dollars Deposited to IOLTA*
    *Account of the Strauss Law Firm*,
    2019 WL 193075 (D.S.C. Apr. 30, 2019) ................................................................. 34

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    --- F. Supp. 3d ----, 2020 WL 1844791 (E.D. Va. 2020) ................................... 30, 32

*Stockade Companies, LLC v. Kelly Rest. Grp., LLC*,
    2017 WL 1968328 (W.D. Tex. May 11, 2017) ................................................... 24, 25

*Taylor v. NationsBank, N.A.*,
    365 Md. 166 (2001) ................................................................................................. 16

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) ...................................................................................... 29

*U.S. Dep't of Labor v. Wolf Run Mining Co.*,
    452 F.3d 275 (4th Cir. 2006) ................................................................................... 14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) .................................................................................................... 14

## OTHER AUTHORITIES

11A Wright & Miller, *Federal Practice & Procedure*
    § 2954 (3d ed. Apr. 2020 update) ........................................................................... 34

## STATUTES

28 U.S.C. § 2201 .............................................................................................................. 15

## RULES

Fed. R. Civ. P. 65(c) ....................................................................................................... 34

Fed. R. Civ. P. 65(a) ....................................................................................................... 14

Fed. R. Civ. P. 65(a)(1) ................................................................................................... 14

Fed. R. Civ. P. 65(b) ....................................................................................................... 14

Fed. R. Civ. P. 65(b)(1) ................................................................................................... 14

# PRELIMINARY STATEMENT

Plaintiffs Robert Rothman, Dwight C. Schar, and Frederick W. Smith ("**Plaintiffs**") respectfully submit this memorandum of law in support of their motion for a temporary restraining order and preliminary injunction.

Plaintiffs are stockholders of Washington Football, Inc. ("**WFI**"), which owns the National Football League ("**NFL**") team franchise in the Washington, D.C. area. Plaintiffs together own 40.499% of WFI.

Defendant Daniel Snyder ("**Mr. Snyder**") is the principal owner and CEO of WFI. Mr. Snyder owns 40.459% of WFI. Ex. 1 at B-1.[1]

WFI's governing Second Amended Stockholders Agreement (the "**Stockholders Agreement**") expressly recognizes Plaintiffs' right to sell their WFI stock. The Stockholders Agreement also provides that in the event one or more of the Plaintiffs receives a purchase offer, the other stockholders shall have the right, exercisable within fifteen (15) days of a written notice of intention to sell from the Plaintiff(s), to elect to purchase the Plaintiff(s)' shares proposed to be sold at a purchase price equal to (*and* on other terms substantially comparable to) that specified in the notice of intention to sell.

On October 16, 2020, Plaintiffs received a *bona fide* proposal to purchase their shares. Ex. 3; Rothman Decl. ¶ 10. The letter transmitting the proposal (the "**Letter of Intent**") made clear

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[1] All Exhibits cited herein are attached to the Declaration of Julia M. Beskin, dated November 16, 2020. Also submitted herewith is the Declaration of David Koche and the Declaration of Robert Rothman.

█████████████████████████████████████████████████

██

On October 23, 2020, Plaintiffs provided WFI and the other stockholders of WFI with notice of Plaintiffs' intention to sell their WFI stock on the terms proposed in the Letter of Intent. Ex. 4. Plaintiffs and Mr. Snyder subsequently agreed to extend the 15-day deadline for responding to the notice until November 12, 2020. Ex. 7.

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ Ex. 8 at 3.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

Absent injunctive relief, Plaintiffs will be irreparably harmed by the loss of their bargained-for contractual rights to ████████████████████████████ and through Mr. Snyder's brazen disruption of Plaintiffs' time-sensitive opportunity to sell their WFI stock in response to the proposal set forth in the Letter of Intent.

It is well-established that "sales of business assets are sensitive, depending on timing, market conditions, and other dynamics. A transaction that is lost is hard to replace. If [a party] is permitted to . . . prevent a sale, another equivalent transaction may become speculative." *Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*, 2019 WL 5257995, at *7 (S.D.N.Y. Oct. 17, 2019). *Cf. Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 853–54 (1st Cir. 1988) (denial of the opportunity to consummate a time-sensitive tender offer constitutes irreparable harm).

Accordingly, Plaintiffs respectfully request that the Court enter a temporary restraining order, and thereafter a preliminary injunction: (1) precluding Mr. Snyder from exercising any rights of first refusal under the Stockholders Agreement ███████████████████████ ████████████████████████████████████████████████████████████ ████████ (2) precluding Mr. Snyder from purportedly exercising his right of first refusal █ ████████████████████████████████████████████████████████████ ████████████████████████████████████ and (3) precluding Mr. Snyder, ████████████████████████████████████████████████████████████ ██████████████████ from impeding Plaintiffs' efforts ███████████████████ █████████████████████████████ by impeding reasonable business, financial, legal and tax due diligence of WFI.

Furthermore, while this lawsuit was commenced in this Court on Friday, November 13, 2020, at approximately 9:50 am, Mr. Snyder later that day filed in a pending arbitration between the parties – an arbitration that until that point had not covered any issues in this lawsuit – a motion seeking injunctive relief on the same issues before this Court. For the reasons discussed herein, jurisdiction over Plaintiffs' claims is proper in this Court, and it is improper for Mr. Snyder to seek to arbitrate injunctive relief on the same claims in the parties' pending arbitration. Among other

things, the arbitration provision in the parties' Stockholders Agreement expressly and unambiguously states:

> "Nothing in this arbitration provision shall be deemed to . . . (ii) limit the right of any of the parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief. Any of the parties hereto may obtain such ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of any action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies."

Stockholders Agreement (Ex. 1) § 17(b). Plaintiffs therefore also seek a temporary restraining order, and thereafter a preliminary injunction, enjoining Mr. Snyder from pursuing in arbitration his claims for injunctive relief on the same issues now pending before this Court.

