**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| ROBERT ROTHMAN, DWIGHT C. SCHAR, and FREDERICK W. SMITH,<br><br>            Plaintiffs,<br><br>     v.<br><br>DANIEL SNYDER,<br><br>            Defendant. | Case No. 8:20-cv-03290-PJM<br><br>Judge Peter J. Messitte<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR LEAVE TO INTERVENE FOR THE PURPOSE OF OBTAINING
<u>PUBLIC ACCESS AND OPPOSING THE MOTION TO SEAL</u>**

**INTRODUCTION**

The Washington Post ("Post") respectfully moves to intervene in this civil action for the purpose of opposing Plaintiffs' pending motion to seal various documents and records. As a result of that motion, virtually the entire docket has been sealed from public view. At present, the only information publicly available about this case—brought by minority owners of the Washington Football Team against the majority owner, and already the subject of substantial public interest—are the case number, the names of the parties, and the names and contact information for their lawyers. Neither the complaint, nor any filings other than the Court's letters to and from the Post's counsel, have been released to the public.

The apparent request for a nearly complete sealing of the case record is incompatible with the time-honored presumption that proceedings in federal court will remain open to the press and the public. That right of access independently springs from both the common law and the First Amendment, and "may be abrogated only in unusual circumstances." *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). Although the Post has not been able to review the arguments made in the motion to seal, because it, too, remains hidden from public view, the Post can conceive of no interest that could justify the wholesale sealing of pleadings and exhibits from the public eye in a commercial partnership dispute among the owners of a popular sports team. At most there should be "less drastic alternatives to closure," such as narrowly tailored redactions. *Id.* at 272. Plaintiffs have invoked this federal forum, and the public has a presumptive right to observe what takes place in that forum. Parties "who want secrecy should opt for arbitration." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). When they "'call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.'" *Doe*, 749 F.3d at 266 (quoting *Union Oil*, 220 F.3d at 568).

1

For these reasons and those elaborated more fully below, the Post respectfully requests that its motion to intervene be granted and the pending motion to seal be denied.

## INTEREST OF THE INTERVENOR

WP Company LLC (d/b/a The Washington Post) is the publisher of The Washington Post, one of the country's leading daily newspapers, as well as the website washingtonpost.com, which reaches an online audience of more than 90 million unique visitors per month.  The Post is the most widely circulated newspaper in the Washington, D.C. metro area.  Its coverage of the Washington Football Team and the team's majority owner, Daniel Snyder, is a matter of intense interest among its millions of print and digital readers.  The Post has published multiple news stories concerning the dispute between Snyder and the team's minority owners, most recently on the front page of Saturday's print edition.  *See* Will Hobson, Mark Maske & Liz Clarke, *Snyder Blocking Sale by Team's Minority Owners*, Wash. Post, Nov. 21, 2020, at A1.  It intends to monitor the progress of this litigation and provide additional coverage to keep the public informed about the ownership status of the region's NFL franchise.

## BACKGROUND

**A.     The Docket and Nearly All Filings Remain Under Seal.**

 The lawsuit in this matter was filed on November 13, 2020.  Initially, the entire proceeding remained under seal, with not even the case caption searchable on the public docket. Journalists for the New York Times nonetheless learned about the lawsuit and reported that they had "reviewed" the court filing.  *See* K. Benson & K. Rossman, *Partial Owners of Washington's N.F.L. Team Seek Path in Court to Sell Their Stake*, N.Y. Times (Nov. 13, 2020), https://www.nytimes.com/2020/11/13/sports/washington-nfl-team-snyder.html.

After the Times reported on the lawsuit, the Post submitted a letter to Chief Judge Bredar on November 18, 2020, requesting public access to the proceedings. *See* Dkt. No. 33-1. This Court responded by letter on November 19, 2020, providing public notice of the pending motion to seal and inviting the Post to submit a formal opposition. *See* Dkt. No. 33. The Court informed the Post that the public docket sheet would be updated to "reflect the name of the case, the case number, and the names and contact information of counsel." *Id.* The Court also explained that, pursuant to Local Rule 105.11, the case would remain sealed for 14 days after public notice, and thus that "the filings subject to the motion" would remain under seal until at least December 3, 2020. *Id.*; *see also* Dkt. No. 32.

