# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### *Southern Division*

ROBERT ROTHMAN *et al*.

               Plaintiffs,

– against –

DANIEL SNYDER

               Defendant.

**FILED UNDER SEAL**

Case No. PJM-20-3290

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE
NATIONAL FOOTBALL LEAGUE'S MEMORANDUM REGARDING JURISDICTION**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT....................................................................................1

FACTUAL BACKGROUND .......................................................................................4

    A.    The Subject Matter of This Litigation ....................................................4

    B.    The Stockholders Agreement and Its Arbitration Provision....................5

    C.    The NFL Consents to the Stockholders Agreement and Its Arbitration
        Provisions (Including the Carve-Out for Injunctive Relief Claims).......5

    D.    Plaintiffs' Rights to Sell their Stock under the Stockholders Agreement...............8

    E.    Plaintiffs Receive a *Bona Fide* Offer to Purchase Their WFI Stock ......................9

    F.    Plaintiffs Transmit a Notice of Intention to Sell to Mr. Snyder and the
        Other Stockholders of WFI ..................................................................10

    G.    Mr. Snyder Improperly Purports to Exercise His Right of First Refusal..............10

    H.    Plaintiffs Commence this Action, Mr. Snyder Thereafter Seeks to
        Arbitrate the Same Issues before the NFL, and this Court Temporarily
        Enjoins the NFL Arbitration of these Issues.........................................12

ARGUMENT...............................................................................................................14

I.    THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO
    SECTION 17(B) OF THE STOCKHOLDERS AGREEMENT.......................14

    A.    Section 17(b) of the Stockholders Agreement Unambiguously Gives
        Plaintiffs the Right to Bring this Action in this Court ...........................14

        1.    The NFL Constitution does not "supersede" Section 17(b) of the
            Stockholders Agreement ...........................................................15

        2.    Section 17(b) of the Stockholders Agreement Does Not Conflict
            with the NFL Constitution. ........................................................16

        3.    The NFL's Interpretation Is Untenable ......................................19

    B.    The Arbitration Clauses In the Consent Letters Do Not Conflict With
        Section 17(b)........................................................................................21

II.    SNYDER'S EFFORT, AFTER THIS CASE WAS ALREADY ON FILE, TO
    SEEK INJUNCTIVE RELIEF FROM THE NFL ON THE SAME ISSUES DOES
    NOT BAR THE INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK HERE.................22

III.    THE NFL GUIDELINES DO NOT BAR THE INJUNCTIVE RELIEF THAT
    PLAINTIFFS SEEK ..........................................................................................24

IV.    THE RELIEF PLAINTIFFS SEEK FALLS SQUARELY WITHIN SECTION
    17(B) ................................................................................................................27

V. NEITHER THE FEDERAL POLICY FAVORING ARBITRATION NOR THE NFL'S PURPORTED INTEREST IN ADJUDICATING THIS DISPUTE PERMIT THE PARTIES' AGREED CONTRACT TERMS TO BE DISREGARDED ............................................................................................................30

CONCLUSION...............................................................................................................................32

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*,
    555 F. App'x 153 (3d Cir. 2014) ............................................................... 27, 28

*Brown v. Nat'l Football League*,
    219 F. Supp. 2d 372 (S.D.N.Y. 2002) ........................................................... 31

*In re C & H News Co.*,
    133 S.W.3d 642 (Tex. App. 2003) .................................................................. 27

*Charles O. Finley & Co. v. Kuhn*,
    569 F.2d 527 (7th Cir. 1978) ...................................................................... 30, 32

*Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*,
    807 F.3d 553 (4th Cir. 2015) ......................................................... 14, 17, 25, 30

*Cochran v. Norkunas*,
    398 Md. 1, 919 A.2d 700 (2007) ................................................................... 27

*Commonwealth Petrochemicals Inc. v. S/S Puerto Rico*,
    607 F.2d 322 (4th Cir. 1979) ........................................................................ 15

*Connors v. Gov't Employees Ins. Co.*,
    442 Md. 466, 113 A.3d 595 (2015) .................................................. 16, 17, 20, 28

*Credible Behavioral Health, Inc. v. Johnson*,
    466 Md. 380, 220 A.3d 303 (2019) .................................................... 17, 20, 28

*Crouch v. NASCAR*,
    845 F.2d 397 (2nd Cir. 1988) ...................................................................... 30, 32

*Del Webb Communities, Inc. v. Carlson*,
    817 F.3d 867 (4th Cir. 2016) ........................................................................ 14

*Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*,
    2019 WL 5257995 (S.D.N.Y. Oct. 17, 2019) ................................................. 20

*Ellicott Mach. Corp. v. Modern Welding Co.*,
    502 F.2d 178 (4th Cir. 1974) ........................................................................ 23

*Enter. Info. Mgmt., Inc. v. SuperLetter.com, Inc.*,
    2013 WL 5964563 (D. Md. Nov. 7, 2013) ..................................................... 26

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ..................................................................................... 14

*Green v. Pro Football, Inc.*,
    31 F. Supp. 3d 714 (D. Md. 2014) ............................................................... 31

*Hawkins v. Fishbeck*,
    301 F. Supp. 3d 650 (W.D. Va. 2017) ........................................................... 17

*James & Jackson, LLC v. Willie Gary, LLC*,
    906 A.2d 76 (Del. 2006) ........................................................................ 17, 25

*Lamb v. Emhart Corp.*,
    47 F.3d 551 (2d Cir. 1995) ......................................................................... 26

*Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.*,
    986 F. Supp. 183 (S.D.N.Y. 1997) ........................................................... 23, 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*,
    756 F.2d 1048 (4th Cir. 1985) ............................................................ 23, 28, 29

*Middlebrook Tech, LLC v. Moore*,
    157 Md. App. 40, 849 A.2d 63 (2004) ........................................................... 20

*Oakland Raiders v. Nat'l Football League*,
    131 Cal. App. 4th 621 (2005) ................................................................. 30, 32

*Philips Elecs. N. Am. Corp. v. Hope*,
    631 F. Supp. 2d 705 (M.D.N.C. 2009) ........................................................... 29

*Pisgah Labs, Inc. v. Pharmaforce, Inc.*,
    2005 WL 3116584 (W.D.N.C. Nov. 22, 2005) .................................................. 29

*Raymond James Fin. Servs., Inc. v. Cary*,
    709 F.3d 382 (4th Cir. 2013) ....................................................................... 30

*Remedy Intelligent Staffing, Inc. v. Metro. Employment Corp. of Am.*,
    2008 WL 5156609 (D. Mass. Dec. 9, 2008) ............................................ 17, 25, 29

*Rescuecom Corp. v. Chumley*,
    522 F. Supp. 2d 429 (N.D.N.Y. 2007) ....................................................... 17, 25

*Rocks v. Brosius*,
    241 Md. 612, 217 A.2d 531 (1966) ............................................................... 15

*Rourke v. Amchem Prod., Inc.*,
    384 Md. 329, 863 A.2d 926 (2004) ............................................................... 15

*Schulz v. U.S. Boxing Ass'n*,
    105 F.3d 127 (3d Cir. 1997) ................................................................... 30, 32

*Seery v. DePuy Orthopaedics, Inc.*,
    2014 WL 12609706 (D.S.C. Dec. 31, 2014) .............................................. 17, 25, 30

*Seikaly v. Seikaly*,
    2019 WL 4141023 (D. Md. Aug. 29, 2019) ..................................................... 23

*Sonda v. Chesapeake Appalachia, LLC,*
    2014 WL 12605550 (N.D. W. Va. Jan. 27, 2014) .......................................................... 29

*Spacesaver Sys., Inc. v. Adam,*
    440 Md. 1, 98 A.3d 264 (2014) .................................................................................... 20

*Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. NCAA,*
    715 F.3d 1089 (8th Cir. 2013) ..................................................................................... 30

*Stockade Companies, LLC v. Kelly Rest. Grp., LLC,*
    2017 WL 1968328 (W.D. Tex. May 11, 2017) ....................................................... 17, 27

*Walther v. Sovereign Bank,*
    386 Md. 412, 872 A.2d 735 (2005) ............................................................................. 16

## ADDITIONAL AUTHORITIES

*Black's Law Dictionary* (11th ed. 2019) ...............................................................27, 29

3 Commercial Arbitration § 60.12 (3rd ed. 2020) .........................................................25

11 Williston on Contracts § 30:25 (4th ed.) .................................................................26

## PRELIMINARY STATEMENT

Plaintiffs Robert Rothman, Dwight C. Schar, and Frederick W. Smith ("**Plaintiffs**")

respectfully submit this memorandum of law in opposition to the memorandum on jurisdiction (the

"**NFL Memorandum**") submitted by Intervenor the National Football League (the "**NFL**").

