FILED UNDER SEAL

# Exhibit 14

AMENDED AND RESTATED STOCKHOLDERS AGREEMENT

THIS AMENDED AND RESTATED STOCKHOLDERS AGREEMENT (this "Agreement") is made and entered into as of the 22nd day of August, 2003, by and among Washington Football, Inc., a Maryland corporation (the "Company"), Daniel M. Snyder, Fred Drasner, Arlette Snyder, as Personal Representative of the Estate of Gerald S. Snyder, Michele D. Snyder and each of the other parties set forth on the signature pages hereto under the heading "Stockholders". The individuals listed in the prior sentence together with their respective Permitted Transferees (as defined herein) and any Additional Stockholders (as defined herein), are referred to herein collectively as the "Stockholders" and individually as a "Stockholder".

RECITALS



A.

B.

C.

D.

AGREEMENT

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the parties incorporate the above Recitals herein as if fully set forth herein and agree as follows:

1.

(a)

(b)

(c)

(d)



(e) Subject to Section 5(c), the Voting Stock shall always be held by only one individual who is referred to herein as the "Voting Stockholder." The Stockholders who hold Non-Voting Stock (including any Additional Stockholders who hold Non-Voting Stock) are referred to herein collectively as the "Non-Voting Stockholders." Prior to the date hereof, Daniel M. Snyder was issued shares of Voting Stock and the other Stockholders were issued shares of Non-Voting Stock. The Stockholders acknowledge that (i) the right to be the Voting Stockholder shall be a personal right of the individual who from time to time holds the Voting Stock pursuant to the provisions of this Agreement, (ii) Daniel M. Snyder was issued Voting Stock and will serve as the Company's Voting Stockholder based upon (A) his management skills, (B) his long-standing association with the other Founding Stockholders, (C) his financial capability to provide significant additional funds to the Company and (D) the fact that Daniel M. Snyder's Percentage Ownership Interest significantly exceeds that of each of the other Stockholders, and (iii) it is not the intent of the Stockholders that the Voting Stock be assignable other than in strict accordance with the terms of this Agreement.

(f)





2.

(a)

(b)

(c)

3.

(a)

(i)

(A)

(B)


(ii)
(A)
(B)
(C)
(D)
(E)
(iii)



(iv)

(b)

(c)

(d)

(e)

4.



(i)

(ii)

(iii)

(iv)

(v)

(vi)

(vii)



(viii)

(ix)

(x)

(xi)

(xii)

(xiii)

(xiv)

(xv)

(xvi)

(xvii)


(xviii)

(xix)

(xx)

(b)

(c)



(d)

(e)

(f)

5.

(a)



(b)

(i)

(ii)

(c)



(i)

(ii)

(iii)

(iv)

(d)



(e)

(f)

(g)



6.

(a)

(b)

(c)

(d) 

7. VOLUNTARY SALE OF STOCK; RIGHTS OF FIRST REFUSAL.

(a) If a Stockholder (a "Selling Stockholder") proposes to effect a Sale of any shares of Stock (other than as permitted by Section 6(c)), then such Selling Stockholder shall give to the Company a written notice (a "Notice of Intention to Sell") setting forth in reasonable detail the terms and conditions of such proposed transaction, including the identity of the proposed purchaser of such shares and enclosing any agreements, draft agreements or letters of intent relating to such proposed Sale. The Company shall deliver such Notice of Intention to Sell to the other Stockholders (the "Other Stockholders") promptly upon receipt thereof.

(b) The following rights of first refusal shall apply with respect to a proposed Sale of Non-Voting Stock by a Non-Voting Stockholder other than (i) a Sale by a Snyder Stockholder or a Drasner Stockholder, which is governed by the provisions of paragraph (c) below, and (ii) a Sale permitted by Section 6(c)):

(i) Upon receipt of a Notice of Intention to Sell from the Company, each Other Stockholder shall have the right, exercisable upon written notice to the Selling Stockholder and the Company within fifteen (15) days after receipt by the Other Stockholders of the Selling Stockholder's Notice of Intention to Sell, to elect to purchase all or part of the shares of Non-Voting Stock proposed to be sold by the Selling Stockholder at a purchase price equal to (and on other terms substantially comparable to) that specified in the Notice of Intention to Sell. Such notice shall state the number of shares to be purchased by each Other Stockholder and that such Other Stockholder will purchase such shares within forty-five (45) days after the date of receipt of the Notice of Intention to Sell, or such longer period as may reasonably be necessary to account for the rights to purchase in this paragraph (b) and obtain any required approvals from the NFL or any regulatory authority.