## BACKGROUND

### A.      The Parties

Plaintiff Robert Rothman is a citizen and resident of Florida. Mr. Rothman owns 15.168% of the shares of WFI. Rothman Decl. ¶ 3. He purchased 10.163% of WFI directly from WFI in 2003 and then purchased an additional 5.005% from a third party in 2005. *Id.* Mr. Rothman is also the Chairman and Chief Executive Officer of Black Diamond Capital, a private investment company that he formed in 1999. *Id.*

Plaintiff Dwight C. Schar is a citizen and resident of Florida. Mr. Schar owns 15.168% of the shares of WFI. *Id.* ¶ 4. He purchased 10.163% of WFI directly from WFI in 2003 and then purchased an additional 5.005% from a third party in 2005. *Id.* Mr. Schar is also Chairman of the Board of NVR, Inc., a publicly traded company. *Id.*

Plaintiff Frederick W. Smith is a citizen and resident of Tennessee. Mr. Smith owns 10.163% of the shares of WFI. He purchased his WFI shares directly from WFI in 2003. *Id.* ¶ 5.

Mr. Smith is also the founder, chairman, and Chief Executive Officer of FedEx Corporation, a $69-billion global transportation, business services, and logistics company. *Id.*

Defendant Daniel Snyder is a citizen and resident of Montgomery County, Maryland. *Id.* ¶ 6. Mr. Snyder purchased WFI in 1999 for $800 million. Since 2003, Mr. Snyder has owned 40.459% of the shares of WFI. *Id.* Mr. Snyder is and has been at all relevant times the principal owner, chief executive officer and chair of the board of WFI. *Id.*

### B. Relevant Non-Parties

WFI is a corporation organized and existing under the laws of Maryland, with its principal place of business in Maryland, as reflected in the corporate documents and the records filed with the State of Maryland. *See* Ex. 1 at 1; Rothman Decl. ¶ 5. WFI is the corporate entity that owns the Washington Football Team. *Id.* § 2(a); Rothman Decl. ¶ 5.

The other stockholders of WFI are Arlette Snyder (Mr. Snyder's mother), and Michele Snyder (Mr. Snyder's sister), who respectively hold 6.489% and 12.552% of WFI's shares. *See id.* at B-2; Rothman Decl. ¶ 7.

### C. Plaintiffs' Rights to Sell their Stock under the Stockholders Agreement

In 2005, WFI's stockholders entered into the Second Amended and Restated Stockholders Agreement. Ex. 1 at 1; Rothman Decl. ¶ 8. This Stockholders Agreement remains operative today. As defined in the Stockholders Agreement, Mr. Snyder is the sole "Voting Stockholder," the one individual who holds all of WFI's Voting Stock. *See* Ex. 1 §§ 1(e), 5(a).

Under the Stockholders Agreement, each of the Plaintiffs is an "Additional Stockholder," which is "a person or entity (other than a Founding Stockholder) that after July 14, 1999 becomes a holder of Stock . . . ." *Id.* § 1(b); *see also id.* at Ex. A ("Schedule of Stockholders" listing the names and ownership percentages of each WFI stockholder). Plaintiffs have no Voting Stock.

Section 7 of the Stockholder Agreement concerns "Voluntary Sale of Stock: Rights of First Refusal." It expressly recognizes the rights of Plaintiffs, as Stockholders, to sell their WFI stock. Section 7(a) states:

> If a Stockholder (a "Selling Stockholder") proposes to effect a Sale of any shares of Stock (other than as permitted by Section 6(c)), then such Selling Stockholder shall give to the Company a written notice (a "Notice of Intention to Sell") setting forth in reasonable detail the terms and conditions of such proposed transaction, including the identity of the proposed purchaser of such shares and enclosing any agreements, draft agreements or letters of intent relating to such proposed Sale. The Company shall deliver such notice of Intention to Sell to the other Stockholders (the "Other Stockholders") promptly upon relief thereof.

Section 7(b) in turn describes the "rights of first refusal" that "shall apply with respect to a proposed Sale of Non-Voting Stock by a Non-Voting Stockholder," including Plaintiffs. Section 7(b)(i) provides that any exercise of a right of first refusal must be "at a purchase price equal to (and on other terms substantially comparable to) that specified in the Notice of Intention to Sell."

Section 7(b)(v) provides, in relevant part: "If (A) the Other Stockholders do not elect to purchase all of the Non-Voting Stock that is the subject of the Notice of Intention to Sell . . . such elections will be void and the Selling Stockholder may consummate the sale of all of the Non-Voting Stock proposed to be sold to the proposed third party purchaser pursuant to the terms set forth in the Notice of Intention to Sell."

### D. Plaintiffs Receive a *Bona Fide* Offer to Purchase Their WFI Stock

On October 16, 2020, Plaintiffs received a written proposal (the Letter of Intent) regarding the acquisition ███████████████████████████████ Ex. 3. The Letter stated that the prospective purchasers are highly enthusiastic about the opportunity to acquire ████████ ███████████████ *Id.* at 3.

███████████████████████████████████████████

███████████████████████████████████████████

[REDACTED]

The Letter of Intent also states that the proposal is subject to satisfactory completion of confirmatory due diligence, which will include, among other items, diligence of a business, financial, legal and tax nature. *Id.*

The Letter of Intent sets forth in Paragraph F the terms of a period for exclusive negotiations between Plaintiffs and the potential purchasers (the "**Exclusive Negotiation Period**") that expires on November 25, 2020:

> Upon the Seller's execution of this Proposal, the Sellers covenant and agree, for the benefit of the Purchasers, that during the Exclusivity Period (as defined below) the Sellers will negotiate exclusively with the Purchasers and will not, and will cause its Representatives not to, directly or indirectly, solicit offers for, initiate, continue, encourage, negotiate, discuss or enter into any agreement, understanding or commitment regarding a possible transaction involving an investment, debt or equity, in WFI, the sale, license or other disposition of all or any material part of WFI or all or any material portion of WFI's assets or issued or unissued capital stock, whether by merger, recapitalization, arrangement, amalgamation purchase of shares, purchase of assets, take-over bid or otherwise, in each case with any party

other than the Purchasers, or provide or disclose any information regarding WFI, the Sellers or any of its assets in connection with such a transaction or afford access to the employees, properties, books, contracts or records of WFI in connection with such a transaction, in each case to any party other than the Purchasers or otherwise knowingly facilitate any effort relating to such a transaction. Upon execution of this Proposal, the Sellers will, and will cause their Representatives to, cease any discussions or negotiations with respect or, or that might knowingly lead to, any such transaction. During the Exclusivity Period and for the purpose of ensuring the interests of both parties to enter into a transaction prior to the expiration of the Exclusivity Period are and remain aligned during such period, the Sellers shall notify the Purchasers promptly if any offer or proposal (without need to disclose the name of the offering party) for any such transaction is received by the Sellers or any of its Representatives during the Exclusivity Period or if any such information is requested from, or any such negotiations or discussions are sought to be initiated or continued with, the Sellers or any of their Representatives, indicating the specific terms of such inquiry, proposal or offer. "Exclusivity Period" means the period beginning on the date hereof and continuing for thirty (30) days following the execution of this Proposal by the Sellers. The business day's advance written notice to the other; provided that, the Exclusivity Period shall automatically be extended for subsequent on week periods in the event neither party has terminated the Exclusivity Period and the Sellers may not deliver any such termination notice prior to seven (7) business days following the execution of this Proposal unless the Purchasers have ceased active, good faith negotiations with the Sellers.