As a result of the Court's order, members of the public can now view the case number and party and attorney names on the public docket. Other than the letters to and from the Post, however, every other docket entry remains provisionally sealed. Not only are the underlying pleadings locked from public view; the individual docket entries do not identify the nature or type of document that has been filed. Each entry states simply: "Document filed under seal." In total, more than 30 docket entries remain hidden from public view. Pursuant to the Court's letter of November 19, the Post moves to intervene to oppose the motion to seal and permit the public to access the filings and proceedings in the case.

**B.     The Case Involves a Matter of Substantial Public Interest.**

The ownership dispute at the core of this case is a matter of substantial public concern. The Washington Football Team holds itself out as "One of the NFL's oldest and most-storied franchises." *See, e.g.*, *History*, https://www.washingtonfootball.com/team/history/. Any ownership fight involving such a team would garner significant attention. And, here, public interest in the ownership dispute is particularly significant because it is tied to public

3

controversies facing the team related to its name[1] and allegations of sexual harassment.[2]  Indeed, even though the case has proceeded almost entirely under seal to date, it has already garnered significant attention in both the local and national press.[3]

## ARGUMENT

**I.    THE PUBLIC AND PRESS HAVE A COMMON LAW AND FIRST AMENDMENT RIGHT OF ACCESS TO THE RECORDS AND PROCEEDINGS.**

Both the public and the press enjoy a presumptive right to access judicial records and proceedings.  "The right of public access to documents or materials filed in a district court

---

[1] *See, e.g.*, Liz Clarke, Mark Maske & Les Carpenter, *Redskins' minority owners look to sell stakes in team amid ongoing turmoil*, Wash. Post (Jul. 5, 2020), https://www.washingtonpost.com/sports/2020/07/05/redskins-minority-owners-look-sell-stakes-team-amid-ongoing-turmoil/ ("The minority owners' bid to sell their shares comes as the Redskins organization is attempting to move on from the most controversial aspect of its heritage, announcing Friday that it was launching a study of the team's name, which many have long felt is a racial slur."); Andrew Beaton and Cara Lombardo, *Minority Owners Pressure Dan Snyder to Sell Washington's NFL Team*, Wall St. J. (Aug. 13, 2020), https://www.wsj.com/articles/minority-owners-pressure-dan-snyder-to-sell-washingtons-nfl-team-11597343129 ("When FedEx publicly asked the team to change its name, it effectively pitted the owners against one another."); Ken Belson & Katherine Rosman, *Washington N.F.L. Team's Drama Fueled by Owners' Fight Over Payout*, N.Y. Times (Sept. 25, 2020), https://www.nytimes.com/2020/09/25/sports/football/washington-nfl-team-owners-dan-snyder.html ("The bitter boardroom brawl between Daniel Snyder, the controlling owner of the Washington Football Team, and three of his longtime limited partners has prompted a legal firestorm, a fight over the club's name and mudslinging among former friends.").

[2] *See, e.g.*, Will Hobson, Beth Reinhard, Liz Clarke & Dalton Bennett, *Lewd cheerleader videos, sexist rules: Ex-employees decry Washington's NFL team workplace*, Wash. Post (Aug. 26, 2020), https://www.washingtonpost.com/sports/2020/08/26/redskins-cheerleaders-video-daniel-snyder-washington/ ("The new [harassment] allegations come at a perilous time for Snyder, 55, who recently dropped the team's name under pressure from sponsors and critics who said it was racist.  He also faces the possible exodus of his three co-owners, who are trying to sell their collective 40 percent stake in the franchise.").

[3] Mike Florio, *Washington minority owners take dispute to court*, NBC Sports (Nov. 15, 2020), https://profootballtalk.nbcsports.com/2020/11/15/washington-minority-owners-take-dispute-to-court/; Ken Belson & Katherine Rosman, *Partial Owners of Washington's N.F.L. Team Seek Path in Court to Sell Their Stake*, N.Y. Times (Nov. 13, 2020), https://www.nytimes.com/2020/11/13/sports/washington-nfl-team-snyder.html.

derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). The Court must determine at the outset which source of law to apply, because the common law and Constitution provide distinct, if overlapping, protections for the public's interest in disclosure. Although the First Amendment's guarantees are stronger, their scope is narrower, extending "only to particular judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988); *see also United States v. Applebaum (In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d))*, 707 F.3d 283, 290 (4th Cir. 2013). The common law presumption, by contrast, "attaches to *all* judicial records and documents." *Stone*, 855 F.2d at 180 (quotation marks omitted) (emphasis added).