It is beyond reasonable dispute that the Second Amended Stockholders Agreement (the

"**Stockholders Agreement**") of Washington Football, Inc. ("**WFI**"), to which Plaintiffs and

Defendant Daniel Snyder ("**Mr. Snyder**") are parties, includes a detailed and specific provision –

*to which the NFL consented*[1] – that expressly carves out from arbitration the type of claim for

injunctive relief that Plaintiffs have brought in this Court.  Specifically, Section 17(b) of the

Stockholders Agreement states:

> Nothing in this arbitration provision shall be deemed to . . . (ii) limit the right of
> any of the parties hereto ***to obtain from a court provisional or ancillary remedies
> such as (but not limited to) injunctive relief***.  Any of the parties hereto may obtain
> such ancillary remedies ***before, during or after the pendency of any arbitration
> proceeding*** brought pursuant to this Agreement.  The institution or maintenance of
> any action for provisional or ancillary remedies shall not constitute a waiver of the
> right of any party, including the claimant in any such action, to arbitrate the merits
> of the controversy or claim occasioning resort to such remedies.

Ex. 1 § 17(b) (emphases added).[2]

The NFL's Memorandum – *which ignores the NFL's consent to the court-remedy carve-out*

*in Section 17(b) of the Stockholders Agreement* – proceeds from the false premise that the court-

---

[1]  As described in more detail *infra*, through letters in August 2003 and March 2005, the NFL was aware of and consented to the Stockholders Agreement's court-remedy carve-out found within Section 17(b). *See* Ex. 15 (2003 Consent Letter) at 1-2; Ex. 16 (2005 Consent Letter) at §§ 6(a)-(b).

[2]  Exhibits 1-13 referenced herein are attached to the Declaration of Julia M. Beskin In Support of Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction and Plaintiffs' Motion for Protective Orders, dated November 16, 2020 (Dkt. 9-4).  Exhibits 14-18 are attached to the Supplemental Declaration of Julia M. Beskin, dated December 1, 2020 and submitted herewith.  All references to the Rothman Declaration refer to the Declaration of Robert Rothman, dated November 16, 2020. (Dkt. 9-2).

remedy carve-out in Section 17(b) is purportedly "superseded" by the NFL Constitution and Bylaws ("**NFL Constitution**"). This premise is wrong for multiple reasons.

*First*, under Maryland law, the general arbitration provision in Section 17(a) of the Stockholders Agreement, and the arbitration provision that the NFL invokes in Section 8.3 of the NFL Constitution, must be read together with the court-remedy carve-out in Section 17(b) of the Stockholders Agreement. The NFL cannot simply treat Section 17(b) as an effective nullity. In reality, there is no conflict among the provisions at issue: courts routinely enforce carve-outs to arbitration clauses, like the one in Section 17(b), to require arbitration *except* in the circumstances set forth in the carve-out provision. It is both fundamental and well-established that parties are free to structure dispute resolution provisions as they see fit; that every contract provision should be given effect; and that contracts should be construed in their entirety. Moreover, courts have consistently held that a more specific arbitration provision, including one with a carve-out (like Section 17(b) here), will govern over a more general provision (such as Section 8.3 of the NFL Constitution here). Only Section 17(b) addresses the right to pursue injunctive relief in court, and it expressly provides that Plaintiffs can pursue injunctive relief in court.

*Second*, the NFL contends that, if any party seeks injunctive relief before the NFL Commissioner, this forecloses the right of any party to seek injunctive relief on the same issues from a court. As a threshold matter, this argument is misplaced here, because it is undisputed that Plaintiffs filed their claim for injunctive relief in this Court *before* Mr. Snyder sought injunctive relief on the same subjects in a pending NFL arbitration (which until that point had been addressing entirely *different* issues, albeit involving the same parties). Moreover, Section 17(b) expressly provides that a party can seek injunctive relief in court "*before, during or after* the pendency of an

arbitration proceeding," and nothing in Section 17(b) suggests that another party can nullify this right by subsequently submitting the dispute to arbitration before the NFL Commissioner.

*Third*, the NFL Dispute Resolution Guidelines invoked by the NFL do not apply at all to the injunctive relief claim now before this Court. Those Guidelines only apply to arbitrations before the NFL Commissioner.

*Fourth*, this Court has jurisdiction, because the purely injunctive relief that Plaintiffs seek *sub judice* falls well within Section 17(b)'s court-remedy carve-out allowing a party "to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief." The NFL's assertion that Plaintiffs are only entitled to seek preliminary injunctions to preserve the status quo pending arbitration seeks to add limitations to Section 17(b) that simply do not exist. And the NFL's assertion cannot be correct, given that Section 17(b) expressly allows injunctive relief to be sought in court "*after* arbitration." Thus, the NFL's position would mean – nonsensically – that even where an arbitration has ended, a party could only seek injunctive relief to preserve the status quo for that already-ended arbitration.

*Fifth,* while the NFL invokes the general federal policy in favor of arbitration, it is well-established that this policy applies only to the extent parties agree in their contract to submit disputes to arbitration. The federal policy certainly is not to require parties to arbitrate where they have expressly carved a dispute out of their agreed arbitration clause. Similarly, while the NFL invokes policy concerns about the governance of "voluntary associations," such as sports leagues, courts have not held that any such policies permit disregarding governing contract provisions, including dispute resolution provisions. In fact, to the contrary, district courts in this Circuit and elsewhere have rejected efforts by the NFL to impose arbitration that is beyond the scope of NFL arbitration clauses. Here, the injunctive relief claims in this Court allege that Mr. Snyder has acted

improperly with respect to first refusal rights under the Stockholders Agreement, for any sale of Plaintiffs' ownership stakes in WFI. While the NFL has certain rights regarding the sale of an interest in a team, those rights are not at issue in this proceeding. Indeed, the NFL admits in its motion that it takes no position on the merits of the parties' dispute.

In short, this Court has jurisdiction over Plaintiffs' claims for injunctive relief, and it is improper for the NFL (or Mr. Snyder) to seek to deprive Plaintiffs of their contractual right to litigate those claims in this Court.

## FACTUAL BACKGROUND

### A.     The Subject Matter of This Litigation

Plaintiffs are stockholders of WFI, which owns the NFL football team franchise in the Washington, D.C. area. Plaintiffs together own 40.499% of WFI. Defendant Daniel Snyder – WFI's principal stockholder, chair and CEO – owns 40.459% of WFI. Ex. 1 at B-1.

This dispute arises from Mr. Snyder's purported exercise of his rights of first refusal, pursuant to Section 7 of the Stockholders Agreement, in connection with an offer that Plaintiffs received from certain third parties ███████████████████████ as set forth in a letter of intent Plaintiffs received from the prospective purchasers on October 16, 2020 (the "**Letter of Intent**"). *See* Ex. 3 (Letter of Intent). Specifically, Plaintiffs brought this action for an injunction: (i) precluding Mr. Snyder from exercising any rights of first refusal under the Stockholders Agreement ████████████████████████████████████ ████████████████████████████████████████ (ii) precluding Mr. Snyder from purportedly exercising his right of first refusal ██████████████ ████████████████████████████████████████ ███████████████████████ and (iii) precluding Mr. Snyder from impeding Plaintiffs'

efforts to accept the purchase proposal embodied in the Letter of Intent, including by impeding reasonable due diligence of WFI. *See* Compl. (Dkt. 1) ¶ 14.

### B.    The Stockholders Agreement and Its Arbitration Provision

On March 31, 2005, WFI's stockholders, including Plaintiffs and Mr. Snyder, entered into the Stockholders Agreement. Ex. 1 at 1; Rothman Decl. ¶ 8. This Stockholders Agreement remains operative today.

Section 17(a) of the Stockholders Agreement states, among other things, that "[a]ny controversy or claim between the parties hereto including but not limited to those arising out of or related to this Agreement or any related instruments, agreements or documents, . . . shall be determined by binding arbitration . . .." Ex. 1 § 17(a). Section 17(a) further specifies that the arbitration will be governed by the JAMS Comprehensive Arbitration Rules and Procedures and sets forth various "Special Rules" that will govern the arbitration. *See id.* § 17(a)(i)-(ii).