(ii) In the event that more than one Other Stockholder wishes to exercise his right to purchase the Non-Voting Stock proposed to be sold by the Selling Stockholder (for purposes hereof, each a "Purchasing Stockholder") and the aggregate number of shares such Purchasing Stockholders wish to purchase would exceed the number of shares offered by the Selling Stockholder in the Notice of Intention to Sell, each Purchasing Stockholder may purchase the lesser of (A) the number of shares specified in such Purchasing Stockholder's notice under clause (i) and (B) if such shares described in clause (A) exceed the number of shares which is equal to the product obtained by multiplying (1) the aggregate number of shares of Stock to be sold by the Selling Stockholder by (2) a fraction, the numerator of which is the number of shares of Stock at the time owned by the Purchasing Stockholder and the

denominator of which is the sum of the total number of shares of Stock at the time owned by all of the Purchasing Stockholders (the "pro rata basis"), such Purchasing Stockholder's pro rata basis (as compared to all other Purchasing Stockholders subject to this clause (B)) of the available shares.

(iii) If all shares of Non-Voting Stock proposed to be sold by the Selling Stockholder are not elected to be purchased by the Purchasing Stockholders on a timely basis pursuant to clauses (i) and (ii), then the Selling Stockholder must deliver a written notice to all Purchasing Stockholders giving the Purchasing Stockholders the right to purchase, on a pro rata basis, any shares not elected to be so purchased by the other Purchasing Stockholders. The right granted pursuant to the foregoing sentence shall be exercised within ten (10) days of receipt of the written notice.

(iv) If the Purchasing Stockholders elect to purchase all of the Non-Voting Stock that is the subject of the Notice of Intention to Sell, the Selling Stockholder shall honor their elections to purchase and consummate the sale or sales of Stock on the terms set forth in the Notice of Intention to Sell on a single date determined under clause (i). In the event that more than one Other Stockholder has elected to purchase all of the Non-Voting Stock that is the subject of the Notice of Intention to Sell and one or more of the Purchasing Stockholders defaults on his or her obligation to purchase the shares that he or she had elected to purchase, then the closing shall not be held as originally scheduled and the Selling Stockholder shall deliver a written notice to all non-defaulting Purchasing Stockholders giving the non-defaulting Purchasing Stockholders the right to purchase, on a pro rata basis, the shares with respect to which the defaulting Purchasing Stockholder had elected to purchase. The right granted pursuant to the foregoing sentence shall be exercised within ten (10) days of receipt of the written notice. If the non-defaulting Purchasing Stockholders elect to purchase all of the Non-Voting Stock the defaulting Purchasing Stockholder had elected to purchase, a closing shall be re-scheduled and the Selling Stockholder shall honor the non-defaulting Purchasing Stockholders' elections to purchase and consummate the sale or sales of Stock on the terms set forth in the Notice of Intention to Sell on a single date determined under clause (i).

(v) If (A) the Other Stockholders do not elect to purchase all the Non-Voting Stock that is the subject of the Notice of Intention to Sell or (B) if they elect to purchase all of the Non-Voting Stock, but such purchases are not all consummated at the closing scheduled therefor (after giving effect to a single exercise of the rights under clause (iv)), such elections will be void and the Selling Stockholder may consummate the sale of all of the Non-Voting Stock proposed to be sold to the proposed third party purchaser pursuant to the terms set forth in the Notice of Intention to Sell. Any sale to a third party purchaser that is not consummated within ninety (90) days after the expiration of the fifteen (15) day period specified in clause (i) of this paragraph (b) or which is not on the terms as set forth in the Notice of Intention to Sell shall again be subject to the requirements of this paragraph (b); provided that such ninety (90) day period shall be extended to the extent

required to obtain required NFL and regulatory approval so long as such approvals are being diligently pursued.

(c)



(i)

(ii)

(iii)



(iv)

(v)

(vi)



(d)

(i)

(ii)

(iii)

(iv)



(v)

(vi)



8.

(a)

(b)

(c)



(d)

(e)

9.

(a)

(b)



(c)

10.

(a)

(b)

(c)



11.