Ex. 3 at 1.

The Letter of Intent also explains:



**E.** **Plaintiffs Transmit a Notice of Intention to Sell to Mr. Snyder and the Other Stockholders of WFI**

On October 23, 2020, Plaintiffs, by their counsel, transmitted to Mr. Snyder and WFI a

formal Notice of Intention to Sell WFI Stock (Ex. 4), which attached the Letter of Intent and stated:

> Pursuant to Sections 7(a) and 7(b) of the Second Amended and Restated Stockholders
> Agreement of Washington Football, Inc. ("WFI"), Mr. Robert Rothman, Mr. Dwight
> Schar, and Mr. Frederick Smith (the "RSS Stockholders") hereby notify WFI that the
> RSS Stockholders intend to sell the RSS Stockholders' stock in WFI pursuant to the
> terms specified in the attached October 16, 2020 letter.

> This Notice and the attached is being provided to you at this time to allow for the other
> WFI stockholders to determine, within fifteen (15) days of the date of the delivery of this
> Notice if the other WFI stockholders elect to exercise their right of first refusal to
> purchase the RSS Stockholders' stock at a purchase price equal to and on other terms
> substantially comparable to those specified in the attached October 16, 2020 Letter.

[redacted]

Plaintiffs' counsel responded on October 29, 2020: "We agree to the time period (November 9th is, as we discussed, the deadline to respond to the 15 days set forth in the Notice), but if you do not believe it is a valid Notice we would rather know sooner than later (and certainly would strongly dispute the same as it meets all of the requirements set forth in section 7 of the Stockholders Agreement). [redacted]

[redacted]

On November 3, 2020, Plaintiffs' counsel spoke with Mr. Snyder's counsel. During the conversation, Mr. Snyder's counsel proposed that the parties agree to extend the expiration of the 15-day period for Mr. Snyder and the other WFI stockholders to respond to the Notice of Intention to Sell. [redacted]

On November 3, 2020, following the aforementioned conversation among counsel, Mr. Snyder's counsel transmitted an email to Plaintiffs' counsel stating, among other things, that the parties had agreed to "extend the time to respond to the Notice of Intent to Sell by three days from November 9 to 11:59 pm on November 12, 2020," and requesting that Plaintiffs "acknowledge by return email." Plaintiffs' counsel did so acknowledge by return email that same day, and Mr. Snyder's counsel then thanked Plaintiffs' counsel for that acknowledgement. Ex. 7.

**F.      Mr. Snyder Obstructs Plaintiffs' Sale of their Shares**

Far from responding with a substantive offer that might prove acceptable to Plaintiffs, November 9, 2020, Mr. Snyder attempted to obstruct Plaintiffs' sale of their shares by ███████ ████████████████████████████████████████████████ Specifically, Mr. Snyder's counsel on November 9 notified Plaintiffs' counsel by letter that Mr. Snyder and the other WFI stockholders considered the Notice of Intent to Sell dated October 23, 2020, purportedly to be deficient in certain respects. Ex. 8. One of the purported deficiencies was that:





*Id.* at 2.

And Mr. Snyder's counsel concluded his November 9 letter by stating: Mr. Snyder has elected to exercise his Right of First Refusal Furthermore, this asserted exercise of Mr. Snyder's right of first refusal also failed to comply with Section 7(b)(i) of the Stockholders Agreement (Ex. 1), which requires that any exercise of the right of first refusal be "at a purchase price equal to (and on other terms substantially comparable to) that specified in the Notice of Intention to Sell."

On November 10, 2020, Mr. Snyder's counsel made several requests to speak with Plaintiffs' counsel by phone. When Plaintiffs' counsel called Mr. Snyder's counsel in response, Mr. Snyder's counsel made clear that in the event Plaintiffs did not accept Mr. Snyder's approach to the Notice of Intent to Sell and the purported exercise of Mr. Snyder's right of first refusal, Mr. Snyder would proceed to bring a claim on these issues – and that Mr. Snyder's counsel had the claim ready to file.

### G.     Procedural history.

On November 13, 2020, Plaintiffs filed the Complaint (Dkt. No. 1), under seal, at approximately 9:50 am. Plaintiffs received back the executed summons from the Court at approximately 1:30 pm that same day. At 2:09 pm that day, Plaintiffs sent the following pleadings to Mr. Snyder's counsel (with a request that Mr. Snyder's counsel advise if he would be willing to accept service of these pleadings on behalf of Mr. Snyder): the executed summons, the complaint and civil cover sheet, the motion to seal and accompanying memorandum, and the appearance and admission pleadings. Beskin Decl. ¶ 15.

At 1:25 pm on November 13, 2020, Mr. Snyder served on Plaintiffs, in a pending arbitration between the parties that until that point had involved different issues, a motion for temporary restraining order and preliminary injunction on the same matters that were now pending before this Court in Plaintiffs' earlier-filed Complaint. *Id.*

## LEGAL STANDARD

Plaintiffs move for both a temporary restraining order ("**TRO**") pursuant to Fed. R. Civ. P. 65(b), and a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).

"A TRO or preliminary injunction serves to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" *Paradyme Mgmt, Inc., v. Curto*, 2017 WL 11458384, at *1 (D. Md. Dec. 14, 2017) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). "A preliminary injunction is distinguished from a TRO only by the difference in notice to the nonmoving party and by the duration of the injunction." *Id.* (citing *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006)). "While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Gen. Parts Distrib., LLC v. St. Clair*, 2011 WL 6296746, at *2 (D. Md. Dec. 14, 2011) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999)). While a TRO can issue without notice to the non-moving party, *see* Fed. R. Civ. P. 65(b)(1), Plaintiffs have notified Defendant's counsel of this TRO application.