"Regardless of whether the right of access arises from the First Amendment or the common law, it may be abrogated only in unusual circumstances." *Va. Dep't of State Police*, 386 F.3d at 576 (quotation marks omitted). The reason for the presumption of public access is straightforward: "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Doe*, 749 F.3d at 266 (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)). Disclosure serves important public values, creating "an appearance of fairness" and "heightening public respect for the judicial process." *Globe Newspaper Co. v. Super. Ct. for Cty. of Norfolk*, 457 U.S. 596, 606 (1982). Without the ability to monitor filings and orders in federal cases, "the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006). "Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions." *Id.*

The Fourth Circuit has mandated certain procedural safeguards to protect the long-established right of public access to judicial records and proceedings. If a party moves to seal judicial documents from public view, the district court must, at a minimum, "(1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Doe*, 749 F.3d at 272; *see also Globe Newspaper Co.*, 457 U.S. at 609 n.25 ("representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion"). These procedures "ensure that the decision to seal records will not be made lightly, and make possible meaningful review of a decision to seal." *Stone*, 855 F.2d at 182. This Court's Local Rules supplement the Fourth Circuit's requirements by specifically providing for objections by interested parties. *See* L.R. 105.11 ("The Court will not rule upon the motion [to seal] until at least fourteen (14) days after it is entered on the public docket to permit the filing of objections by interested parties."); *see also Smith v. Westminster Mgmt., LLC*, 2018 WL 572867, at *2 (D. Md. Jan. 26, 2018). Here, the Court invited the Post to submit its opposition pursuant to that Rule. *See* Dkt. No. 33.

**A.     The Public and the Press Have a Common Law Right of Access.**

"The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access." *Doe*, 749 F.3d at 265–66 (quotation marks omitted). The Fourth Circuit has broadly defined "judicial records" to include any records that "play a role in the adjudicative process, or adjudicate substantive rights." *United States v. Applebaum (In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d))*, 707 F.3d at 290. "The party seeking to overcome the presumption [of access] bears the burden

6

of showing some significant interest that outweighs the presumption." *Va. Dep't of State Police*, 386 F.3d at 575 (alteration omitted). "The countervailing interests asserted by a party seeking to overcome the public's presumption of access must be specific and non-conclusory." *Smith*, 2018 WL 572867, at *4. "A party cannot simply assert a fear of embarrassment or potential harm without detailing how specific disclosures will result in specific injuries." *Id.* Disclosure rather than secrecy is favored if "the public has already had access to the information contained in the records." *Va. Dep't of State Police*, 386 F.3d at 575.

### B. The Public and the Press Have a First Amendment Right of Access.

Above and beyond the common law right, the First Amendment affords a "'more rigorous'" right of access to "particular judicial records and documents." *Doe*, 749 F.3d at 266-67 (quoting *United States v. Soussoudis (In re Washington Post Co.)*, 807 F.2d 383, 390 (4th Cir. 1986)). Access to documents that fall within the protective scope of the First Amendment may be restricted only if closure is "necessitated by a compelling government interest," and only if the denial of access is "narrowly tailored to serve that interest." *Id.* "When determining whether a First Amendment right of access is available, the court[] looks at 'whether the place and process have historically been open to the press and general public,' and 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Brown v. Lorings*, 2014 WL 6687120, at *2 (D. Md. Nov. 25, 2014) (quoting *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)).

Once again, the burden lies with the party seeking to restrict access. "[T]hat party must present specific reasons in support of its position," because "'[t]he First Amendment right of access cannot be overcome by [a] conclusory assertion.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S.1, 15 (1986)).

### C. These Rights of Access Apply to the Judicial Records in This Case.

In this case, the public and press should have presumptive access under both the common law and First Amendment to, at a minimum, the complaint, the motion to seal, the docket, and any other judicial record.