Section 17(b), however, contains an express carve-out from the arbitration requirement, stating, in relevant part:

> Nothing in this arbitration provision shall be deemed to . . . (ii) limit the right of any of the parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief. Any of the parties hereto may obtain such ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of any action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

Ex. 1 § 17(b).

### C.    The NFL Consents to the Stockholders Agreement and Its Arbitration Provisions (Including the Carve-Out for Injunctive Relief Claims)

The Stockholders Agreement, as noted earlier, is WFI's *Second* Amended Stockholders Agreement. The First Amended Stockholders Agreement, dated August 22, 2003, contained an identical arbitration provision – including the carve-out for court litigation of claims for

provisional or ancillary remedies such as (but not limited to) injunctive relief, before, during or after the pendency of any arbitration proceeding brought pursuant to the agreement. *See* Ex. 14 § 18(b).

By letter dated August 22, 2003, signed by then NFL Commissioner Paul Tagliabue, the NFL gave its consent to Plaintiffs' acquisition of a minority interest in WFI. Ex. 15 (2003 Consent Letter) at 1-2. That consent letter expressly states: "The Requesting Parties [that is, parties seeking the NFL's approval] certify that (i) attached hereto as Exhibit A is a true, complete and correct copy of the Amended and Restated Stockholders Agreement, dated as of August 22, 2003 and as amended through the date hereof, by and among WFI and the WFI Stockholders, *which has been modified as and to the extent required by Paragraph 5 hereof* (the 'WFI Stockholders Agreement') and (ii) the WFI Stockholders Agreement amends and restates, and therefore supercedes in its entirety, the [original] Stockholders Agreement. . . ." *Id.* at § 3(a) (emphasis added).[3]

Section 5 of the August 22, 2003 consent letter, in turn, sets forth certain provisions to be included in the Amended Stockholders Agreement, including the provision, entitled "Precedence of League Policies," stating:

> Notwithstanding any agreement to the contrary, this Agreement and any and all other arrangements between or among the parties hereto or any entity that has any interest, direct or indirect, in any party hereto which relates to the ownership or operation of the Washington Redskins franchise (the 'Franchise') as a member club of the National Football League, are subject to the Constitution and Bylaws of the National Football League, the Articles of Association and Bylaws of the NFL Management Council, and certain decisions, rulings, resolutions, actions and other

---

[3]  It is axiomatic that the NFL consented to the carve out provisions contained in the Amended and Restated Stockholders Agreement because (1) the NFL's August 22, 2003 consent letter specifically states that the Amended and Restated Stockholders Agreement has been "***modified as and to the extent required by Paragraph 5***" and (2) the specific court-remedies carve-out language at issue before this Court *remained* in that Agreement, was not removed, and was attached to the NFL's August 22, 2003 consent letter as an exhibit.

matters as more fully described in Paragraph 1 and other provisions of that certain consent letter of the NFL that was entered into in connection with the acquisition by Washington Football, Inc. of the Franchise. This Section __ and any other provision hereof affecting the rights of the National Football League may not be amended, waived or otherwise adversely affected without the prior written consent of the National Football League, in its sole discretion, which such League is a third-party beneficiary of the covenant and agreement reflected in this Section __. The parties hereto will provide copies of any amendments hereto to the National Football League, 280 Park Avenue, New York, N.Y. 10017, Attn: League Counsel.

*Id.* at § 5.

Thus, the August 22, 2003 consent letter signed by then-Commissioner Tagliabue made clear that the NFL was aware of the arbitration provisions, including the carve-out for injunctive relief claims in court in the Stockholders Agreement, and required representations concerning the existence and applicability of the Stockholders Agreement as a condition of NFL's approval of Plaintiffs' acquisition of ownership interests in WFI. The consent letter also made clear that the NFL treated the Stockholders Agreement, including its arbitration agreement and the carve-out for injunctive relief claims in court, as co-existent with the NFL Constitution.

Indeed, in March 2005, when the NFL executed another letter consenting to the acquisition by Plaintiffs' Rothman and Schar of certain additional shares of WFI stock, the WFI First Amended Stockholders Agreement – including the relevant arbitration clause and carve-out for injunctive relief claims in court – was attached as a "Consent Document." Ex. 16 (2005 Consent Letter) at §§ 6(a)-(b).[4] Section 6(a) of that 2005 Consent Letter expressly required the parties seeking the NFL's consent to "certify" that the First Amended Stockholder Agreement "remains in full force and affect." *Id.* at § 6(a).

When the parties entered into the Stockholders Agreement – that is, the Second Amended Stockholder Agreement – in August 2005, it contained (as noted) the exact same arbitration clause

---

[4] The signature page to the 2005 Consent Letter is found in Ex. 17 at 4.

and carve-out for injunctive relief claims in court as had been included in the First Amended Stockholder Agreement.

### D. Plaintiffs' Rights to Sell their Stock under the Stockholders Agreement

Section 7 of the Stockholder Agreement concerns "Voluntary Sale of Stock: Rights of First Refusal." It expressly recognizes the rights of Plaintiffs, as Stockholders, to sell their WFI stock. Section 7(a) states:

> If a Stockholder (a "Selling Stockholder") proposes to effect a Sale of any shares of Stock (other than as permitted by Section 6(c)), then such Selling Stockholder shall give to the Company a written notice (a "Notice of Intention to Sell") setting forth in reasonable detail the terms and conditions of such proposed transaction, including the identity of the proposed purchaser of such shares and enclosing any agreements, draft agreements or letters of intent relating to such proposed Sale. The Company shall deliver such notice of Intention to Sell to the other Stockholders (the "Other Stockholders") promptly upon relief thereof.

Ex. 1 § 7(a) (emphasis in original).

Section 7(b) in turn describes the "rights of first refusal" that "shall apply with respect to a proposed Sale of Non-Voting Stock by a Non-Voting Stockholder," including Plaintiffs. *Id.* § 7(b). Section 7(b)(i) provides that any exercise of a right of first refusal must be "at a purchase price equal to (and on other terms substantially comparable to) that specified in the Notice of Intention to Sell." *Id.* § 7(b)(i).

Section 7(b)(v) provides, in relevant part: "If (A) the Other Stockholders do not elect to purchase all of the Non-Voting Stock that is the subject of the Notice of Intention to Sell . . . such elections will be void and the Selling Stockholder may consummate the sale of all of the Non-Voting Stock proposed to be sold to the proposed third party purchaser pursuant to the terms set forth in the Notice of Intention to Sell." *Id.* § 7(b)(v).

**E.** **Plaintiffs Receive a *Bona Fide* Offer to Purchase Their WFI Stock**

On October 16, 2020, Plaintiffs received the Letter of Intent regarding the acquisition of their collective stake (approximately 40.5%) in WFI. Ex. 3. The Letter of Intent stated that the prospective purchasers are highly enthusiastic about the opportunity to acquire ██████████ ███████████████ *Id.* at 1.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████

The Letter of Intent sets forth in Paragraph F the terms of a period for exclusive negotiations between Plaintiffs and the potential purchasers (the "**Exclusive Negotiation Period**") that expires on November 25, 2020. *Id.* at 3-4. The Letter of Intent further states that the potential

purchasers are committed "to execute definitive documentation promptly ███████ ████████████████████████████████████████████ *Id.* at 1.

**F.     Plaintiffs Transmit a Notice of Intention to Sell to Mr. Snyder and the Other Stockholders of WFI**

On October 23, 2020, Plaintiffs, by their counsel, transmitted to Mr. Snyder and WFI a formal Notice of Intention to Sell WFI Stock, which attached the Letter of Intent and stated:

> Pursuant to Sections 7(a) and 7(b) of the Second Amended and Restated Stockholders Agreement of Washington Football, Inc. ("WFI"), Mr. Robert Rothman, Mr. Dwight Schar, and Mr. Frederick Smith (the "RSS Stockholders") hereby notify WFI that the RSS Stockholders intend to sell the RSS Stockholders' stock in WFI pursuant to the terms specified in the attached October 16, 2020 letter.