(a)

(i)

(ii)

(iii)

(iv)



(b)

(i)

(ii)

(A)

(B)



(iii)

(c)

(i)

(ii)

(iii)

(d)



12.

(a)

(i)

(ii)



(iii)

(b)

(i)

(A)

(B)

(1)



(2)

(ii)

(iii)

(A)

(B)

(C)

(iv)

(c)



(d)

13.

14. LEGEND ON STOCK CERTIFICATES.

Each certificate representing shares of Stock of the Company owned of record or beneficially by any Stockholder shall conspicuously bear the following legends until such time as the shares represented thereby are no longer subject to the provisions hereof:

(a) National Football League policy has limitations on the number and type of persons who may have ultimate direct, indirect, beneficial, contingent or other interests in the Washington Redskins franchise (the "Franchise") and prohibits any direct or indirect sale, transfer, assignment, pledge, hypothecation, encumbrance or other disposition of, or with respect to, the Franchise or any direct or indirect interest therein without the prior consent of the National Football League, unless specifically exempted from such consent pursuant to the Constitution and Bylaws of the National Football League. Please contact the National Football League, League Counsel, 280 Park Avenue, New York, New York 10017 to determine the applicable requirements.

(b) "THE SECURITIES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO THE TERMS AND CONDITIONS OF AN AMENDED AND RESTATED STOCKHOLDERS AGREEMENT, DATED AS OF AUGUST 22, 2003, AMONG THE COMPANY AND THE OTHER PARTIES THERETO, A COPY OF WHICH MAY BE OBTAINED AT NO COST BY WRITTEN REQUEST MADE BY THE HOLDER OF RECORD OF THIS CERTIFICATE TO THE COMPANY."

(c) "THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY APPLICABLE STATE SECURITIES LAWS. SUCH SECURITIES MAY NOT BE SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION UNLESS THE COMPANY RECEIVES AN OPINION OF COUNSEL SATISFACTORY TO THE ISSUER THAT SUCH REGISTRATION IS NOT REQUIRED BY SAID ACT OR LAWS."

(d) The Company covenants that it shall keep a copy of this Agreement on file at the address listed in Section 20 for the purpose of furnishing copies to the parties hereto.

(e) The parties acknowledge and agree that the Stockholders may pledge shares of Stock to secure private bank financing provided to the Stockholders, subject to the limitations and restrictions imposed under NFL Rules.

15. REPRESENTATIONS AND WARRANTIES.

Each Stockholder, severally and not jointly, represents and warrants to the Company and the other Stockholders as follows:

(a) The execution, delivery and performance of this Agreement by such Stockholder will not violate any provision of applicable law, any order of any court or other agency of government, or any provision of any indenture, agreement or other instrument to which such Stockholder or any of his properties or assets is bound, or conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument.

(b) This Agreement has been duly executed and delivered by such Stockholder, and when executed by the other parties hereto will constitute the legal, valid and binding obligation of such Stockholder, enforceable in accordance with its terms.

16. HEADINGS.

Headings of articles, sections and paragraphs of this Agreement are inserted for convenience of reference only and shall not affect the interpretation or be deemed to constitute a part hereof.

17. SEVERABILITY.

In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein shall, for any reason, be held to be invalid, illegal or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provisions of this Agreement.

18. ARBITRATION; SPECIFIC PERFORMANCE.

(a) Any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this Agreement or any related instruments, agreements or documents, including any claim based on or arising from an alleged tort, shall be determined by binding arbitration in accordance with the Federal Arbitration Act, Title 9 of the United States Code (or if not applicable, the applicable state law), the "Comprehensive Arbitration Rules and Procedures" (for claims in excess of $250,000) of JAMS/Endispute or any successor thereof and the "Special Rules" set forth in clauses (i) and (ii) below. In the event of any inconsistency, the Special Rules shall control. The arbitrator of any controversy or claim shall promptly, but in no event later than thirty (30) days of the conclusion of the hearing, render the award or decision which shall become final and binding in accordance with the terms thereof unless either or both parties seek reconsideration in accordance with the JAMS/Endispute Comprehensive Arbitration Rules and Procedures. Judgment upon any arbitration award or decision may be entered in any court having jurisdiction over such action. Any party to this Agreement may bring an action, including a summary or expedited proceeding, to compel arbitration of any controversy or claim to which this Agreement applies in any court having jurisdiction over such action.