"The standard for a temporary restraining order is the same as a preliminary injunction." *Dubon Miranda v. Barr*, 463 F. Supp. 3d 632, 644 (D. Md. May 29, 2020) (quoting *Maages Auditorium v. Prince George's Cty.*, 4 F. Supp. 3d 752, 760 (D. Md. 2014)). A movant must show (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Roe v. Dep't of Defense*, 947 F.3d 207, 219 (4th Cir. 2020) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)); *accord Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

## ARGUMENT

## I.     A TRO and Preliminary Injunction Are Warranted.

Each of the four factors supports this Court entering a TRO and preliminary injunction as requested by Plaintiffs here.

### A.     Plaintiffs will likely succeed on the merits.

#### 1.     Plaintiffs are likely to prevail on their claims for declaratory relief and breach of contract.

Plaintiffs are likely to prevail on their claim for declaratory relief in relation to Mr. Snyder's breaches of Section 17 of the Stockholders Agreement, and also on their claim for breach of contract. Claimants seek declarations under 28 U.S.C. § 2201 that Mr. Snyder improperly asserted that he may exercise his right of first refusal under Section 17 by: (1) ███████████████ ████████████████████████████████████████████████████████████ (2) ████████████████████████████████████████████████████████████████ ███████████████ ; and (3) ██████████████████████ ████████████████████████████████████████████████████████████ ██████████████     Declaratory relief is appropriate in relation to Mr. Snyder's multiple breaches of the Stockholders Agreement because "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to [this] proceeding." *Clay v. Chase Bank USA, N.A.*, 2011 WL 1066570, at *5 (D. Md. Mar. 21, 2011) (internal quotations omitted). These actions by Mr. Snyder also constituted breaches of the Stockholders Agreement.

The Stockholders Agreement is governed by Maryland law. Stockholders Agreement (Ex. 1) § 25 ("This Agreement shall be governed by, enforceable under, and construed in accordance with the laws of the State of Maryland, without giving effect to the conflicts of law principles

thereof."). "To establish a breach of contract under Maryland law, a plaintiff must prove 'that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *ICENY USA, LLC v. M&M's, LLC*, 421 F. Supp. 3d 204, 215 (D. Md. 2019) (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166 (2001)). When interpreting contracts, Maryland courts apply the so-called "objective rule" of contracts. *See e.g., Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A.2d 687, 693 (1958). Under that maxim, the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, "irrespective of the intent of the parties at the time they entered into the contract." *Slice*, 215 Md. at 368 (citing *Ray v. William G. Eurice & Bros.*, 201 Md. 115, 126-27, 93 A.2d 272, 278 (1952)).

Here, Section 7 of the Stockholders Agreement sets forth certain provisions applicable to sales of stock, including such sales by Plaintiffs. Among other things, Section 7 sets forth certain "rights of first refusal" applicable to stock sales. *See* Stockholders Agreement (Ex. 1) § 7(b). Generally, a "right of first refusal" is: "[a] potential buyer's contractual right to meet the terms of a third party's higher offer. For example, if Beth has a right of first refusal on the purchase of Sam's house, and if Terry offers to buy the house for $300,000, then Beth can match this offer and prevent Terry from buying it." Black's Law Dictionary (11th ed. 2019). Mr. Snyder's effort to pervert his right of first refusal into a right to invent a new, different offer is not likely to succeed.

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████ Mr. Snyder is not likely to succeed because his approach breaches the Stockholders Agreement.

Mr. Snyder breached Section 7 of the Stockholders Agreement by ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Ex. 8 at 2-3.

Plaintiffs are likely to succeed on the merits because Mr. Snyder's only right of first refusal under

the Stockholders Agreement does not permit Mr. Snyder to deny Plaintiffs' their right to sell their

shares on the terms they agreed upon with a third-party group of purchasers.

Section 7 of the Stockholder Agreement (Ex. 1) concerns "Voluntary Sale of Stock: Rights

of First Refusal." It expressly recognizes the rights of Plaintiffs, as Stockholders, to sell their WFI

stock. Section 7(a) states:

> If a Stockholder (a "Selling Stockholder") proposes to effect a Sale of any shares
> of Stock (other than as permitted by Section 6(c)), then such Selling Stockholder
> shall give to the Company a written notice (a "Notice of Intention to Sell") setting
> forth in reasonable detail the terms and conditions of such proposed transaction,
> including the identity of the proposed purchaser of such shares and enclosing any
> agreements, draft agreements or letters of intent relating to such proposed Sale. The
> Company shall deliver such notice of Intention to Sell to the other Stockholders
> (the "Other Stockholders") promptly upon relief thereof.

Section 7(b) in turn describes the "rights of first refusal" that "shall apply with respect to a

proposed Sale of Non-Voting Stock by a Non-Voting Stockholder," including Plaintiffs. Section

7(b)(i) provides that any exercise of a right of first refusal must be *"at a purchase price equal to*

*(and on other terms substantially comparable to) that specified in the Notice of Intention to*

*Sell."* (emphasis added).

And Section 7(b)(v) provides, in relevant part, that "If (A) the Other Stockholders do not

elect to purchase *all of the Non-Voting Stock that is the subject of the Notice of Intention to* Sell

. . . such elections *will be void* and the Selling Stockholder may consummate the sale of all of the

Non-Voting Stock proposed to be sold to the proposed third party purchaser pursuant to the terms set forth in the Notice of Intention to Sell" (emphasis added).[2]

Nothing in the language of Section 7(a) of the Stockholders Agreement provides that

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ *Id.* at 2.

Mr. Snyder's response breached Section 7(b)(i) of the Stockholders Agreement (Ex. 1) because it failed "to elect to purchase all or part of the shares of Non-Voting Stock proposed to be sold by the Selling Stockholder at a purchase price equal to (and on other terms substantially

---

[2] While Section 7(b)(i) states that Mr. Snyder can exercise his right of first refusal by "elect[ing] to purchase all or part of the shares of Non-Voting Stock proposed to be sold by the Selling Stockholder," this refers only to the first stage of the right of first refusal process. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

comparable to) that specified in the Notice of Intention to Sell." ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ Thus, Plaintiffs are likely to establish that Mr.