#### 1. The Complaint Should Be Unsealed.

It is uncontroversial that the complaint by which a civil case is initiated qualifies as a judicial record that gives rise to a common law right of access. As one federal appeals court has observed, the complaint "is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013); *see also Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 555 (E.D. Va. 2020) ("It is undisputed that the federal common law provides a right of access to newly-filed civil complaints.").

Similarly, as courts in this Circuit and across the country have recognized, the First Amendment provides an independent right of access to civil complaints. *See, e.g.*, *M.P. v. Schwartz*, 853 F. Supp. 164, 167 (D. Md. 1994) (applying First Amendment standard to motion to unseal complaint); *Courthouse News Serv.*, 440 F. Supp. 3d at 558 (offering extensive analysis under Fourth Circuit precedent, and concluding that "the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaints unless particular filings are entitled to confidentiality by law"); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016); *Vassiliades v. Israely*, 714 F. Supp. 604, 605-06 (D. Conn. 1989).

Here, Plaintiffs cannot possibly overcome these presumptive rights of access. Although the Post does not have access to the arguments made in support of the motion to seal, it cannot conceive of any legitimate interest that would justify Plaintiffs' evident request to seal the entire complaint in this case. The Post generally understands that the lawsuit concerns a dispute over

the attempts by minority owners of the Washington Football Team to sell their combined 40 percent ownership stake. But the reputational interests at issue in a high-profile commercial or partnership dispute are not the type that ordinarily justify shielding pleadings from the public, even under a common law standard. Indeed, the Fourth Circuit recently observed in *Doe* that it could not identify a single case in which asserted harm to commercial reputation was found sufficient to defeat the public's common law right of access. *See* 749 F.3d at 269 (citing five circuit cases in which reputational concerns were held insufficient). After all, "[a]djudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image . . . are part of the day-to-day operations of federal courts." *Id.*

Even if Plaintiffs could articulate some basis for sealing the complaint that might survive common law scrutiny, they could not overcome the more rigorous First Amendment presumption of access. The parties "very well may desire that the allegations lodged . . . in the course of litigation be kept from public view to protect [the] corporate image [of the Washington Football Team, or its ownership], but the First Amendment right of access does not yield to such an interest." *See id.*

To the extent the parties argue that the complaint contains some protectable, proprietary information, like trade secrets, the Court should carefully scrutinize any claims of confidentiality.[4] *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009) (holding that movant had not carried its burden to show that information was protectable, and that it was therefore "unnecessary to consider alternatives to sealing, such as redaction"); *Antech Diagnostics, Inc. v. Morwalk, Inc.*, 2013 WL 3353772, at *8 (D. Md. July 2, 2013) (denying a

---

[4] The Post should be given a fair opportunity to respond to any argument that the complaint contains such information.

9

motion to seal in spite of a contractual confidentiality provision, emphasizing "it is well-established that parties cannot by agreement overcome the public's right of access to judicial records"); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) (holding that a "confidentiality agreement between the parties does not bind the court in any way"). In this case, the Post has already reported the names of potential buyers as well as the purported price they have offered. *See Snyder Blocking Sale By Team's Minority Owners*, *supra*, at A1 (Nov. 21, 2020). And the New York Times has described the thrust of the allegations in the complaint—and apparently reviewed a copy. *See* Dkt. No. 33-1, Ex. A. Where "the public has already had access to the information contained in the records," *Va. Dep't of State Police*, 386 F.3d at 575, disclosure is heavily favored.

Moreover, even if the complaint does contain some protectable information, the solution would be, at most, "*partial* sealing" of the complaint with narrowly tailored redactions. *Doe*, 749 F.3d at 269.[5] The Court is required to utilize such alternatives wherever possible under both the First Amendment and Fourth Circuit sealing procedures. *See id.* at 266, 272; *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984).