> This Notice and the attached is being provided to you at this time to allow for the other WFI stockholders to determine, within fifteen (15) days of the date of the delivery of this Notice if the other WFI stockholders elect to exercise their right of first refusal to purchase the RSS Stockholders' stock at a purchase price equal to and on other terms substantially comparable to those specified in the attached October 16, 2020 Letter.

Ex. 4 at 1.

**G.     Mr. Snyder Improperly Purports to Exercise His Right of First Refusal**

Mr. Snyder then wrongly attempted to obstruct Plaintiffs' sale of their shares by purporting

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████

Mr. Snyder's counsel on November 9, 2020 notified Plaintiffs' counsel by letter that Mr. Snyder and the other WFI stockholders considered Plaintiffs' October 23, 2020 Notice of Intention to Sell purportedly to be deficient in certain respects. Ex. 8. One of the purported deficiencies was that:



*Id.* at 2 (emphases in original).

And Mr. Snyder's counsel concluded his November 9, 2020 letter by stating:

Mr. Snyder has elected to exercise his Right of First Refusal

Furthermore, this asserted

exercise of Mr. Snyder's right of first refusal also failed to comply with Section 7(b)(i) of the Stockholders Agreement (Ex. 1), which requires that any exercise of the right of first refusal be "at a purchase price equal to (and on other terms substantially comparable to) that specified in the Notice of Intention to Sell." ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

**H.**    **Plaintiffs Commence this Action, Mr. Snyder Thereafter Seeks to Arbitrate the Same Issues before the NFL, and this Court Temporarily Enjoins the NFL Arbitration of these Issues.**

On November 13, 2020, Plaintiffs filed the Complaint, under seal, at approximately 9:50 am. Dkt. 1. Plaintiffs received back the executed summons from the Court at approximately 1:30 pm that same day. Dkt. 8. At 2:09 pm that day, Plaintiffs sent the following pleadings to Mr. Snyder's counsel (with a request that Mr. Snyder's counsel advise if he would be willing to accept service of these pleadings on behalf of Mr. Snyder): the executed summons, the Complaint and civil cover sheet, the motion to seal and accompanying memorandum, and the appearance and admission pleadings. Beskin Decl. ¶ 15.

At 1:25 pm on November 13, 2020, Mr. Snyder served on Plaintiffs, in a pending NFL arbitration between the parties that until that point had involved different issues, a motion for temporary restraining order and preliminary injunction on the same matters that were now pending before this Court in Plaintiffs' earlier-filed Complaint. *Id.*

On November 16, 2020, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Emergency TRO/PI Motion"). Dkt. 9. Plaintiffs sought

temporary restraining orders precluding Mr. Snyder from exercising his Right of First Refusal, impeding Plaintiffs' efforts to accept the purchase proposal, and pursuing in arbitration his claims for injunctive relief on the same issues now pending before this Court. Dkt. 9 at 2.

Following a telephonic hearing with the parties, this Court on November 19, 2020 temporarily enjoined both Mr. Snyder and the NFL from proceeding with "arbitration of any issues before the Court in the present matter, pending further order of the Court." Dkt. 31 §§ 1-2. This Court also ordered (among other things) that:

> No party to this case shall take any action to interfere with the rights of any other party relative to this case. (e.g., by way of disparagement or otherwise) – more specifically, the right of Plaintiffs to continue to negotiate with the proposed purchasers of Plaintiffs' stock in Washington Football Inc. and to pursue due diligence and the right of Defendant Snyder to claim a right of first refusal to purchase said stock. (But note: pending further order of the Court, Defendant shall not be required to take any affirmative steps in connection with said due diligence. Insofar as Plaintiffs may deem any documents in the possession of WFI to be appropriate to obtain as part of the prospective purchasers' due diligence, Plaintiffs shall make their request to Defendant and WFI in writing. Defendant and WFI shall have 2 business days to respond in writing to the request and Plaintiffs shall have 1 business day thereafter to reply. In the event of disagreement in this regard, either side may submit the dispute in writing to the Court, which will promptly rule on the dispute and may do so in the Court's discretion without oral argument.

Dkt. 31, § 9.

On November 20, 2020, the NFL filed its Motion to Intervene for the limited purpose of challenging this Court's jurisdiction to hear Plaintiffs' claims. Dkt. 35. Plaintiffs did not oppose that Motion to Intervene, which this Court granted that same day. Dkt. 36.

**ARGUMENT**

**I.** **THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO SECTION 17(b) OF THE STOCKHOLDERS AGREEMENT**

    **A.** **Section 17(b) of the Stockholders Agreement Unambiguously Gives Plaintiffs the Right to Bring this Action in this Court**

While Section 17 of the Stockholders Agreement mandates arbitration of disputes, it expressly provides that the parties can seek "to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief." Ex. 1 § 17(a)-(b).

It is axiomatic that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *see also Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (courts are "careful to avoid forcing parties to resolve their disputes through means not intended at the time of contract formation."). To determine whether the parties agreed to arbitrate a particular dispute, courts "apply ordinary state law principles governing the formation of contracts." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants*, Inc., 807 F.3d 553, 563 (4th Cir. 2015). And when "[t]he issue whether a dispute is arbitrable presents primarily a question of contract interpretation," courts must "give effect to the parties' intentions as expressed in their agreement" and will "hold[] [a party] to the terms of the agreements." *Id.* at 563, 571 (internal quotations omitted).

Section 21(a) of the Stockholders Agreement states that the agreement is "subject to" the NFL Constitution (Ex. 1); Section 8.3(A) of the NFL Constitution, in turn, gives the Commissioner "jurisdiction and authority to arbitrate [a]ny dispute . . . involving two or more holders of an ownership interest in a member club of the League, certified to him by any of the disputants" (Ex. 12). The NFL claims that there is a conflict between Section 8.3(A) of its Constitution and the carve-out from arbitration for ancillary and provisional relief, and that, pursuant to the "subject

to" language of Section 21(a) of the Stockholders Agreement, this supposed conflict should be resolved by jettisoning Section 17(b). NFL Mem. 12.

1. **The NFL Constitution does not "supersede" Section 17(b) of the Stockholders Agreement**

Remarkably, the NFL argues that Section 17(b) "plays no role" because it "conflict[s]" with and is "supersede[d]" by the NFL Constitution. NFL Mem. 12. The NFL argues that because Section 21(a) of the Stockholders Agreement states that the Agreement is "subject to the Constitution, Bylaws and other rules and regulations of the NFL," in the event of a conflict between the Stockholders Agreement and the NFL Constitution, the latter should trump. *Id.* The NFL's argument is incorrect.

Section 21(a) operates to incorporate the NFL Constitution into the Stockholders Agreement. *See Commonwealth Petrochemicals Inc. v. S/S Puerto Rico*, 607 F.2d 322, 324 & n.4 (4th Cir. 1979) (a provision that an agreement is "subject to" another document incorporates that document by reference). And because the NFL Constitution is incorporated by reference into the Stockholders Agreement, governing Maryland law requires the two documents to be interpreted together. *Rourke v. Amchem Prod., Inc.*, 384 Md. 329, 354, 863 A.2d 926, 941 (2004) ("Where the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect."); *Rocks v. Brosius*, 241 Md. 612, 637, 217 A.2d 531, 545 (1966) ("Where several instruments are made a part of a single transaction they will all be read and construed together as evidencing the intention of the parties in regard to the single transaction. This is true even though the instruments were executed at different times and do not in terms refer to each other.").

15

## 2. Section 17(b) of the Stockholders Agreement Does Not Conflict with the NFL Constitution.

The NFL's argument fails at the threshold because there is no conflict between Section 17(b) of the Stockholders Agreement and the NFL Constitution. The NFL Constitution includes a general arbitration clause but is silent on the availability of injunctive relief in court. There is nothing in the text of the NFL Constitution that limits Plaintiffs' right "to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief," as expressly permitted by Section 17(b).

Section 17(b) of the Stockholders Agreement and the NFL Constitution can both be given effect by requiring the arbitration of all claims certified to the Commissioner, but permitting parties, as Plaintiffs did here, to seek injunctive relief in court, as permitted by Section 17(b). It is important that here, Plaintiffs' filed their claims for injunctive relief in this Court *before* Mr. Snyder sought to bring injunctive relief claims on the same issues in an NFL arbitration. This case therefore does not require this Court to address the issue of whether injunctive relief claims could be brought in court pursuant to Section 17(b) of the Stockholders Agreement *after* injunctive relief claims on those same issues had been filed in an NFL arbitration.