(i) The arbitration shall be conducted in the Washington, D.C. metropolitan area, and shall be administered by JAMS/Endispute who will appoint one arbitrator selected from the panels of arbitrators of JAMS/Endispute, or as the case may be, the Commercial Finance Disputes National Arbitration Panel of arbitrators of the American Arbitration Association; if JAMS/Endispute is unable or legally precluded from administering the arbitration, then the American Arbitration Association will serve, <u>provided</u>, <u>however</u>, that the American Arbitration Association will conduct the arbitration pursuant to the JAMS/Endispute Comprehensive Arbitration Rules and Procedures. All arbitration hearings will be commenced within ninety (90) days of the demand for arbitration; further, the arbitrator shall only, upon a showing of cause, be permitted to extend the commencement of such hearing for up to an additional sixty (60) days.

(ii) The Stockholders agree that Rule 32, the "Final Offer (or Baseball)" Arbitration Option, of the JAMS/Endispute Comprehensive Arbitration Rules and Procedures, or any successor provision thereto shall be applied as provided in Section 10(a) of this Agreement.

(b) Nothing in this arbitration provision shall be deemed to (i) limit applicable statutes of limitation; or (ii) limit the right of any of the parties hereto to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief. Any of the parties hereto may obtain such ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of any action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

(c) The parties acknowledge that the remedy at law for breach of the provisions of this Agreement will be inadequate and that, in addition to any other remedy any party may have, it shall be entitled to an injunction restraining any breach or threatened breach and/or a decree of specific performance, without any bond or other security being required and without the necessity of proving actual damages.

19. BENEFITS OF AGREEMENT.

Nothing in this Agreement is intended or shall be construed to give any person other than the parties hereto and their respective successors and permitted assigns any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision herein contained, this Agreement and all conditions and provisions hereof being intended to be and being for the sole and exclusive benefit of the parties hereto and their respective successors and permitted assigns. Notwithstanding anything in this Section to the contrary, subject to compliance with the terms of this Agreement, each Stockholder shall have the right to assign its interests hereunder to any transferee of the Stock of the Company held by such Stockholder in compliance with this Agreement; provided, however, that (i) such transferee and his or her spouse shall execute a copy of the Addendum Agreement, attached hereto as Exhibit B, agreeing in writing with the parties hereto to be bound by, and to comply with, all applicable provisions of this Agreement and to be deemed to be a Stockholder for purposes of this Agreement, and (ii) the rights of a Founding Stockholder shall be personal to each individual Founding Stockholder and shall be exercisable only while such individual is alive and not permanently disabled.

20. NOTICES.

Any notice or other communications required or permitted hereunder shall be sufficient and received if contained in a written instrument delivered in person or by courier or duly sent by first class certified mail, postage prepaid, or by facsimile addressed to such party at the address or facsimile number set forth below:

(a) if to the Company, to it at:

Washington Football, Inc.
21300 Redskin Park Drive
Ashburn, VA 20147
Attention: Daniel M. Snyder, Chairman and Principal Owner
Facsimile: (703) 726-7124

(b) with a copy to:

Washington Football, Inc.
21300 Redskin Park Drive
Ashburn, VA 20147
Attention: General Counsel.
Facsimile: (703) 726-7206

or such other outside counsel as shall be appointed to represent to the Company from time to time at such address as shall be provided to the Stockholders from time to time.

(c) if to any Stockholder, to the address and facsimile number of such Stockholder appearing on the signature page of this Agreement;

(d) or, in any case, at such other address or facsimile number as shall have been furnished in writing by such party to the other parties hereto. All such notices, requests, consents and other communications shall be deemed to have been received (i) in the case of personal or courier delivery, on the date of such delivery, (ii) in the case of mailing, on the fifth business day following the date of such mailing and (iii) in the case of facsimile, when received.

21. "S" CORPORATION STATUS.

Notwithstanding anything contained in this Agreement to the contrary, under no circumstances shall a Stockholder effect a Sale of his Stock to any person or entity or take any other action which has the effect of terminating the Company's qualification to be treated as an "S" corporation under the Code. Any such purported Sale or transaction shall be void and of no force or effect. Any Stockholder effecting any such Sale or taking any such action shall indemnify the Company and each Stockholder for all costs and expenses resulting therefrom.