Snyder breached Section 7 of the Stockholders Agreement by ████████████████

████████████████████████████████████████ It follows that

Plaintiffs are equally likely to prevail on their claim for a declaration that Mr. Snyder has

████████████████████████████████████████████████████████████████

████████████████████████████

Furthermore, Mr. Snyder's asserted exercise of his right of first refusal also failed to

comply with Section 7(b)(i) of the Stockholders Agreement, which requires that any exercise of

the right of first refusal be "at a purchase price equal to *(and on other terms substantially*

*comparable to)* that specified in the Notice of Intention to Sell." ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

Finally, Plaintiffs are likely to succeed in establishing that Mr. Snyder breached Section 7(b)(v) of the Stockholders Agreement, because he is ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *See* Stockholders Agreement § 7(b)(v) ("If (A) the Other Stockholders do not elect to purchase all the Non-Voting Stock that is the subject of the Notice of Intention to Sell or (B) if they elect to purchase all of the Non-Voting Stock, but such purchases are not all consummated at the closing scheduled therefor (after giving effect to a single exercise of the rights under clause (iv)), such elections will be void and the Selling Stockholder may consummate the sale of all of the Non-Voting Stock proposed to be sold to the proposed third party purchaser pursuant to the terms set forth in the Notice of Intention to Sell."). ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████

## 2. Plaintiffs' claims are not subject to arbitration.

Mr. Snyder has asserted to Plaintiffs that these disputes must be arbitrated. Mr. Snyder is incorrect.

While Section 17 of the Stockholders Agreement mandates arbitration of certain disputes, it expressly provides that claims for injunctive relief—such as the sole claims in this case—may be brought in court. Specifically, Section 17 states:

> Nothing in this arbitration provision shall be deemed to . . . (ii) limit the right of any of the parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief. Any of the parties hereto may obtain such ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of

> any action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

Ex. 1 § 17(b). The Stockholders Agreement thus explicitly authorizes this lawsuit for injunctive relief to proceed in court.



Mr. Snyder's positions are incorrect. ***First***, as explained above, the parties agreed in the Stockholders Agreement to permit claims for injunctive relief to proceed before a court. Permitting the NFL Commissioner to arbitrate the present claims would impermissibly render null and superfluous the parties' agreement to allow claims for injunctive relief to proceed before a court. *See* Stockholders Agreement § 17.

***Second***, Section 17, the Dispute Resolution Provision of the Stockholders Agreement, makes *no reference* to dispute resolution before the NFL Commissioner.

***Third***, to the extent that Section 21(a) of the Stockholders Agreement states that the Agreement is "subject to the Constitution, Bylaws and other rules and regulations of the NFL," the NFL Constitution does not conflict with the provision of Section 17, which expressly provides that claims for injunctive relief can proceed in a court. The parties have clearly established the

claims that can proceed in Court. Nothing in the NFL Constitution (*see* Ex. 12 at p. 30) prohibits an agreement from including the limited injunctive relief carve out here.[3]

In fact, Section 21(a) of the Stockholders Agreement indicates that the NFL has been apprised of the Stockholders Agreement and must be notified of any amendments thereto that could affect the rights of the NFL. There is no evidence that the NFL has ever objected to Section 17 or its provision permitting injunctive relief claims to be pursued in Court.

### 3. Plaintiffs are likely to succeed in enjoining any arbitration in relation to the injunctive relief sought in this Complaint

Furthermore, Plaintiffs are likely to prevail on their claim to enjoin Mr. Snyder from arbitrating the injunctive relief issues that Plaintiffs have raised in this Complaint. Enjoining Mr. Snyder from arbitration is wholly appropriate because the injunctive relief that Plaintiffs seek in these proceedings pursuant to their rights under Section 17 of the Stockholders Agreement is not arbitrable. The Court should thus enjoin Mr. Snyder from arbitration to ensure that the injunctive relief Plaintiffs seek in this Complaint can proceed to adjudication free from interference from arbitral proceedings.

It is settled law in the Fourth Circuit that a "party opposing arbitration…can ask a court to enjoin arbitration on the ground that the underlying dispute is not arbitrable." *Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, 514 F. App'x 365, 370 (4th Cir. 2013), quoting *Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co.*, 140 F.3d 459, 462 (2d Cir. 1998). *See also Morgan Keegan & Co. v. Louise Silverman Tr.*, 2012 WL 113400, at *1 (D. Md. Jan. 12,

---

[3] Even if there were a conflict – which is not the case – Maryland law is clear that the specific carve-out for injunctive relief in Section 17 of the Shareholders Agreement would prevail over the general arbitration provisions in the NFL Constitution. *See, e.g., Heist v. E. Sav. Bank, FSB*, 165 Md. App. 144, 151, 884 A.2d 1224, 1228 (2005) ("[w]here two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it." (quotations omitted)).

2012), aff'd sub nom. *Morgan Keegan & Co. v. Silverman*, 706 F.3d 562 (4th Cir. 2013) (holding

that "it is properly within this court's power to decide whether arbitration is appropriate and to

enjoin or compel arbitration as is appropriate" and that "the power to enjoin an arbitration is the

concomitant of the power to compel arbitration" (internal quotations omitted)); *Charlotte

Mecklenburg Bd. of Educ. v. 34 ED, LLC*, 2020 WL 3971921, at \*3 (W.D.N.C. July 14, 2020)

("district courts in this circuit have also routinely enjoined proceedings when the parties never

agreed to submit their disputes to arbitration." (internal quotations and citations omitted)).

Plaintiffs are likely to prevail on their claim to enjoin Mr. Snyder from submitting the

injunctive relief that Plaintiffs seek in this Complaint to arbitration, because such injunctive relief

is not arbitrable. *See* Section 1.A.2, *supra.* Specifically, Section 17 of the Stockholders Agreement

expressly excludes the injunctive relief that Plaintiffs seek from the arbitration clause by providing

that "[n]othing in this arbitration provision shall be deemed to . . . (ii) limit the right of any of the

parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to)

injunctive relief." Ex. 1 § 17(b). Section 17 further clarifies that "[a]ny of the parties hereto may

obtain such ancillary remedies before, during or after the pendency of any arbitration proceeding

brought pursuant to this Agreement." *Id.* This "specific exception from arbitration provided under

the contract…controls over the earlier general language relating to arbitration." *Seery v. DePuy

Orthopaedics, Inc.*, 2014 WL 12609706 at \*2 (D.S.C. Dec. 31, 2014).