### 2. The Motion to Seal Should Be Unsealed.

The motion to seal likewise constitutes a judicial record subject to the common law presumption of access. Quite apart from the Post's *procedural* right to obtain a copy of the motion to seal and attached exhibits, *see Doe*, 749 F.3d at 272, the public and press enjoy a

---

[5] As the Seventh Circuit has noted, pleadings involving even the most sensitive issues like trade secrets and national security details are usually redacted only in part. *See Union Oil Co.*, 220 F.3d at 567 ("Litigation about trade secrets regularly is conducted in public; the district court seals only the secrets (and writes an opinion omitting secret details); no one would dream of saying that every dispute about trade secrets must be litigated in private. Even disputes about claims of national security are litigated in the open," including in the "Pentagon Papers case" and the "hydrogen bomb case.").

qualified *substantive* right to access these materials. Because a party's motion to seal requires the court to "adjudicate [the] substantive rights" of the public to view these materials, it necessarily ranks as a judicial record subject to a common law right of access. *See In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d at 290.

Similarly, the Fourth Circuit has made clear that "the First Amendment right of access extends to materials submitted in conjunction with judicial proceedings that themselves would trigger the right to access." *Doe*, 749 F.3d at 267 (citing *In re Washington Post Co.*, 807 F.2d at 390). A motion to seal must qualify, because "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." *See, e.g., Globe Newspaper Co.*, 457 U.S. at 609 n.25. Because the public and press must necessarily have the right to access and participate in briefing on motions to seal, they must have a First Amendment right of access to the related materials. And, once again, even if there were a compelling government interest that could somehow support sealing, the sealing must be "narrowly tailored to serve that interest," and justified "with specific findings—supporting closure and [the Court's] rejections of less drastic alternatives." *Doe*, 749 F.3d at 266, 272.

### 3. The Entire Docket Sheet Should Be Unsealed.

The Fourth Circuit has held that "the public and press enjoy a presumptive right to inspect docket sheets in civil cases under the First Amendment." *Doe*, 749 F.3d at 269.[6] As the court explained, "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Id.*; *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004)

---

[6] A holding that the First Amendment presumption applies to a particular type of judicial record, such as a docket sheet, necessarily means that the common law presumption—which attaches to *all* judicial records—applies as well.

("Since the first years of the Republic, . . . records of judicial proceedings in the form of docket books" have been "presumed open.").

Here, as the docket currently stands (while the sealing motion is pending), the only entries visible to the Post and the public are those related to the Post's correspondence with the Court. Not only are the *filings* sealed, so too are the benign *docket entries*. Such widespread sealing of virtually every entry on the docket "effectively shut[s] out the public and the press from exercising their constitutional and common-law right of access to [the] proceedings." *Doe*, 749 F.3d at 268.

There is no compelling government interest in wholesale sealing of the docket sheet. Indeed, courts in this Circuit and across the country have repeatedly expressed skepticism that sealing of the docket sheet could ever be justified under the First Amendment. *See, e.g.*, *id.* (citing cases); *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam) (expressing disbelief that "the docket entry sheet could be prejudicial" and emphasizing that the district court's sealing order "violates one of the cardinal rules that closure orders must be tailored as narrowly as possible"). Even if the movants could establish some reason why a specific docket entry revealed some protectable proprietary secret, the only permissible, narrowly tailored solution would be to redact that entry alone. *In re State-Record Co., Inc.*, 917 F.2d at 129.

> 4. **The Remaining Records Should be Unsealed, or the Post Should Be Given a Supplemental Opportunity To Oppose Sealing Upon Proper Notice.**

Finally, based on the limited information currently available to the public, the Post is unable to determine what other filings may exist, or to make specific arguments about why those documents should be unsealed.

The Post believes that it is possible that the parties may litigate a motion for a preliminary injunction. As courts in the Fourth Circuit and across the country have widely recognized, a

motion for injunctive relief is subject to the more rigorous First Amendment standard. *See, e.g.*, *Allstate Ins. Co. v. Warns*, 2012 WL 681792, at *17 (D. Md. Feb. 29, 2012) (applying First Amendment standard to motion to seal preliminary injunction); *Bayer CropSci. Inc. v. Syngenta Crop Prot., LLC*, 979 F. Supp. 2d 653, 656 (M.D.N.C. 2013) ("[T]he briefing and exhibits filed in connection with motions seeking injunctive relief are subject to the public's First Amendment right of access"); *RLI Ins. Co. v. Nexus Servs., Inc.*, 2018 WL 10602398, at *1 (W.D. Va. Oct. 30, 2018) ("Here, [plaintiff] pursues sealing a motion for preliminary injunction and its supporting memorandum, declarations, and exhibits. Accordingly, the more stringent First Amendment right of public access applies."); *Baxley v. Jividen*, 2020 WL 1958632, at *3 (S.D.W. Va. Apr. 23, 2020) ("The extraordinary nature of a preliminary injunction, together with the corresponding public interest, is enough to persuade the Court that the First Amendment's right of access to judicial records must govern its analysis.") (relying on *Doe* and other cases); *see also Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009) ("Although the Fourth Circuit thus has not explicitly held that a First Amendment right of access exists with regard to non-dispositive civil motions and hearings, the precedent strongly favors that view, with the higher burden for sealing.").