This harmonization of Section 17(b) of the Stockholders Agreement and Section 8.3(A) of the NFL Constitution is consistent with the principle that the Court should strive to give every contractual provision effect. *See Connors v. Gov't Employees Ins. Co.*, 442 Md. 466, 480, 113 A.3d 595, 603 (2015); *see also Walther v. Sovereign Bank*, 386 Md. 412, 422, 872 A.2d 735, 741 (2005) ("Whether a valid arbitration agreement exists . . . 'depends on contract principles since arbitration is a matter of contract.'") (citations omitted).

Accordingly, "*a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing* unless no other course can be sensibly and

reasonably followed." *Connors*, 442 Md. at 480, 113 A.3d at 603 (emphasis added) (citation omitted). The NFL's arguments should be rejected because the NFL effectively urges this Court "to nullify the substance of [a contractual provision] rather than effectuate a reasonable interpretation that harmonizes the two provisions," an argument that "runs contrary to [Maryland] tenets of contract interpretation." *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 399, 220 A.3d 303, 313-14 (2019) (citations omitted).

Courts have consistently adopted this approach when construing contracts that contain both an arbitration provision and express carve-outs authorizing the pursuit of injunctive relief in court. *See Chorley Enterprises, Inc.*, 807 F.3d at 569 (a harmonious interpretation of a general arbitration clause and a specific carve-out clause "demonstrate[s] that the parties intended to arbitrate all claims except for [those in the carve out clause]."); *Seery v. DePuy Orthopaedics, Inc.*, 2014 WL 12609706, at *2 (D.S.C. Dec. 31, 2014); *Stockade Companies, LLC v. Kelly Rest. Grp., LLC*, 2017 WL 1968328, at *4 (W.D. Tex. May 11, 2017); *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 451-52 (N.D.N.Y. 2007); *Remedy Intelligent Staffing, Inc. v. Metro. Employment Corp. of Am.*, 2008 WL 5156609, at *2 (D. Mass. Dec. 9, 2008); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 81 (Del. 2006).

Indeed, courts consistently have found that a general arbitration clause and a specific carve-out for injunctive relief do not conflict. For example, in *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650 (W.D. Va. 2017), the court found that an arbitration agreement that "expressly allow[ed] the [Plaintiff] to seek injunctive relief for the violation of" employment covenants "does not prevent Plaintiff from seeking injunctive relief in this Court." *Id.* at 656 n.4. Similarly, in *Stockade Companies*, 2017 WL 1968328, the court rejected the argument that there was a conflict between a sentence in a provision that carved out actions for injunctive relief from an arbitration clause and

another sentence that gave the Franchisor the discretion to submit the "ultimate controversy" to arbitration. *Id.* at *4. The court found that these two sentences were "not at odds," because "[r]ead together, in context" they provided that the Franchisor could seek injunctive relief in court while also "submit[ting] the ultimate issues beyond injunctive relief to arbitration." *Id.*

The NFL's argument that that the court-remedy carve-out in Section 17(b) of the Stockholders Agreement conflicts with the NFL Constitution also cannot be reconciled with the NFL's prior recognition and approval of the Stockholders Agreement – including its arbitration provision and carve out for injunctive relief claims in court.

As discussed above, when the NFL consented in August 2003 to Plaintiffs' acquisition of ownership interests in WFI, the NFL's consent letter included as an exhibit WFI's First Amended Stockholders Agreement – which contained the exact same arbitration provision, and carve out for injunctive relief claims in court – that is included in the Stockholders Agreement that governs here. That same August 2003 consent letter also noted that the First Amended Stockholders Agreement would include a provision stating that the parties agreed to be subject to the Constitution and Bylaws of the NFL – meaning that the NFL recognized that the Stockholders Agreement and its arbitration provision and court-remedy carve-out co-existed with the NFL Constitution and Bylaws.

And in March 2005, when the NFL executed another letter consenting to the acquisition by Plaintiffs' Rothman and Schar of certain additional shares of WFI stock, the WFI First Amended Stockholders Agreement – including the relevant arbitration clause and carve-out for injunctive relief claims in court – was attached as a "Consent Document." Moreover, Section 6(a) of that 2005 Consent Letter expressly required the parties seeking the NFL's consent to "certify" that the First Amended Stockholders Agreement "remains in full force and affect." *Id.* at § 6(a).

### 3. The NFL's Interpretation Is Untenable

The NFL argues that Section 17(b) does not apply to arbitrations certified to the NFL Commissioner under Section 8.3(A) of the NFL Constitution. In support of its argument, the NFL relies on the opening sentence of Section 17(b), which states that "nothing in this arbitration provision" limits the parties right to seek injunctive relief. NFL Mem. 12; Ex. 1 § 17(b).

To begin with, the NFL's position puts the cart before the horse. Here, there was *no preexisting NFL arbitration of the issues in this litigation* at the time Plaintiffs commenced this action for injunctive relief before 10:00 am on the morning of November 13, 2020. It was only that afternoon, when this case already was pending, that Mr. Snyder submitted – in a pending NFL arbitration between the parties that up until that point had not addressed any matter at issue in this litigation – a request for injunctive relief on the same subjects by then pending in this litigation.

Nothing in Section 17(b) of the Stockholders Agreement remotely suggests that a party's exercise of its right to pursue injunctive relief claims in court can be upended by another party's *subsequent* effort to bring injunctive relief claims on the same subjects in an NFL arbitration. Indeed, Section 17(b) expressly provides that a party can pursue injunctive relief in court "*before, during or after* the pendency of any arbitration proceeding brought pursuant to this Agreement." Ex. 1 § 17(b) (emphasis added).

It belies common sense for the NFL now to suggest that Mr. Snyder's injunctive relief claims before the NFL were not brought pursuant to the Stockholders Agreement. Indeed, like Plaintiffs' pre-existing claims here, they expressly concern Plaintiffs' right to sell their ownership stake, and Mr. Snyder's right of first refusal, under Section 7 of the Stockholders Agreement. And, as discussed above, the Stockholders Agreement incorporates the NFL Constitution by reference – meaning that to the extent Mr. Snyder sought to avail himself of NFL arbitration pursuant to the

NFL Constitution and Bylaws, this still would have been under the Stockholders Agreement. *See* Point I(A)(1), *supra.*

That is certainly what a "reasonable person in the position of the parties would have thought [Section 17(b)] meant," and that is what the "clear and unambiguous language of the [Stockholders] Agreement" requires. *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 8, 98 A.3d 264, 268-69 (2014) (citation omitted). And that is what has occurred here. Because "[t]he court's interpretation should not permit an absurd or unreasonable result," the NFL's interpretation should be rejected. *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 66, 849 A.2d 63, 79 (2004).

The NFL submits that Section 17(b) should "only" apply "if[] neither the parties nor the Commissioner had invoked the League's exclusive jurisdiction." NFL Mem. 12. This argument fails because "nullify[ing] the substance of [a contractual provision] rather than effectuat[ing] a reasonable interpretation that harmonizes the two provisions . . . runs contrary to [Maryland] tenets of contract interpretation." *Credible Behavioral Health, Inc.*, 466 Md. at 399, 220 A.3d at 313-14. And "a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Connors*, 442 Md. at 480, 113 A.3d at 603 (citation omitted).

The NFL's position is particularly unreasonable, given that Section 17(b) is a critical bargained-for protection to ensure that Plaintiffs are not irreparably harmed by Mr. Snyder before, during, and after the pendency of any arbitration. It is a protection that is particularly critical here, in the context of the proposed sale to the potential purchasers, as "[a] transaction that is lost is hard to replace" and "[i]f [a party] is permitted to … prevent a sale, another equivalent transaction may become speculative." *Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*, 2019 WL

5257995, at *7 (S.D.N.Y. Oct. 17, 2019). Yet the NFL's theory would permit Mr. Snyder to render this key protection a nullity by unilaterally deciding to certify the dispute to the Commissioner.