22. COMPLIANCE WITH NFL RULES; PRECEDENCE OF NFL POLICIES.

(a) **Notwithstanding any agreement to the contrary, this Agreement and any and all other arrangements between or among the parties hereto or any entity that has any interest, direct or indirect, in any party hereto which relates to the ownership or operation of the Franchise as a member club of the NFL, are subject to the Constitution, Bylaws and other rules and regulations of the NFL (the "NFL Rules") and to the Articles of Association and Bylaws of the NFL Management Council, and certain decision, rulings, resolutions, actions and other matters as more fully described in Paragraph 1 and other provisions of that certain consent letter of the NFL dated as of the date of the closing of the Acquisition and that certain other consent letter of the NFL executed in connection with the sale of stock to Messrs. Smith, Schar and Rothman. This Section 22(a) and any other provision hereof affecting the rights of the NFL may not be amended, waived or otherwise adversely affected without the prior written consent of the NFL, in its sole discretion, which such NFL is a third party beneficiary of the covenant and agreement reflected in this Section 22(a). The parties hereto will provide copies of any amendments to this Agreement to the National Football League, 280 Park Avenue, New York, New York 10017, Attn: League Counsel.**

(b) Notwithstanding anything to the contrary set forth herein, no transfer of Stock shall be made except in compliance with NFL Rules. In the event that any one or more of the provisions contained in this Agreement, for any reason, conflicts with the consent letters of the NFL referenced in paragraph (a), the Stockholders agree that such provisions shall be restated to the extent necessary so as to eliminate such conflict and still be as consistent as possible or practicable with the intent of the parties with respect to such provisions.

(c) Notwithstanding any other provision of this Agreement, the consent of the holders of a majority of the Voting Stock of the Company shall be required prior to the filing by the Company of a petition for relief under Title 11 of the United States Code or any similar provision of state law, or prior to taking any action to file a petition for relief

under Title 11 of the United States Code or any other similar provision of state law on behalf of the Corporation.

23. ENTIRE AGREEMENT: AMENDMENTS: TERMINATION.

(a) This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

(b) Neither this Agreement nor any provision hereof may be amended, modified, changed, discharged or terminated except by an instrument in writing signed (i) by the Company and approved by unanimous consent of the directors of the Company and (ii) by (x) the holders of not less than seventy five percent (75%) of the outstanding Stock and (y) each Founding Stockholder who is alive and not permanently disabled. With respect to any Stockholder, such Stockholder shall cease to be subject to the terms and conditions of this Agreement on the date on which such Stockholder no longer owns any shares of Stock.

24. COUNTERPARTS.

This Agreement may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.

25. GENDER AND NUMBER.

For purposes of this Agreement, the singular shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, unless the context requires otherwise.

26. GOVERNING LAW.

This Agreement shall be governed by, enforceable under, and construed in accordance with the laws of the State of Maryland, without giving effect to the conflicts of law principles thereof.

27. OBLIGATION TO ACT IN GOOD FAITH.

Each Stockholder covenants and agrees that, with respect to any action to be taken by him under or in connection with this Agreement, he shall at all times act in good faith.

IN WITNESS WHEREOF, the undersigned Stockholders and, for purposes of Section 10 of this Agreement, the spouse of each undersigned Stockholder has executed this Agreement as of the day and year first above written.

WASHINGTON FOOTBALL, INC.

By: ______________________
Name: Daniel M. Snyder
Title: Chairman of the Board

STOCKHOLDERS:

______________________
Name: Daniel M. Snyder
Address: 21300 Redskin Park DriveAshburn, VA 20147
Facsimile: ~~(301) 493-5165~~

______________________
Name: Fred Drasner
Address: [redacted]

______________________
Name: Arlette Snyder Individually and as Personal Representative of the Estate of Gerald S. Snyder
Address: [redacted]
Facsimile: [redacted]

______________________
Name: Michele D. Snyder
Address: [redacted]

SIGNATURE PAGE TO AMENDED AND RESTATED STOCKHOLDERS AGREEMENT

ADDITIONAL STOCKHOLDERS

Name: DWIGHT SCHAR

Address: [redacted]

Name: FREDERICK W. SMITH

Address: Fed Ex Corporation
942 South Shady Grove
Memphis, TN 38120

Copy to: Willim T. Mays
Glankler Brown, PLLC
1700 One Commerce Square
Memphis, TN 38103