This Court thus can and should determine that the injunctive relief that Plaintiffs seek in

this Complaint is not arbitrable. Courts have regularly found that injunctive relief sought under

contractual provisions similar to Section 17 of the Stockholders Agreement is *not* arbitrable. For

example, in *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429 (N.D.N.Y. 2007), the arbitration

clause included a carve-out stating that "[n]othing contained herein shall . . . be construed to limit

or to preclude Franchisor from bringing any action in any court of competent jurisdiction for injunctive or other provisional relief." *Id.* at 446. The Court held that this clause rendered plaintiff's claim for injunctive relief not arbitrable, so that it was subject to a forum selection clause that governed claims not subject to arbitration. *Id.* In *Remedy Intelligent Staffing, Inc. v. Metro. Employment Corp. of Am.*, 2008 WL 5156609 (D. Mass. Dec. 9, 2008), the contract provided that the arbitration clause "shall not limit Franchisor's rights or remedies in connection with any action in any court of competent jurisdiction for injunctive or other provisional relief." *Id.* at 1 (emphasis removed). The court found that it was clear that the injunctive relief that the Franchisor sought in its complaint was not arbitrable because "the Agreement in the clearest terms possible entitles [the Franchisor] to seek injunctive relief in this [court]." *Id.* at 2.

In *Stockade Companies, LLC v. Kelly Rest. Grp., LLC*, 2017 WL 1968328 (W.D. Tex. May 11, 2017), the contract provided that "[n]otwithstanding any provision contained in this [arbitration clause], Franchisor may, at its sole option, institute an action or actions for temporary or preliminary injunctive relief." *Id.* at 2. The Court reasoned that the injunctive relief that the Franchisor sought was not arbitrable, because the contractual clause quoted above "clearly carved out" the right to seek injunctive relief in Court. *Id.* at 4. *See also James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006) ("In this case, the arbitration clause begins by requiring arbitration of any controversy arising out of or relating to the LLC Agreement in accordance with the AAA rules. But it continues by expressly authorizing the nonbreaching Members to obtain injunctive relief and specific performance in the courts. Thus, despite the broad language at the outset, not all disputes must be referred to arbitration.").

As the Fourth Circuit has confirmed, where parties agree to an arbitration clause but also include a carve-out clause providing a right to pursue certain claims in court, the two clauses together "demonstrate that the parties intended to arbitrate all claims except for [those in the carve-out clause]." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 569 (4th Cir. 2015). Accordingly, Section 17(b) "trumps the more general Arbitration Clause" as to the claims for injunctive relief, "thus allowing [Plaintiffs] to file those claims in Maryland court." *Id.* at 567.

Nor does the language in Section 17(b) – providing that a party may "arbitrate the merits of the controversy or claim occasioning resort to such remedies" – bar the injunctive relief that Plaintiffs seek. Stockholders Agreement § 17(b). The Court in *Stockade Companies* considered a similar clause, which provided that "in Franchisor's sole discretion, the final right of determination of the ultimate controversy, claim or dispute shall be decided by arbitration." *Id.* at 4. The Court held that "Nothing in this language limits or impacts [Franchisor's] right to seek the injunctive relief it is asking for in this Court." *Id.* Instead, the Court interpreted the clause as merely providing that the Franchisor had a discretion to "submit *the ultimate issues beyond injunctive relief* to arbitration." *Id.* (emphasis added).

The same reasoning applies here. Section 17(b) provides only that ultimate issues *beyond* injunctive relief may be arbitrated. Accordingly, nothing in this language limits or impairs Plaintiffs' right to seek injunctive relief in this Court.

Finally, injunctive relief – to prevent Plaintiffs from pursuing parallel arbitration proceedings on the same matters that are the subject of Plaintiffs' injunctive relief claims here – is appropriate pursuant to the first-to-file rule. In this Circuit, "[i]t has long been held ... that, as a principle of sound judicial administration, the first suit should have priority, absent the showing of

balance of convenience in favor of the second action." *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n. 2 (4th Cir. 1974) (internal quotations omitted). The rule aims to ensure that the first suit can "proceed . . . without interference from…suits subsequently instituted." *Carbide & Carbon Chemicals Corp. v. U.S. Indus. Chemicals*, 140 F.2d 47, 49 (4th Cir. 1944). The rule should apply here because (1) Plaintiffs filed this Complaint prior to Mr. Snyder commencing any arbitral proceedings against Plaintiffs in relation to the injunctive relief that Plaintiffs seek in this proceeding, and (2) the balance of convenience weighs in favor of the Plaintiffs being able to exercise their contractual right to choose to pursue these specific claims in this Court instead of in an arbitration focused on various other issues.

**B.  Plaintiffs will suffer irreparable harm absent a TRO and preliminary injunction.**

**1.  Plaintiffs will suffer irreparable harm from the denial of their bargained-for right to take advantage of the time-sensitive opportunity to sell their WFI stock.**

Absent an injunction, Plaintiffs will be irreparably harmed by the denial of their contractually-bargained for rights to take advantage of the time-sensitive opportunity to sell their WFI stock in response to the time-sensitive proposal set forth in the Letter of Intent.

The denial of Plaintiffs' time-sensitive opportunity to sell their WFI stock is irreparable. *See Deutsche Mexico Holdings S.a.r.l.* 2019 WL 5257995 at *7. "Sales of business assets are sensitive, depending on timing, market conditions, and other dynamics. A transaction that is lost is hard to replace. If [a party] is permitted to . . . prevent a sale, another equivalent transaction may become speculative." *Cf. Martin-Marietta Corp. v. Bendix Corp.* 690 F.2d 558, 568 (6th Cir. 1982) (finding irreparable harm from lost opportunity to pursue tender offer, because "[i]n the context of a tender offer, time is of the essence."); *Hyde Park Partners*, 839 F.2d at 853 ("It is obvious that timing is everything with tender offers."). Courts have thus recognized that delay not only causes

the loss of "time and money," but also "diminishe[s] if not destroy[s] any chance of success" in carrying out the proposed transaction. *San Francisco Real Estate Investors v. Real Estate Investors of America*, 701 F.2d 1000, 1003 (1st Cir. 1983). In short, courts have found irreparable harm because "a delay would effectively kill" the proposed transaction, *Hyde Park Partners*, 839 F.2d at 853, leaving the would-be sellers "without a buyer." *Deutsche Mexico Holdings S.a.r.l.* 2019 WL 5257995 at *7. "Such loss could not be compensated by money damages." *Martin-Marietta Corp.*, 690 F.2d at 568.