As for additional filings, "no one can challenge closure of a document or proceeding that is itself a secret." *Doe*, 749 F.3d at 268. To the extent the parties seek to seal any additional documents beyond those discussed above, the Post is entitled to adequate notice and an opportunity to respond. *Id.* at 268, 272; *Globe Newspaper Co.*, 457 U.S. at 609 n.25.

## II.  THE POST SHOULD HAVE A "REASONABLE OPPORTUNITY" TO REVIEW AND RESPOND TO THE MOTION TO SEAL.

The Post thanks the Court for the opportunity to submit this opposition brief. It respectfully submits, however, that a "reasonable opportunity" to oppose the motion to seal

13

requires reasonable access to the motion itself. *See Doe*, 749 F.3d at 272. A fundamental requirement of due process is that an interested party be given notice not only of a proposed action—here, the motion to seal—but also of the asserted basis on which that action is justified. *See, e.g.*, Henry J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267, 1280 & n.76 (1975) (collecting cases). Because almost every filing in this case has been provisionally sealed, including the motion to seal itself, the Post has not had "a reasonable opportunity" to review to the arguments movants made in support of their motion. The Post does not know, for example, what compelling interest(s) movants have argued should justify sealing (if any). Relatedly, because nearly every entry on the docket remains sealed, the Post does not yet have notice of the documents that could be subject to the pending motion.[7]

The Post attempted to address this issue and requested that counsel for the parties disclose the pending motion to seal so that the Post could understand the substance of the motion before asserting its objections; they declined.[8]

If the Court contemplates that it may grant the motion to seal in whole or in part, the Post respectfully requests that the Post should first be afforded a "reasonable opportunity" to respond

---

[7] The Fourth Circuit noted in *Doe* that the intervenors "were able to challenge the sealing of only those categories of documents they were able to glean from the district court's heavily redacted memorandum opinion." *Doe*, 749 F.3d at 268–69. The court explained that this fell short of the notice requirement, and was an example of the "repugnant aspect to depriving the public and press access to docket sheets: no one can challenge closure of a document or proceeding that is itself a secret." *Id.*

[8] On Friday, November 20, counsel for the Post contacted counsel for the parties and requested that they consent to the disclosure of the pending motion to seal so that the Post could understand their arguments. On Sunday, November 22, counsel for Plaintiffs responded, stated that the "memorandum of grounds and authorities that accompanied Plaintiffs' motion to seal includes the highly confidential information that is the subject of the Court's pending sealing order," and declined to share the motion on that basis. Counsel for Plaintiffs failed to articulate any reason why the motion could not be redacted.

to the motion. The Court should, at a minimum, make available the pending motion to seal, with narrowly tailored redactions, if necessary, and provide the Post with a fair opportunity to supplement its objections and meet the arguments actually raised in the motion. Only then will the Post and any other interested parties have "reasonable opportunity . . . to voice objections to the motion." *Doe*, 749 F.3d at 272; *see* L.R. 105.11.

## CONCLUSION

For the foregoing reasons, this Court should grant the Post's motion to intervene and deny the pending motion to seal.

Dated: November 23, 2020                                Respectfully submitted,

 /s/ Thomas G. Hentoff
Thomas G. Hentoff (Bar No. 11384)
Nicholas G. Gamse (*pro hac vice* pending)
Katherine Moran Meeks (*pro hac vice* pending)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone: (202) 434-5000
Fax: (202) 434-5029
thentoff@wc.com
ngamse@wc.com
kmeeks@wc.com

*Attorneys for WP Company LLC d/b/a The Washington Post*