**B.    The Arbitration Clauses In the Consent Letters Do Not Conflict With Section 17(b)**

Section 21(a) of the Stockholders Agreement references the two NFL consent letters – one from 2003 and another from 2005 – discussed above, *see* pp. 5-8, *supra.* As discussed above, neither conflicts with Section 17(b) of the Stockholders Agreement – and in fact both letters confirm the NFL's knowledge of and consent to the Stockholders Agreement, including Section 17. The 2003 Consent Letter states that the NFL "approves" the acquisition of shares by the Plaintiffs (Ex. 15 at 1), and the letter attached an earlier version of the Stockholders Agreement (*id.* at 4, § 3(a)) that included the exact same arbitration provision and court-remedy carve-out as in Sections 17(a) and (b) of the Stockholders Agreement. As noted, *supra*, in granting its consent in August 2003, the NFL made clear that the Amended and Restated Stockholders Agreement that contained the court-remedy carve-out language at issue here had been "modified as and to the extent required by Paragraph 5" of the 2003 Consent Letter, which includes the language about League Policies cited by the NFL. Surely if the NFL believed that this court-remedy carve-out language was in conflict with the NFL's own policies, the NFL would have requested that the court-remedy carve-out language be removed. Instead, it is axiomatic that the NFL believed that removal of the court-remedy carve-out was *not* required by paragraph 5, because the carve-out was not requested to be removed – and was, in fact, included in the Amended and Restated Stockholders Agreement attached as an exhibit to the 2003 Consent Letter.

Furthermore, the 2003 Consent Letter specifically addresses arbitration, but it does not conflict with or alter Section 17(b) of the Stockholders Agreement. Specifically, paragraph 10 of the 2003 Consent Letter sets forth certain arbitration provisions that apply only to disputes between

"the NFL, on the one hand," and certain other parties, on the other hand. *Id.* at 10. Because the NFL is not a party to the present dispute – the NFL states that it "has no position as to the underlying merits of [this] dispute," Dkt. 35-1 (NFL's Memorandum of Law in Support of Its Unopposed Motion To Intervene), at 3 – the arbitration provision in the 2003 Consent Letter does not apply. Similarly, the right to injunctive relief in the 2003 Consent Letter does not apply here, because it only affects the NFL's right to injunctive relief. Ex. 15 (2003 Consent Letter) § 13.

The 2005 Consent Letter states that the NFL "consents to the acquisition transactions contemplated in the Consent Documents," which documents again include the earlier version of the Stockholders Agreement with the same arbitration provision and injunctive relief carve-out. Ex. 16 (2005 Consent Letter) at 2, 4. The 2005 Consent Letter also provides that disputes "arising under or otherwise relating to" the 2005 Consent Letter "shall, to the extent required by the NFL Constitution . . ., be subject to, and submitted for, arbitration in accordance with the applicable provisions thereof." *Id.* § 11. Because the present dispute concerns the right of first refusal in the Stockholders Agreement, and not the 2005 Consent Letter, the arbitration provision in the 2005 Consent Letter does not apply. The 2005 Consent Letter provision on injunctive relief (*id.* § 10) also does not apply because it only pertains to the NFL's right to an injunction.

## II.  SNYDER'S EFFORT, AFTER THIS CASE WAS ALREADY ON FILE, TO SEEK INJUNCTIVE RELIEF FROM THE NFL ON THE SAME ISSUES DOES NOT BAR THE INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK HERE.

The Court should reject the NFL's argument that injunctive relief should be refused because "Defendants certified this dispute to the Commissioner" and "plaintiffs had already certified the parties' broader dispute" to the Commissioner. NFL Mem. 8.

*First*, as discussed in detail above, Mr. Snyder purported to certify the subject matter of Plaintiffs' Complaint to the Commissioner only after Plaintiffs filed their Complaint in this Court.

*See* p. 12, *supra*; *see also* Beskin Decl. ¶ 15. Thus, this action has priority pursuant to the first-to-file rule. *See Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n. 2 (4th Cir. 1974).

*Second*, despite the NFL's repeated assertions to the contrary, the dispute before this Court is not part of a "broader" dispute that is the subject of the ongoing arbitration, which Plaintiffs commenced before the NFL Commissioner on June 26, 2020. NFL Mem. 6. Indeed, as Mr. Snyder acknowledges, the subject matter of the pending arbitration ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████ There is no dispute that Plaintiffs' June 26, 2020 Request for Arbitration did not put at issue Mr. Snyder's exercise of his Right of First Refusal under Section 7 of the Stockholders Agreement (nor could it have, as Plaintiffs did not even receive the Letter of Intent until October 2020, *see* Ex. 3, and Mr. Snyder did not purport to exercise his right of first refusal until November 2020, *see* Ex. 8). Nor did Mr. Snyder raise his Right of First Refusal ███████████ ████████████████████████████████████████████████████████████████

*Third*, the Stockholders Agreement in any event provides that the parties can obtain injunctive relief in court "before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement." Ex. 1 § 17(b) (emphasis added). In fact, even in the absence of the carve-out from arbitration in Section 17(b), this Court would nonetheless have jurisdiction to order injunctive relief even if an arbitration had been previously pending. For instance, in *Seikaly v. Seikaly*, 2019 WL 4141023 (D. Md. Aug. 29, 2019), a court in this District found that it "has the authority . . . to issue the requested injunctive relief" pursuant to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985), even in the absence of a provision expressly authorizing injunctive relief. *Seikaly*, 2019 WL 4141023, at *3 (citing *Merrill Lynch*, 756 F.2d at 1053-54). Similarly, in *Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.*, 986 F. Supp.

183 (S.D.N.Y. 1997), the court found that if a party could "show that the prerequisites for a preliminary injunction are present in this case, then an injunction is proper regardless of the pending arbitration." *Id.* at 186.

## III. THE NFL GUIDELINES DO NOT BAR THE INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK

The NFL argues that the NFL Dispute Resolution Guidelines, which grant the Commissioner the discretion to provide interim relief, "govern this dispute" and create a "conflict" with Section 17(b) of the Stockholders Agreement. NFL Mem. 12. This argument fails for three independent reasons.

*First*, the NFL's argument again puts the cart before the horse, because the Guidelines only apply if a dispute is, in fact, to be arbitrated by the NFL Commissioner. The Guidelines only apply if an arbitration is validly certified to the Commissioner pursuant to Section 8.3 of the NFL Constitution. *See* NFL Mem. 3; Ex. 13 § 1.

*Second*, the NFL has failed to identify any actual conflict between the Guidelines and Section 17(b). The Guidelines merely grant the Commissioner discretion to "take or require such interim measures as he deems necessary . . . ." Ex. 13 § 12. Nothing in the Guidelines purports to oust the jurisdiction of the courts to provide interim relief. Comparing the Guidelines to the JAMS/Endispute rules that the parties agreed would govern arbitrations brought under Section 17(a) of the Stockholders Agreement makes this clear. Like the Guidelines, the JAMS rules also provide the arbitrator with a discretion to grant interim relief. Ex. 18 (JAMS Comprehensive Arbitration Rules & Procedures) § 24(e). Yet the NFL accepts that Plaintiffs have the right to seek injunctive relief in court in an arbitration brought under Section 17(a) and governed by the JAMS rules. NFL Mem. 12. If the NFL accepts the parties' ability to find relief through Section 17(a), then it follows that the court-remedy carve-out in Section 17(b) should be equally acceptable.

The NFL has cited no authority for the proposition that injunctive relief in court pursuant to a contractual carve-out somehow ceases to be available simply because such relief may also be obtained in arbitration under the applicable arbitration rules. To the contrary, courts have frequently awarded injunctive relief pursuant to express contractual carve-outs authorizing injunctive relief even when such relief could also be obtained in arbitration under the applicable arbitration rules. For instance, in *Chorley Enterprises, Inc.*, the Fourth Circuit found that it had jurisdiction to award injunctive relief pursuant to a carve-out clause, even though the arbitration clause provided for application of American Arbitration Association (AAA) rules that authorized the arbitrator to provide interim relief. 807 F.3d at 566-69; *see also* 3 Commercial Arbitration § 60.12 (3rd ed. 2020) (discussing that the AAA rules authorize interim relief); *James & Jackson, LLC*, 906 A.2d at 81; *Rescuecom Corp.*, 522 F.Supp.2d at 451; *Remedy Intelligent Staffing, Inc.*, 2008 WL 5156609, at *1-2; *Seery*, 2014 WL 12609706, at *1-2.