Name: ROBERT ROTHMAN

Address: [redacted]

SIGNATURE PAGE TO AMENDED AND RESTATED STOCKHOLDERS AGREEMENT

ADDITIONAL STOCKHOLDERS

Name: Dwight Schar
Address: [redacted]

Name: Frederick W. Smith
Address: Fed Ex Corporation
942 South Shady Grove
Memphis, TN 38120

Copy to: Willim T. Mays
Glankler Brown, PLLC
1700 One Commerce Square
Memphis, TN 38103

Robert Rothman

Name: Robert Rothman
Address: [redacted]

SIGNATURE PAGE TO AMENDED AND RESTATED STOCKHOLDERS AGREEMENT

ADDITIONAL STOCKHOLDERS

________________________________

Name: DWIGHT SCHAR

Address: [redacted]

________________________________

Name: FREDERICK W. SMITH

Address: Fed Ex Corporation
942 South Shady Grove
Memphis, TN 38120

Copy to: Willim T. Mays
Glankler Brown, PLLC
1700 One Commerce Square
Memphis, TN 38103

________________________________

Name: ROBERT ROTHMAN

Address: [redacted]

SPOUSES:

Name: Tanya Snyder
(spouse of Daniel M. Snyder)

Name: Stacey Diane Smith
(spouse of Frederick W. Smith)



EXHIBIT A

SCHEDULE OF STOCKHOLDERS*

| Name of Stockholder | Number of Shares of Stock Owned | Percentage Ownership Interest |
|---|---|---|
| Daniel M. Snyder | 536.1433 shares of Voting Stock | 40.459% |
| Fred Drasner | 132.6656 shares of Non-Voting Stock | 10.011% |
| Arlette Snyder | 85.9930 shares of Non-Voting Stock | 6.489% |
| Michele D. Snyder | 166.3328 shares of Non-Voting Stock | 12.552% |
| Dwight Schar | 134.6688 shares of Non-Voting Stock | 10.163% |
| Frederick W. Smith | 134.6688 shares of Non-Voting Stock | 10.163% |
| Robert Rothman | 134.6688 shares of Non_Voting Stock | 10.163% |
| TOTAL | 1,325.1411 shares of Stock | 100% |

---



EXHIBIT B

ADDENDUM AGREEMENT

Addendum Agreement made this _____ day of ______________, by and between ______________________________________________ ("New Stockholder") and ______________________________________ the New Stockholder's spouse (if appropriate), Washington Football, Inc., a Maryland corporation ("Company"), and the other stockholders ("Stockholders") of the Company, who are parties to that certain Amended and Restated Stockholders Agreement dated as of August 22, 2003 ("Agreement"), between the Company and the Stockholders, who agree as follows:

1. Introduction. The Company and the Stockholders and their respective spouses (if appropriate) entered into the Agreement to impose certain restrictions and obligations upon themselves and all shares of Stock of the Company. The New Stockholder is desirous of becoming a Stockholder of the Company. The Company and the Stockholders have required in the Agreement that all persons being offered Stock must enter into an Addendum Agreement binding the New Stockholder and the New Stockholder's spouse (if appropriate) to the Agreement to the same extent as if they were original parties thereto, so as to promote the mutual interests of the Company, the Stockholders, and the New Stockholder by imposing the same restrictions and obligations on the New Stockholder and the shares of Stock to be acquired by him as were imposed upon the Stockholders under the Agreement.

2. Adoption of Agreement. In consideration of the mutual premises of the parties, and as a condition of the purchase of Stock in the Company, the New Stockholder and his spouse (if appropriate) acknowledge that he/they have read the Agreement. The New Stockholder (and his spouse, if appropriate) hereby adopt, shall be bound by and shall have the benefit of all the terms and conditions set out in the Agreement to the extent as if he was a "Stockholder" as defined in the Agreement. This Addendum Agreement shall be attached to and become a part of the Agreement.

______________________________________

New Stockholder

______________________________________

Spouse of New Stockholder

Address for Notice:

__________________________________

__________________________________

__________________________________

Agreed to on behalf of the Stockholder and the Company pursuant to the Agreement.

ATTEST:
Washington Football, Inc.

(for itself and as Attorney-in-Fact for the Stockholders)

By: __________________________
Secretary
Name:________________________
Title: ________________________