Plaintiffs will be irreparably harmed absent injunctive relief, because Mr. Snyder's attempt to delay the transaction by improperly exercising his right of first refusal would effectively kill the proposed transaction. The Exclusive Negotiation Period that the potential purchasers set out in the Letter of Intent confirms that time is of the essence. The Letter of Intent provides that the Exclusive Negotiation Period expires on November 25, 2020. Ex. 4 at 3. As of the date of filing this Motion, only nine days are left until the Exclusive Negotiation Period expires. Mr. Snyder has frustrated the sale process by ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ If Mr. Snyder is not enjoined from improperly exercising his right of first refusal before then, Plaintiffs will have been denied the opportunity to complete this transaction prior to the expiry of the Exclusive Negotiation Period. Following the expiration of that period, the chances that the transaction will proceed diminish significantly. *See* Rothman Decl. ¶ 11.

Even leaving the Exclusive Negotiation Period aside, Mr. Snyder's delay tactics have frustrated the due diligence necessary for the transaction to proceed and created a high risk that

the potential purchasers will walk away from the table. The potential purchasers have represented that they are committed to "*execut[ing] definitive documentation promptly* ███████ ██████████████████████████ Ex. 4 at 1 (emphasis in original). Completing the transaction requires an orderly process including, among other things, necessary business, financial, legal and tax due diligence. *Id.* at 3.

Furthermore, Section 17(c) of the Stockholders Agreement provides: "The parties acknowledge that the remedy at law for breach of the provisions of this Agreement will be inadequate and that, in addition to any other remedy any party may have, it shall be entitled to an injunction restraining any breach of threatened breach and/or a decree of specific performance without . . . the necessity of proving actual damages." Ex. 1 § 17(c). Such a provision has been found to indicate a recognition by the contracting parties that a breach gives rise to irreparable harm. *See, e.g., Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) ("[T]he employment contract sought to be enforced concedes that in the event of Cohen's breach of the post-employment competition provision, Ticor shall be entitled to injunctive relief, because it would cause irreparable injury. Such, we think, might arguably be viewed as an admission by Cohen that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision.").[4]

### 2. Plaintiffs will suffer irreparable harm if Mr. Snyder is not enjoined from seeking injunctive relief on these same issues in arbitration.

---

[4] *See also Kansas City S. v. Grupo TMM*, S.A., 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003) ("Although a contractual stipulation as to the irreparable nature of the harm that would result from a breach cannot limit this Court's discretion to decline to order injunctive relief, such a stipulation does allow the Court to make a finding of irreparable harm provided the agreement containing the stipulation is otherwise enforceable. If the facts plainly do not warrant a finding of irreparable harm, this Court is not required to ignore those facts, especially since the 'parties cannot confer subject matter jurisdiction upon a court.' But where there is no concern that the parties are attempting to improperly confer equitable jurisdiction upon this Court, a defendant cannot successfully argue that there is no irreparable harm.") (citations omitted).

Plaintiffs would also suffer irreparable harm if Mr. Snyder can seek in arbitration injunctive relief on the same issues already pending before this Court. If Mr. Snyder is permitted to continue the subsequent parallel arbitral proceedings that he has already commenced, Plaintiffs would be forced to litigate the same issues in two forums and be subject to potentially inconsistent rulings. Moreover, without a preliminary injunction, Plaintiffs would be "forced to arbitrate claims it allegedly never agreed to arbitrate." *Morgan Keegan & Co.*, 2012 WL 113400 at *5. Plaintiffs would thus suffer irreparable harm because, as this District has held, "the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is per se irreparable because it forces an individual to expend resources it cannot later recover." *Id.*; *see also Charlotte Mecklenburg Bd. of Educ.*, 2020 WL 3971921 at *6 (holding that "[b]eing compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm *per se*.").

### C. The balance of equities favors granting preliminary relief.

#### 1. The balance of equities favors granting relief regarding Plaintiffs' rights to pursue the time-sensitive opportunity to sell their WFI stock.

While Plaintiffs need immediate injunctive relief to avoid irreparable harm, the injunctive relief that Plaintiffs seek here poses no risk of material harm to Mr. Snyder. An injunction would not diminish Mr. Snyder's rights with respect to WFI in any way. Mr. Snyder ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███ *See* Ex. 8. He never validly exercised his rights under the Stockholders Agreement within the time period that Agreement provided, as extended by agreement of the parties. All that Mr. Snyder will have to do to comply with the injunction is abide by his contractual obligations under

the Stockholders Agreement. Accordingly, the balance of equities weighs heavily in favor of injunctive relief. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2020 WL 1844791, at \*26 (E.D. Va. 2020) ("[A]ny hardship stems from JELD-WEN's obligations under the Supply Agreement—in other words, any hardship to JELD-WEN stems from it being required to stop breaching the Supply Agreement. Consequently, the 'balance of equities tips in Steves' favor, as JELD-WEN will suffer no unjustifiable hardship by complying with [its] contractual obligations.'") (brackets omitted) (citation omitted)).

Moreover, there is no evidence that Mr. Snyder would lose any money or value if the transaction with the prospective purchasers proceeds. ███████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ Letter of Intent (Ex. 4) at 1. ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████

Mr. Snyder has not expressed to Plaintiffs any concerns about the potential purchasers. ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████

## 2. The balance of equities favors Plaintiffs with regard to enjoining Defendant from pursuing injunctive relief on the same matters in arbitration.

The balance of equities also favors enjoining Mr. Snyder from pursuing arbitration because the harm that Plaintiffs would suffer if the injunction is not granted outweighs the minimal harm to Mr. Snyder if the injunction is granted. *See Charlotte Mecklenburg Bd. of Educ.*, 2020 WL 3971921 at *6 (reasoning that the irreparable harm of forcing a plaintiff to submit to arbitration "certainly outweighs the minimal harm" to the defendant). If the injunction is not granted, Plaintiffs may be forced to spend money and resources litigating the same issues raised in this Complaint before an arbitral forum, and may be subject to inconsistent rulings that create conflicting obligations. In contrast, the only possible harm to Mr. Snyder is the loss of an opportunity to pursue subsequent parallel arbitration of the same issues raised in this Complaint. That is not a compelling harm, because the Fourth Circuit has held that it is "a principle of sound judicial administration [that]…the first suit should have priority." *Ellicott Mach. Corp.*, 502 F.2d at 180 n. 2.

Furthermore, any loss of the opportunity to pursue subsequent parallel arbitration is not irreparable harm, because it is simply the result compelled by the Stockholders Agreement to which Mr. Snyder is a party. Mr. Snyder "will suffer no unjustifiable hardship by complying with [his] contractual obligations." *Steves & Sons, Inc.*, 2020 WL 1844791 at *26.