*Third*, notably, the NFL Guidelines were never validly incorporated by reference into the Stockholders Agreement. Neither the Stockholders Agreement nor the NFL Constitution itself reference the Guidelines, even though Section 21(a) of the Stockholders Agreement enumerates several specific NFL documents that are binding on the parties. *See generally* Exs. 1, 12. The 2003 Consent Letter similarly makes no reference to the NFL Guidelines despite outlining a list of NFL documents that is even more exhaustive than the list in Section 21(a) of the Stockholders Agreement. Ex. 15 § 1. In fact, the NFL adopted the Guidelines eight years after the parties signed the Stockholders Agreement. *See* Ex. 13 at 2 (bottom-right date May 23, 2013).

The NFL nonetheless claims Section 21(a) of the Stockholders Agreement incorporates the Guidelines by reference. NFL Mem. 13. While the NFL does not go into detail, perhaps it is referring to the provision of Section 21(a) that references the parties' agreement to be bound by

"other rules and regulations of the NFL." Ex. 1 § 21(a); *see also* Ex. 15 (2003 Consent Letter) § 1

(referencing "such other rules or policies as the . . . Commissioner may issue from time to time").

Yet, "in the case of incorporated terms to be determined by one party in the future, there must be

an ascertainable standard for the new terms which is set forth in the original agreement and which

can provide a substitute for present knowledge of and assent to the subsequently adopted

provisions." 11 Williston on Contracts § 30:25 (4th ed.) (citing *Lamb v. Emhart Corp.*, 47 F.3d

551 (2d Cir. 1995)); *see also Enter. Info. Mgmt., Inc. v. SuperLetter.com, Inc.*, 2013 WL 5964563,

at *7 (D. Md. Nov. 7, 2013) (parties would only be bound by a separate document incorporated by

reference if its "contents . . . could have been ascertained [at the time of contracting], and

incorporation of the document would not result in surprise or hardship").  Neither Section 21(a)

of the Stockholders Agreement nor the NFL Constitution provide "an ascertainable standard for

the [Guidelines] . . . which can provide a substitute for present knowledge of and assent." 11

Williston on Contracts § 30:25.  The passing reference to "other rules and regulations of the NFL"

in Section 21(a) does not even purport to set out an ascertainable standard that could substitute for

Plaintiffs' knowledge of the Guidelines at the time of contracting. Ex. 1 § 21(a).  Neither does the

2003 Consent Letter reference to "such other rules or policies as the . . . Commissioner may issue

from time to time" purport to set out any standard for the promulgation of procedural guidelines.

Ex. 15 § 1.  And the NFL Constitution itself only addresses in general terms the Commissioner's

authority to "establish policy and procedure in respect to the provisions of the Constitution." Ex.

12 § 8.5.  The NFL Constitution neither references dispute resolution guidelines nor attempts to

set out an ascertainable standard to govern their promulgation. *Id.*  Thus, the NFL Guidelines

cannot be enforced against Plaintiffs because "a manifestation of mutual assent is an essential

prerequisite to the creation or formation of a contract." *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007).[5]

## IV.    THE RELIEF PLAINTIFFS SEEK FALLS SQUARELY WITHIN SECTION 17(b)

The NFL argues that the relief sought by Plaintiffs purportedly falls outside Section 17(b) because it is not "provisional or ancillary." NFL Mem. 14. Again, the NFL is wrong.

*First*, the NFL suggests that the only relief within the scope of Section 17(b) is what the NFL asserts is the dictionary definition of "provisional remed[ies]" – namely, TROs and preliminary injunctions. *See* NFL Mem. 14. But this argument ignores that Section 17(b) authorizes "provisional *or* ancillary remedies." Ex. 1 § 17(b) (emphasis added). Even the NFL acknowledges that "ancillary" relief includes relief that is "'supplementary.'" NFL Mem. 14 (quoting Black's Law Dictionary (11th ed. 2019)). "Supplementary" relief certainly can include permanent injunctive relief. *See, e.g., Stockade Companies*, 2017 WL 1968328 at *4 (court permitted plaintiff to seek a permanent injunction even though the arbitration clause contemplated the submission of "the ultimate issues beyond injunctive relief to arbitration").

*Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153 (3d Cir. 2014) is instructive. In *Aetrex Worldwide*, the court considered a carve-out clause that excepted "an action seeking a temporary restraining order or injunction." *Id.* at 153. The party seeking to compel arbitration argued that the word "temporary" modified both "restraining order" and "injunction." *Id.* at 154. The court rejected this argument, concluding that it "is both more intuitive and more

---

[5] *Cf. In re C & H News Co.*, 133 S.W.3d 642, 646-47 (Tex. App. 2003) (arbitration agreement between an employee and employer provided for "binding arbitration as provided in the [employee] Handbook"; the Handbook, in turn, provided that its content "may, and likely will, be changed, modified, deleted or amended from time to time . . . with or without prior notification to employees"; the court found the employer had "reserved the right to unilaterally amend the types of claims subject to arbitration," and thus "to pick and choose the claims it wants to arbitrate," and thus the agreement was "unenforceable" because there was no mutual assent.).

consistent with ordinary usage" to read the clause disjunctively so that "temporary" only applied to "restraining order" and the clause thus "except[ed] . . . suits for injunctions (of all kinds)." *Id.* at 155. Similarly, here, it is not reasonable for the NFL to suggest that the phrase "provisional or ancillary" means only temporary injunctive relief – particularly where Section 17(b) uses the term "injunctive" relief at the very least as a modifier of "ancillary." *See* Ex. 1 § 17(b) ("provisional or ancillary remedies such as (but not limited to) injunctive relief").

The NFL's interpretation also is inconsistent with the principle that "[i]f reasonably possible, effect must be given to each clause" in an agreement. *Connors*, 442 Md. at 480, 113 A.3d at 603 (citation omitted). Like the NFL in this case, the party seeking to compel arbitration in *Aetrex Worldwide* "point[ed] to cases where courts have allowed motions for temporary or preliminary injunctions [to preserve the status quo pending arbitration] even though the parties have agreed to arbitrate all disputes." *Aetrex Worldwide*, 555 F. App'x at 155; *compare with* NFL Mem. 16 (citing *Merrill Lynch*, 756 F.2d at 1052). The Third Circuit in *Aetrex Worldwide* concluded that such "cases actually undermine [that] argument. If, as our precedent . . . suggests, preliminary injunctions necessary to preserve the *status quo* pending arbitration are available even without an explicit exception to the arbitration agreement, a contractual provision excepting only temporary injunctions (and temporary restraining orders) would be superfluous, thus strongly implying that the parties instead intended to except injunctions of all kinds." *Aetrex Worldwide*, 555 F. App'x at 155. Here, restricting Section 17(b) to preliminary injunctions that merely preserve the status quo pending arbitration on the merits similarly would "nullify the substance of [Section 17(b)] rather than effectuate a reasonable interpretation" that gives it effect. *Credible Behavioral Health, Inc.*, 466 Md. at 399, 220 A.3d at 313-14. And, as noted above, the NFL's suggestion that any injunctive relief under Section 17(b)'s court-remedy carve-out should only be for injunctive

relief to preserve the status quo pending arbitration of the merits cannot be reconciled with Section 17(b)'s express provision that injunctive relief can be sought in court even "after" an arbitration has occurred.

*Second*, the NFL's reliance on *Merrill Lynch* and the line of cases following it is misplaced. NFL Mem. 16-17. Unlike the facts *sub judice*, the contract in *Merrill Lynch* contained **only** an arbitration provision and did not contain a provision expressly carving-out injunctive relief. *See* 756 F.2d at 1050. Accordingly, the District Court decisions in this Circuit that apply *Merrill Lynch* (on which the NFL relies) are similarly inapposite. NFL Mem. 16-17. For example, in *Sonda v. Chesapeake Appalachia, LLC*, 2014 WL 12605550 (N.D. W. Va. Jan. 27, 2014), the contract also contained no carve-out for injunctive relief. *Id.* at *1. And while the contract in *Pisgah Labs, Inc. v. Pharmaforce, Inc.*, 2005 WL 3116584 (W.D.N.C. Nov. 22, 2005), did include an opt-out provision, the court simply applied *Merrill Lynch* without attempting to interpret or address the contractual language in the carve-out. *Id.* at *3.

*Third*, the NFL concedes that "temporary restraining order[s]" and "preliminary injunction[s]" are plainly "provisional remed[ies]." NFL Mem. 14 (quoting Black's Law Dictionary (11th ed. 2019)); *see also Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 711 n.2 (M.D.N.C. 2009) (parties did "not dispute that this court has jurisdiction to enter a preliminary injunction" pursuant to both an express carve-out for injunctive relief and *Merrill Lynch*); *Remedy Intelligent Staffing, Inc.*, 2008 WL 5156609, at *2 (agreement "clearly provides [Plaintiffs] with the right to seek interim injunctive relief in the courts").