## D. Injunctive relief serves the public interest.

### 1. The public interest would be served by enjoining Defendant from interfering with Plaintiffs' right to pursue the time-sensitive opportunity to sell their WFI stock.

It is in the public interest for parties to abide by the terms of their contracts, particularly when the contract at issue addresses significant contractual rights. *See ICENY*, 421 F. Supp. 3d at 223 ("The public interest also favors requiring parties to abide by the legitimate terms of their

contracts, if not unreasonable."); *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 404 (D. Md. 2007) (holding that granting preliminary injunction was in the public interest where "Defendants . . . sought to avoid contractual obligations. It is in the public interest to repudiate this type of activity and enforce valid contracts."). Here, the injunctive relief sought by Plaintiffs serves the public interest, as it will prohibit Mr. Snyder from breaching the Stockholders Agreement.

It is also in the public interest to permit the transaction to proceed so that Plaintiffs can receive the benefits of the transaction. *Cf. Grand Metro. P.L.C. v. Butterworth*, 1988 WL 1045191, at *7 (N.D. Fla. Nov. 28, 1988) ("it is also in the public interest to permit a tender offer to proceed so that shareholders...can reap the benefit of a sizeable premium for their stock").

Finally, the public in this region has a strong interest in the proper enforcement of contracts regarding ownership of the Washington Football Team. This is all the more so here, where the Letter of Intent ███████████████████████████████

### 2. The public interest would be served by enjoining Defendant from seeking injunctive relief on the same issues in arbitration.

Finally, enjoining Mr. Snyder from arbitrating the issues raised in this Complaint serves the public interest, given the express provisions of the Stockholders Agreement permitting Plaintiffs to bring their claims for injunctive relief in court. "The public interest...favors requiring parties to abide by the legitimate terms of their contracts." *ICENY*, 421 F. Supp. 3d at 223. Moreover, it would be contrary to the public interest to compel Plaintiffs to arbitrate injunctive relief issues that Plaintiffs did not agree to arbitrate. *Morgan Keegan & Co.*, 2012 WL 113400 at *6. As this District has held, "forcing parties to arbitrate when they did not agree to arbitrate disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution." *Id.*; *see also Charlotte Mecklenburg Board of Education*, 2020 WL 3971921

at *6. Finally, a preliminary injunction "serves the public interest by preventing an unnecessary use of time and resources" on what would very likely be "an unauthorized arbitration." *Morgan Keegan & Co.*, 2012 WL 113400 at *6.

## II. No Bond Is Warranted.

A court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Under Rule 65(c), the Court "retains discretion to set the bond amount as it sees fit or waive the security requirement." *Pashby*, 709 F.3d at 331–32.

The parties have expressly agreed that no bond is required for an injunction to address a breach of the Stockholders Agreement. Section 17(c) of the Stockholders Agreement (Ex. 1) provides that, in the event of a breach of the Agreement, a party "shall be entitled to an injunction restraining any breach or threatened breach and/or a decree of specific performance, ***without any bond or other security being required*** and without the necessity of proving actual damages." Stockholders Agreement § 17(c) (emphasis added).

Moreover, the Court generally has "discretion to set a bond amount of zero where the enjoined or restrained party faces no likelihood of material harm." *Maryland Dep't of Human Resources v. U.S. Dep't of Agric.*, 976 F.2d 1462, 1483 n.23 (1992); *e.g.*, *Solar Eclipse Inv. Fund XXXV, LLC v. $5,000,000.00 U.S. Dollars Deposited to IOLTA Account of the Strauss Law Firm*, 2019 WL 1930752, at *3 (D.S.C. Apr. 30, 2019) (setting bond amount of $0 because defendant faced no risk of financial loss); *Asa v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 247 (W.D.N.Y. 2010) (no bond warranted where parties were engaged in ongoing contractual relationship and injunction merely preserves preexisting status quo); *see also* 11A Wright & Miller, *Federal Practice & Procedure* § 2954 (3d ed. Apr. 2020 update) ("Indeed, it has been held that the court

may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant.") (collecting cases).

Because Mr. Snyder agreed in the Stockholders Agreement that no bond is needed, and because he faces no likelihood of material harm, this Court should exercise its discretion to waive the security requirement or set the bond amount at $0.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a temporary restraining order, and thereafter a preliminary injunction.

Dated: November 16, 2020          Respectfully submitted,
Bethesda, Maryland


                                  _____/s/_____

                                  Adam L. Van Grack (D. Md. Bar No. 17976)
                                  Theodore B. Kiviat  (D. Md. Bar No. 29019)
                                  **Longman & Van Grack, LLC**
                                  10411 Motor City Drive, Suite 750
                                  Bethesda, Maryland 20817
                                  (301) 291-5027 (tel.)
                                  (301) 291-5028 (fax)
                                  avangrack@lvglawfirm.com
                                  tkiviat@lvglawfirm.com


                                  Stephen R. Neuwirth (pro hac vice pending)
                                  Julia M. Beskin (pro hac vice pending)
                                  Jeremy Baldoni (pro hac vice pending)

                                  **Quinn Emanuel Urquhart & Sullivan, LLP**
                                  51 Madison Avenue, 22nd Floor
                                  New York, New York 10010
                                  (212) 849-7000 (tel.)
                                  (212) 849-7100 (fax)
                                  stephenneuwirth@quinnemanuel.com
                                  juliabeskin@quinnemanuel.com
                                  jeremybaldoni@quinnemanuel.com


                                  Jonathan Cooper (D. Md. Bar No. 21345)
                                  **Quinn Emanuel Urquhart & Sullivan, LLP**
                                  1300 I Street, NW
                                  Suite 900
                                  Washington, DC  20005
                                  (202) 538-8000 (tel.)
                                  (202) 538-8100 (fax)
                                  jonathancooper@quinnemanuel.com

                                  *Attorneys for Plaintiffs*

## REQUEST FOR HEARING

Pursuant to Local Rule 105.6 (D. Md.), Movants request a hearing on the instant

Emergency Motion.

Dated: November 16, 2020
Bethesda, Maryland

Respectfully submitted,

_____
/s/

Adam L. Van Grack (D. Md. Bar No. 17976)
**Longman & Van Grack, LLC**
10411 Motor City Drive, Suite 750
Bethesda, Maryland 20817
(301) 291-5027 (tel.)
(301) 291-5028 (fax)
avangrack@lvglawfirm.com