## V. NEITHER THE FEDERAL POLICY FAVORING ARBITRATION NOR THE NFL'S PURPORTED INTEREST IN ADJUDICATING THIS DISPUTE PERMIT THE PARTIES' AGREED CONTRACT TERMS TO BE DISREGARDED

The NFL argues that the "federal policy favoring arbitration" and the NFL's alleged "legitimate interest in adjudicating this dispute" favor a restrictive interpretation of the express court-remedy carve-out in Section 17(b) of the Stockholders Agreement. NFL Mem. 8-9. However, no policy in favor of arbitration calls for well-settled contract interpretation principles to be disregarded. *See Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013) ("[T]he presumption in favor of arbitration does not apply [when a question exists as to contractual interpretation], and we must consider that issue under ordinary principles of contract law."); *Seery*, 2014 WL 12609706, at *2 (rejecting argument that federal policy in favor of arbitration trumps "specific exception from arbitration provided under the contract"). Nor does the fact that the parties offer "conflicting interpretations of the relevant agreements" create an ambiguity that this Court must resolve in favor of arbitration. *Chorley Enterprises, Inc.*, 807 F.3d at 563; *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013).

Tellingly, the NFL has not pointed to a single case in which a court construed a specific carve-out to an arbitration provision narrowly in order to protect the interests of a sports association or other voluntary association. In fact, none of the outside-of-this-Circuit, sports-association-related cases cited by the NFL even concern the interpretation of an arbitration provision. *See* NFL Mem. 9-10 (citing *Spirit Lake Tribe of Indians ex rel. Comm. of Understanding & Respect v. NCAA*, 715 F.3d 1089 (8th Cir. 2013); *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621 (2005); *Schulz v. U.S. Boxing Ass'n*, 105 F.3d 127 (3d Cir. 1997); *Crouch v. NASCAR*, 845 F.2d 397 (2d Cir. 1988)). The only sports-association-related case cited by the NFL that does mention arbitration does not concern the interpretation of arbitration clauses or carve-outs to those clauses, but instead the validity of an arbitration clause waiving review of an arbitrator's decision

30

in disputes between Major League Baseball clubs. *See Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 543 (7th Cir. 1978) (cited at NFL Mem. 9).

In fact, courts that have considered the arbitrability of NFL-related disputes have not allowed the alleged principle of judicial non-interference in sports affairs to outweigh well-established contract interpretation principles. For instance, in *Brown v. Nat'l Football League*, 219 F. Supp. 2d 372 (S.D.N.Y. 2002), where an NFL player brought a tort claim for an in-game injury caused by a referee's negligent conduct, the NFL sought to compel NFL arbitration based on an arbitration clause that applied to disputes "involving the interpretation of . . . any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players." *Id.* at 389. The *Brown* court found, as a matter of contract interpretation, that the tort claim was not arbitrable because it did not relate to the provisions of the NFL Constitution and Bylaws. *Id.* at 386, 389. Similarly, in *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714 (D. Md. 2014), this Court found that battery and civil conspiracy claims by a player of one NFL team against another NFL team were not arbitrable under the NFL Constitution. *Id.* at 728-729.

Moreover, the NFL's suggestion that adjudicating Plaintiffs' request for injunctive relief would somehow lead this Court into the "swamp" of adjudicating internal NFL "rules and laws" is groundless. NFL Mem. 10 (citations omitted). Plaintiffs are not seeking to enforce rights under the NFL Constitution. Plaintiffs' Complaint instead asks "this Court [to] determine and adjudicate the rights and liabilities of the parties pursuant to Section 7 of the Stockholders Agreement" (Dkt. 1 ¶ 82(A)); none of the allegations or claims are based on the NFL Constitution. Contrary to the NFL's suggestions (NFL Mem. 4-6), the Complaint does not put at issue the NFL's rights under the NFL Constitution relating to the purchase and sale of interests in NFL clubs or otherwise. Plaintiffs' claims call for application of settled contract-interpretation principles under governing

Maryland law to determine whether Mr. Snyder has validly exercised his right of first refusal regarding a proposed third-party offer to purchaser Plaintiffs' ownership stake in WFI.

Nor does this case present any risk of inconsistent "interpretation of the League's policies and rules." NFL Mem. 9. The NFL does not plausibly identify any "League[] policies and rules" that are implicated by Plaintiffs' complaint. Indeed, the NFL has asserted that it "has no position as to the underlying merits of the dispute." Dkt. 35-1 (NFL's Memorandum of Law in Support of Its Unopposed Motion To Intervene), at 3. The cases cited by the NFL on this point are inapposite because those cases do not concern, as here, separate contractual agreements among stockholders. NFL Mem. at 9-10. Instead, those cases address internal league matters such as the Major League Baseball commissioner's refusal to permit the assignment of player contracts to other teams (*Kuhn*, 569 F.2d at 531); a boxing association's refusal to strip a champion of his title, (*Schulz*, 105 F.3d at 128); NASCAR's determination of which driver won a race (*Crouch*, 845 F.2d at 397); and alleged unfair treatment of the Oakland Raiders by the NFL Commissioner (*Oakland Raiders*, 131 Cal. App. 4th at 626-28). Consequently, none of the arguments presented by the NFL bar this Court from proceeding with this matter, including Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court should retain jurisdiction over the claims in the Complaint and determine that they are not subject to arbitration before the NFL Commissioner.

Dated: December 1, 2020
Bethesda, Maryland

Respectfully submitted,

/s/

Adam L. Van Grack (D. Md. Bar No. 17976)
Theodore B. Kiviat  (D. Md. Bar No. 29019)
**Longman & Van Grack, LLC**
10411 Motor City Drive, Suite 750
Bethesda, Maryland 20817
(301) 291-5027 (tel.)
(301) 291-5028 (fax)
avangrack@lvglawfirm.com
tkiviat@lvglawfirm.com


Stephen R. Neuwirth (admitted pro hac vice)
Julia M. Beskin (admitted pro hac vice)
Jeremy Baldoni (admitted pro hac vice)
**Quinn Emanuel Urquhart & Sullivan, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (tel.)
(212) 849-7100 (fax)
stephenneuwirth@quinnemanuel.com
juliabeskin@quinnemanuel.com
jeremybaldoni@quinnemanuel.com

Jonathan Cooper (D. Md. Bar No. 21345)
**Quinn Emanuel Urquhart & Sullivan, LLP**
1300 I Street, NW
Suite 900
Washington, DC  20005
(202) 538-8000 (tel.)
(202) 538-8100 (fax)
jonathancooper@quinnemanuel.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2020, I caused the foregoing *Memorandum of Law in Opposition* to be filed electronically under seal with the Clerk of the Court through the CM/EFC system.

As required by Federal Rule of Civil Procedure 5(a), I have served the following parties with a copy of the foregoing *Memorandum of Law in Opposition* via USPS First-Class mail and with a courtesy copy through electronic mail:

Gregg H. Levy (glevy@cov.com)
Derek Ludwin (dludwin@cov.com)
Benjamin C. Block (bblock@cov.com)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth St., NW
Washington, DC 20001
*Counsel for National Football League*

Rachel T. McGuckian (rmcguckian@milesstockbridge.com)
MILES & STOCKBRIDGE P.C.
11 N. Washington Street, Suite 700
Rockville, MD 20850
*Counsel for Defendant*

Andrew J. Levander (andrew.levander@dechert.com)
Neil A. Steiner (neil.steiner@dechert.com)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
*Counsel for Defendant*

Christina Guerola Sarchio (christina.sarchio@dechert.com)
DECHERT LLP
1900 K Street NW
Washington, DC 20006
*Counsel for Defendant*

Joseph Tacopina (jtacopina@tacopinalaw.com)
TACOPINA, SEIGEL & DEOREO
275 Madison Avenue
New York, NY 10016
*Counsel for Defendant*

/s/
_____

Adam L. Van Grack (D. Md. Bar No. 17976)
Longman & Van Grack LLC
10411 Motor City Drive, Suite 750
Bethesda, MD 20817
(301) 291-7156 (tel.)
(301) 291-5028 (fax)
avangrack@lvglawfirm.com