FILED UNDER SEAL

# Exhibit 15



# NATIONAL FOOTBALL LEAGUE

As of August 22, 2003

Washington Football, Inc. ("WFI")
Daniel M. Snyder ("Dan Snyder")
Michele D. Snyder ("Michele Snyder")
Arlette Snyder ("Arlette Snyder")
Fred Drasner ("Drasner")
WFI Group, Inc. ("WFIG")



Fred Smith ("Smith")



Dwight Schar ("Schar")

Robert Rothman ("Rothman")

Pro-Football, Inc. (the "Club")
21300 Redskin Park Drive
Ashburn, Virginia 20147

Re: Washington Redskins Minority Interest Acquisition

Ladies and Gentlemen:

This Letter Agreement is to inform you that, subject to the terms and provisions hereof, the National Football League (the "NFL") approves (i) the acquisition (the "Acquisition") by Smith, Schar and Rothman (each of Smith, Schar and Rothman individually, a "Purchaser," and collectively, the "Purchasers") of 404.004 shares, or 134.668 shares each, of non-voting stock of WFI, with the Acquisition to be structured as follows: (A) WFI shall issue 134.668 shares to each of Schar and Rothman, and 67.334 shares to Smith; and (B) Michele Snyder and Arlette Snyder shall each sell 33.667 shares to Smith, and (ii) the redemption (the

DC: 931510-5

Requesting Parties
Page 2

"Redemption") of 67.334 shares of non-voting stock of WFI from Drasner by WFI. WFI owns all issued and outstanding shares of voting and non-voting common stock of WFIG, which in turn, owns all of the issued and outstanding shares of common stock of the Club, WFI Stadium Inc., a Delaware corporation ("WFIS"), and Redskin Park Inc., a Nevada corporation ("RPI," together with WFIG, the Club and WFIS, the "Companies").

This Letter Agreement will serve to confirm that subject to the continuing compliance by the parties hereto of the terms and conditions contained herein, the NFL consents to the Acquisition and the Redemption (but no other transactions or events, including, without limitation, any other transactions or events described in the Consent Documents, as such term is hereinafter defined).

As a result of and immediately upon the consummation of both the Acquisition and the Redemption (the "Closing"), the ownership of WFI will be as follows: (i) Dan Snyder will hold 40.4594% of the total outstanding shares of capital stock of WFI, consisting of 400 shares of voting stock, representing 100% of the total outstanding shares of voting stock in WFI, and 136.1433 shares of non-voting stock, (ii) Michele Snyder will hold 12.5521% of the total outstanding shares of capital stock of WFI, consisting of 166.333 shares of non-voting stock, (iii) Drasner will hold 10.0115% of the total outstanding shares of capital stock of WFI, consisting of 132.666 shares of non-voting stock, (iv) Arlette Snyder will hold 6.4894% of the total outstanding shares of capital stock of WFI, consisting of 85.9932 shares of non-voting stock, (v) Smith will hold 10.1626% of the total outstanding shares of capital stock of WFI, consisting of 134.668 shares of non-voting stock, (vi) Schar will hold 10.1626% of the total outstanding shares of capital stock of WFI, consisting of 134.668 shares of non-voting stock, and (vii) Rothman will hold 10.1626% of the total outstanding shares of capital stock of WFI, consisting of 134.668 shares of non-voting stock (Dan Snyder, Michele Snyder, Drasner, Arlette Snyder, Smith, Schar and Rothman, the "WFI Stockholders"). WFI shall continue to own and hold all of the issued and outstanding shares of voting and non-voting common stock of WFIG, and WFIG shall continue to own directly and hold all of the issued and outstanding shares of the Series A common stock of the Club and WFIS and all of the issued and outstanding shares of common stock of RPI, and no other assets. The Club shall continue to hold the Washington Redskins NFL franchise (the "Franchise") and, together with WFIS and RPI, shall continue to hold substantially all other assets related to the operation of the Franchise (including, without limitation, the Football Related Assets (as such term is hereinafter defined)).

The NFL's approval, in addition to being subject to the accuracy of the understandings set forth above, is subject to the following agreements, representations, warranties, and understandings, which are provided for the benefit of the NFL by the parties hereto other than the NFL (collectively, the "Requesting Parties"):

1. Each of the Purchasers severally covenants and agrees to, and further covenants and agrees to use his best efforts, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, to cause WFI and the Companies to, abide by, be bound by and comply with the terms of the Constitution and Bylaws of the NFL and the Articles of Association and Bylaws of the NFL Management Council, including any amendments to either such document and any interpretations of either such document issued from time to time by the Commissioner which are within the Commissioner's

Requesting Parties
Page 3

jurisdiction; all operative NFL or NFL Management Council resolutions that are within the NFL's or the NFL Management Council's respective jurisdictions; any existing or future agreements entered into by the NFL or the NFL Management Council, including, without limitation, any television agreements or any collective bargaining or other labor agreements (including, without limitation, any NFL player salary guarantees and pension fund agreements), and any agreements made in settlement of any litigation against the NFL, the NFL Management Council, or the NFL member clubs (including litigation against such clubs, or agreements made by such clubs, jointly or collectively); and such other rules or policies as the NFL, the NFL Management Council, or the Commissioner may issue from time to time that are within the issuing party's jurisdiction (together, the preceding documents are hereinafter referred to as the "NFL Constitution"). Each of the Purchasers acknowledges that he has been provided access to the above-described documents, and such Purchaser understands that such documents, among other things, (i) impose limitations on the amount of debt which may be incurred by the Club and its owners under certain circumstances (including without limitation any indebtedness from the Club and/or any affiliated entity thereof to the equity owners or other affiliates of such equity owners), (ii) impose certain limitations on the business which may be conducted by any person or entity which directly or indirectly owns an interest in an NFL franchise, (iii) restrict the transfer of ownership interests in NFL member clubs with certain exceptions and impose penalties for violations of such restrictions pursuant to Section 8.13(A)(4) of the NFL Constitution and Bylaws (as amended by 2003 Bylaw Proposal No. 1), (iv) in addition to the restrictions set forth herein, restrict geographical transfers of NFL franchises and team playing sites with certain exceptions, and (v) provide that each member club of the NFL and its owners shall release and indemnify the Commissioner, the NFL, every other member club of the NFL and the respective officers, directors, employees and holders of an interest in the NFL and any other member club of the NFL from any claims which it or any other party may at any time assert in connection with actions taken or not taken by the released/indemnified parties in their official capacities on behalf of the NFL or any committee thereof. Each of the Purchasers severally agrees not to take or support, and to use his best efforts, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, to cause WFI and the Companies not to take or support, any positions or actions which may be inconsistent with any NFL obligations or the NFL Constitution or which may have a material adverse impact on the NFL or the NFL member clubs. Each of the Purchasers severally agrees not to challenge, and to use his best efforts, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, to cause WFI and the Companies not to challenge, at any time or in any forum, any aspect of the NFL Constitution.

2. Each of the Purchasers severally acknowledges and agrees that no direct or indirect transfer, sale, assignment, pledge, hypothecation, encumbrance or other disposition (including, without limitation, the grant of any option or right of first refusal or first offer) on or with respect to WFI, the Companies, the Franchise or any other Football Related Assets (as hereinafter defined) or any direct or indirect ownership interest therein, shall be made (including pursuant to any option or right of first refusal or first offer previously approved by the NFL) except pursuant to the procedures established by the NFL Constitution, including, without limitation, Section 3.5 of the NFL Constitution. Each Purchaser further severally acknowledges and agrees that he shall not directly or indirectly pledge, and, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, that he

Requesting Parties
Page 4

shall use best efforts to cause the Companies not to directly or indirectly pledge, the Franchise, his interest therein, or any other Football Related Assets to secure, directly or indirectly, any debt or obligation without the NFL's prior written consent, which the NFL may grant or withhold in its sole discretion.

      3. (a) The Requesting Parties certify that (i) attached hereto as Exhibit A is a true, complete and correct copy of the Amended and Restated Stockholders Agreement, dated as of August 22, 2003 and as amended through the date hereof, by and among WFI and the WFI Stockholders, which has been modified as and to the extent required by Paragraph 5 hereof (the "WFI Stockholders Agreement") and (ii) the WFI Stockholders Agreement amends and restates, and therefore supercedes in its entirety, the Stockholders Agreement attached as Exhibit F to that certain letter agreement, dated as of July 14, 1999, among the NFL, WFI, Dan Snyder, Michele Snyder, Gerald S. Snyder, Drasner, Mortimer B. Zuckerman, WFIG, The Estate of Jack Kent Cooke, JKC Holding Company LLC, a Nevada limited liability company, and the Club (as such agreement may be amended or modified from time to time, the "Snyder Transfer Consent"). The Snyder Transfer Consent is attached hereto as Exhibit B.

      (b) Smith, WFI and Dan Snyder certify that attached hereto as Exhibit C is a true, complete and correct copy of the Amended and Restated Subscription Agreement between Smith and WFI; the Stock Purchase Agreement among Smith, WFI and Michele Snyder; the Stock Purchase Agreement among Smith, WFI and Arlette Snyder, and all documents executed among such parties and delivered in connection therewith, as amended through the date hereof (collectively, the "Smith Subscription Agreement").

      (c) Schar, WFI and Dan Snyder certify that attached hereto as Exhibit D is a true, complete and correct copy of the Subscription Agreement among Schar and WFI, and all documents executed among such parties and delivered in connection therewith, as amended through the date hereof (collectively, the "Schar Subscription Agreement").

      (d) Rothman, WFI and Dan Snyder certify that attached hereto as Exhibit E is a true, complete and correct copy of the Subscription Agreement among Rothman and WFI, and all documents executed among such parties and delivered in connection therewith, as amended through the date hereof (collectively, the "Rothman Subscription Agreement," and together with the Smith Subscription Agreement and the Schar Subscription Agreement, the "Subscription Agreements").

The WFI Stockholders Agreement, the Subscription Agreements, and the following documents, together with any amendments thereto approved in writing by the Commissioner, are collectively referred to as the "Consent Documents" (the following capitalized terms shall have the meanings set forth in the Snyder Transfer Consent): the Club Governance Documents, the WFIG Governance Documents, the WFIS Governance Documents, the RPI Governance Documents and the WFI Governance Documents.

      (e) Each Requesting Party certifies, covenants and agrees that: (i) other than the Consent Documents, there are no agreements, undertakings or arrangements to which such Requesting Party is a party or, to the best of such Requesting Party's knowledge, of which such Requesting Party is a beneficiary concerning the ownership, operation or governance of the

Companies, WFI or the Franchise; (ii) should such Requesting Party enter into any agreement, undertaking or other obligation in the future concerning the ownership, operation or governance of the Companies, WFI or the Franchise, such Requesting Party shall, upon execution of the agreement, submit a copy of such agreement, undertaking or obligation to the NFL, and if deemed necessary by the NFL in its sole discretion in accordance with the NFL Constitution, seek prior NFL approval therefor; and (iii) any such agreement, undertaking or obligation shall be subject to the NFL Constitution. Each Requesting Party further represents, covenants and agrees that all of the information such Requesting Party has submitted and will submit to the NFL and its representatives and counsel in seeking the consent granted hereby or otherwise in connection with the Acquisition and the Redemption is true, accurate and complete in all material respects.

4. Each Requesting Party acknowledges and agrees that neither the NFL's review of any of the Consent Documents and other materials submitted to the NFL in connection herewith, nor the NFL's approval of the Acquisition and the Redemption and of the Purchasers as minority owners of the Franchise, constitutes a waiver or modification of any NFL rule or policy (or the NFL Constitution) or the applicability thereof, or affects the status of any other ruling, consent or formal or informal interpretation or agreement (including, but not limited to, the Snyder Transfer Consent) and all other letter agreements between the NFL and any of the Requesting Parties now or hereafter in effect between the NFL and the Companies, the Franchise or any other Requesting Party or any resolution or policy of the NFL now or hereafter affecting the Club, the Franchise or any other Requesting Party. For the avoidance of any doubt, neither the NFL's review of any of the Consent Documents and other materials submitted to the NFL in connection herewith, nor the NFL's approval of the Acquisition and the Redemption and of the Purchasers as minority owners of the Franchise, constitutes either an implicit or explicit consent to, or waiver by the NFL of its rights in connection with, any transfers not consented to by the NFL, including, without limitation, the sale by Mortimer Zuckerman of certain shares of non-voting stock prior to the date of this Letter Agreement.

5. Each Purchaser severally covenants and agrees that, subject to any limitations on the scope of his authority under the relevant organizational documents, he will cause the following language to be included in bold face and in a prominent manner in any stockholders agreement, partnership agreement, limited liability company agreement, certificate of incorporation, articles of incorporation, bylaws or other agreement relating to direct or indirect ownership interests in the Companies or the Franchise to which he becomes a party and on any stock or other ownership certificate issued hereafter representing a direct or indirect ownership interest in the Companies, WFI or the Franchise (which such language may not be amended or modified without the prior written consent of the NFL, which may be withheld in its sole discretion):

> "National Football League policy has limitations on the number and type of persons who may have ultimate direct, indirect, beneficial, contingent or other interests in the Washington Redskins franchise (the "Franchise") and prohibits any direct or indirect sale, transfer, assignment, pledge, hypothecation, encumbrance or other disposition of, or with respect to, the Franchise or any direct or indirect interest

therein without the prior consent of the National Football League unless specifically exempted from such consent pursuant to the Constitution and Bylaws of the National Football League. Please contact the National Football League, League Counsel, 280 Park Avenue, New York, New York 10017 to determine the applicable requirements."

"Section _____. Precedence of League Policies.

Notwithstanding any agreement to the contrary, this Agreement and any and all other arrangements between or among the parties hereto or any entity that has any interest, direct or indirect, in any party hereto which relates to the ownership or operation of the Washington Redskins franchise (the "Franchise") as a member club of the National Football League, are subject to the Constitution and Bylaws of the National Football League, the Articles of Association and Bylaws of the NFL Management Council, and certain decisions, rulings, resolutions, actions and other matters as more fully described in Paragraph 1 and other provisions of that certain consent letter of the NFL that was entered into in connection with the acquisition by Washington Football, Inc. of the Franchise. This Section _____ and any other provision hereof affecting the rights of the National Football League may not be amended, waived or otherwise adversely affected without the prior written consent of the National Football League, in its sole discretion, which such League is a third-party beneficiary of the covenant and agreement reflected in this Section. The parties hereto will provide copies of any amendments hereto to the National Football League, 280 Park Avenue, New York, N.Y. 10017, Attn: League Counsel."

The Requesting Parties represent and warrant that the foregoing language has been included in each Consent Document (other than the Subscription Agreements).

6. Each Requesting Party agrees that the Consent Documents to which he, she, or it is a party and any other agreements to which he, she or it is a party relating to the ownership, operation or governance of the Companies, WFI, the Franchise or any direct or indirect interest therein will not contain any provision or impose any obligation in conflict with this Letter Agreement, and in the event of any conflict, the terms of this Letter Agreement shall prevail. Each Requesting Party further agrees to note in each Consent Document to which he, she, or it is a party that in the event of any inconsistency or conflict between the terms and provisions of any Consent Document and those contained in this Letter Agreement, the terms and provisions of this Letter Agreement shall control. Each Requesting Party agrees that no Consent Document to which he, she, or it is a party shall be rescinded, canceled, terminated,

amended or modified in any respect which may or will affect the conditions, obligations or duties set forth in this Letter Agreement or under the NFL Constitution or adversely affect the interests of the NFL or the NFL member clubs (and specifically including, without limitation, any amendment or other modification to any Consent Document to which any or all of WFI, WFIG, or the Club is a party and involving or otherwise relating to the voting rights, management or other indicia of control of such entities) without the prior written consent of the NFL.

7.  Dan Snyder, WFIG and WFI jointly and severally represent and warrant that, and each other WFI Stockholder severally represents and warrants only with respect to the shares owned by him or her that, upon the Closing, (i) Dan Snyder will hold 40.4594% of the total outstanding shares of capital stock of WFI, consisting of 400 shares of voting stock, representing 100% of the total outstanding shares of voting stock in WFI, and 136.1433 shares of non-voting stock, (ii) Michele Snyder will hold 12.5521% of the total outstanding shares of capital stock of WFI, consisting of 166.333 shares of non-voting stock, (iii) Drasner will hold 10.0115% of the total outstanding shares of capital stock of WFI, consisting of 132.666 shares of non-voting stock, (iv) Arlette Snyder will hold 6.4894% of the total outstanding shares of capital stock of WFI, consisting of 85.9932 shares of non-voting stock, (v) Smith will hold 10.1626% of the total outstanding shares of capital stock of WFI, consisting of 134.668 shares of non-voting stock, (vi) Schar will hold 10.1626% of the total outstanding shares of capital stock of WFI, consisting of 134.668 shares of non-voting stock, and (vii) Rothman will hold 10.1626% of the total outstanding shares of capital stock of WFI, consisting of 134.668 shares of non-voting stock. WFI and Dan Snyder jointly and severally represent that, and each Purchaser represents only with respect to the WFI shares owned by him that, all shares of capital stock of WFI held by any Purchaser are held in such Purchaser's individual name and such Purchaser is the beneficial owner of such shares with all voting rights related thereto. Each Purchaser covenants and agrees that any transfer of any ownership interests in WFI to a spouse of a Purchaser shall not be effected (i) except in accordance with the NFL Constitution, and (ii) unless and until such spouse executes an instrument in form and substance satisfactory to the NFL by which such spouse shall become a party hereto. The Requesting Parties represent and warrant that any rights of the WFI Stockholder's spouses to the shares of capital stock of WFI held by the WFI Stockholders are set forth in the WFI Stockholders Agreement. Dan Snyder, WFIG and WFI jointly and severally represent and warrant that, (a) Dan Snyder, Michele Snyder, Drasner, Arlette Snyder, Smith, Schar and Rothman are the sole record and beneficial owners of all of the issued and outstanding shares of capital stock of WFI, (b) immediately after the Closing, WFI shall be the sole record and beneficial owner of all of the issued and outstanding shares of voting and non-voting capital stock of WFIG, (c) immediately after the Closing, WFIG shall be the sole record and beneficial owner of (i) all of the issued and outstanding shares of capital stock of the Club other than one (1) share of Series B common stock of the Club, which is owned by WFIG and is subject to that certain amended and restated voting trust agreement, dated as of July 14, 1999, by and among WFIG, the Club and Allfirst Trust Company, National Association, and has no voting rights, except in connection with a relocation of the Franchise and matters affecting the rights of the Series B common stock, (ii) all of the issued and outstanding shares of capital stock of WFIS other than one (1) share of Series B common stock of WFIS, which is owned by WFIG and is subject to that certain amended and restated voting trust agreement, dated as of July 14, 1999, by and among WFIG, WFIS and Allfirst Trust Company, National Association, and has no voting rights except in connection with a relocation of the Franchise and matters affecting the rights of

the Series B common stock, and (iii) all of the issued and outstanding shares of capital stock of RPI, and (d) immediately after the Closing, WFIG shall be, directly or indirectly, the sole beneficial owner of all other assets related to the operation of the Club or the Franchise or the performance and exhibition by the Club of NFL games in which it is a participant, and any asset arising out of or created or issued by virtue of, as a result of, or in connection with the Club's ownership of the Franchise (including, by way of example and not of limitation, all player contracts, stadium leases or use licenses, ticket revenues, luxury box or club seat premium revenues, rights to receive national television revenues, local broadcast rights, and equity interests in or rights to receive distributions from NFL Productions LLC (successor by merger to N.F.L. Films, Inc.) ("Films"), NFL Properties LLC (successor by merger to National Football League Properties, Inc.) ("Properties"), NFL Ventures, Inc. (f/k/a NFL Enterprises, Inc.) ("Ventures"), NFL Ventures L.P. (f/k/a NFL Enterprises L.P.) ("Ventures Partnership") or NFL Enterprises LLC ("Enterprises") (any such assets, "Football Related Assets," as such term is further defined by the NFL Constitution and the interpretations thereof by the Commissioner from time to time). Each Purchaser severally covenants and agrees, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, that: (a) except with respect to certain stadium revenues including ticket revenues and luxury box and club seat premium revenues that are owned by WFIS (to the extent and for so long as such revenues are treated in compliance with the terms of an applicable consent letter with the NFL relating to the financing of WFIS) all Football Related Assets shall, at all times that the Club owns the Franchise, be owned by the Club; (b) if at any time the Club shall sell its interest in the Franchise to any third party, all of its interest in the Football Related Assets shall simultaneously be sold by the Club to the same third party; and (c) if at any time either the Club or the Club interest in the Franchise shall be sold to any third party, either WFIS or the stadium revenues so owned by WFIS shall also simultaneously be sold to the same third party.

    8.  Each Purchaser severally covenants and agrees, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, that he shall cause the Club to comply with the terms of the Trust Agreement (relating to Properties), executed as of the first day of October 1982, among the Club as owner of the Franchise, certain other owners of franchises in the NFL, and Pete Rozelle, William H. Sullivan, Jr., Daniel Rooney, James Kensil, Michael Lynn, Eddie J. Jones and Hugh Culverhouse, and the Agreement between the Club as owner of the Franchise and Films, dated as of August 1, 1970, (in each case, as such agreements may be supplemented, modified, amended or restated from time to time).

    9.  Each Purchaser severally covenants and agrees, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, that he shall cause the Club, in exercising any rights it may have as a shareholder of Ventures, as a limited partner of Ventures Partnership or any rights it may have or acquire as a member of Properties, Productions or Enterprises, to comply with the terms and provisions of the Operating Agreements of Properties, Productions or Enterprises or any successors thereto, the Agreement of Limited Partnership of Ventures Partnership or its successor, or the Operating Agreement of Films or its successor, as applicable. Each Purchaser severally acknowledges, accepts, covenants and agrees, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, to cause the Club to comply with the terms of the License Agreement, dated the first day of October 1982, between Properties and those individuals

nominated as Trustees under the Trust Agreement (as the same may be supplemented, modified, amended or restated from time to time).

10. Each Purchaser covenants and agrees that effective from and after the time that at least three-fourths (3/4ths) of the member clubs of the NFL (with the Club being included as an agreeing party in such calculation) have agreed with the NFL to enter into provisions similar to those set forth in Paragraph 11 of the Snyder Transfer Consent with respect to the arbitration of disputes, all disputes as between the NFL, on the one hand, and the Requesting Parties (or any of them including, without limitation, the Club and the Purchasers), on the other hand, arising under this Letter Agreement, under the Snyder Transfer Consent or under the NFL Constitution (other than (i) disputes arising out of any action taken by the NFL as a secured creditor of the Companies, or in furtherance of any sale of the Companies or any interest therein or asset thereof (including the Franchise), in each case in accordance with the NFL Financing Letters (as defined in Paragraph 15 hereof), and (ii) disputes which under the NFL Constitution or other governing documents of the NFL or any related organization (including, without limitation, the Collective Bargaining Agreement between the NFL Management Council and the NFL Players Association) are required to be submitted to the Commissioner or any other party for resolution) shall be submitted for resolution to a single arbitrator whose decision (absent fraud) shall be final, non-appealable and binding on all parties hereto, and shall be enforceable by appropriate equitable proceedings in accordance with applicable law. The procedures set forth in Paragraph 11 of the Snyder Transfer Consent shall govern any such arbitration proceeding, provided that in the event the NFL adopts different dispute resolution procedures which are generally applicable to member clubs of the NFL, such new procedures will supersede the procedures set forth therein.

11. Each Purchaser severally covenants and agrees to use his respective best efforts, subject to any limitations on the scope of his authority under the organizational documents of WFI and the Companies, to cause the Club to continue to operate the Franchise within its current home territory (the Washington, D.C. metropolitan area), unless a relocation of the Franchise to a different geographic area is approved by the member clubs of the NFL in accordance with Section 4.3 of the NFL Constitution. In this connection: (a) Each of the Purchasers acknowledges and agrees that Section 4.3 of the NFL Constitution constitutes a legal, valid and binding obligation of the Purchasers as the holder of an interest in the Franchise, and that the vote of the NFL's member clubs specified in such Section 4.3 must be obtained before any relocation of the Franchise to a different geographic area may be consummated; (b) Each of the Purchasers specifically recognizes and accepts the terms of Section 3.11(c) of the NFL Constitution as a covenant not to sue and a release of any claims for damages or for equitable relief (including, without limitation, possible claims under federal or state antitrust laws) based upon any decision by the NFL's member clubs not to permit a relocation of the Franchise to a different geographic area; and (c) Each of the Purchasers specifically agrees that any application to transfer the Club's home territory or relocate its Franchise shall be made and considered in accordance with the NFL's Procedures for Proposed Franchise Relocations (the current version of which is set forth in Volume I of the Policy Manual for Member Clubs), as the same may be revised from time to time (the "Procedures").

12. The approvals provided by the NFL herein are conditioned upon (i) the consummation of the Acquisition and the Redemption on or before August 31, 2003 (or such

later date as the Commissioner may approve), (ii) the delivery of executed counterparts of this letter by each of the Requesting Parties on or before the date of such consummation, and (iii) all of the certifications and agreements provided herein by the Requesting Parties being true and correct.

13. This Letter Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State. This Letter Agreement shall be binding upon the successors and assigns of the parties hereto, except that no rights or entitlements of any Requesting Party hereunder may be assigned without the consent of the NFL, which may be given or withheld in its sole discretion. Each Requesting Party acknowledges and agrees that the NFL will suffer immediate and irreparable harm in the event of a breach of this Letter Agreement by any Requesting Party of any of its obligations hereunder and will not have an adequate remedy at law, and therefore, the NFL shall, in addition to any other remedy available at law or in equity, be entitled to temporary, preliminary and permanent injunctive relief and a decree for specific performance in the event of a breach or threatened or attempted breach, without the necessity of showing any actual damage or irreparable harm or the posting of any bond or furnishing of any other security. This Letter Agreement shall be interpreted neutrally and without regard to the party that drafted it and, in particular, no rule of construction shall be applied as against any party hereto that would result in the resolution of an ambiguity contained herein against the drafting party.

14. Each Requesting Party acknowledges and agrees that the failure by any Requesting Party to comply with any of the provisions of this Letter Agreement shall constitute a material breach of this Letter Agreement which entitles the NFL to take action permitted by the NFL Constitution and/or this Letter Agreement. Said action may include, in addition to any and all other rights to which the NFL shall be entitled under this Letter Agreement or otherwise, the right of the NFL to commence termination proceedings under the NFL Constitution and such other remedies as may be provided by law or in equity for the breach of a material obligation. No party hereto shall attempt to prevent the NFL's exercise of such rights on the basis that the NFL cannot exercise dominion or control over its allocable share of the rights or assets that are the subject of the NFL's actions because it was not a breaching party.

15. As a material inducement to the NFL in entering into this Letter Agreement and issuing its consent to the transactions contemplated by the Subscription Agreements, each of the WFI Stockholders other than Dan Snyder severally covenants and agrees, subject to any limitations on the scope of his or her authority under the organizational documents of WFI and the Companies, that he or she shall, and Dan Snyder, WFIG, WFI and the Club jointly and severally covenant and agree that they shall (i) cause WFIG, WFIS, WFI and the Club to comply with each and all of the terms of the following letter agreements: (A) that certain letter agreement, dated as of October 16, 2002 and as hereafter amended from time to time, among the NFL, Bank of America, N.A., as Administrative and Collateral Agent, the Credit Agreement Lenders (as defined therein), Banc of America Securities LLC as Lead Arranger and Sole Book Manager, Wachovia Bank, N.A., as Syndication Agent, the Club, WFI, Dan Snyder, Drasner, Michele Snyder and Gerald S. Snyder (the "WFI Financing Letter"), pursuant to which the NFL consented, subject to the terms and conditions therein, to the  secured financing of WFI; and (B) that certain letter agreement, dated November 8, 2002 and as hereafter amended from time to time, among the NFL, the Club, WFIG, WFIS,

Requesting Parties
Page 11

Dan Snyder and Bank of America, N.A. as Collateral Agent, pursuant to which the NFL consented, subject to the terms and conditions therein, to the ▇▇▇▇▇ secured financing for the Club; (ii) cause the Club to comply with each and all of the terms of the following letter agreements executed between the NFL, the WFI Stockholders (other than the Purchasers) and certain lenders to such parties, and to execute amendments to such letter agreements to reflect the Acquisition and the Redemption, in respect of personal loans of such WFI Stockholders: (X) that certain letter agreement, dated as of October 16, 2002 and as amended as of the date hereof and as hereafter amended from time to time, among the NFL, Dan Snyder, Tanya Snyder, Bank of America, N.A., as Administrative Agent and Personal Lender, and the Club; (Y) that certain letter agreement, dated as of October 16, 2002 and as amended as of the date hereof and as hereafter amended from time to time, among the NFL, Michele Snyder, Bank of America, N.A., as Administrative Agent and Personal Lender, and the Club; and (Z) that certain letter agreement, dated as of October 16, 2002 and as amended as of the date hereof and as hereafter amended from time to time, among the NFL, Drasner, Bank of America, N.A., as Administrative Agent and Personal Lender, and the Club and (iii) cause the Club to execute and comply with the terms of those certain letter agreements, executed as of the date hereof and as hereafter amended from time to time, among the NFL, the Club and the Purchasers (other than Schar) in respect of the financing of the Acquisition (collectively, the letter agreements described in clauses (i), (ii) and (iii) hereof, the "NFL Financing Letters," and each individually, an "NFL Financing Letter"). The WFI Stockholders hereby acknowledge that upon a material default by WFI or Dan Snyder of their respective obligations under that certain debt reduction letter agreement, dated October 16, 2002, by and among the NFL, WFI and Dan Snyder, the NFL shall be entitled to effect a sale of the Franchise and all other assets of the Companies (whether directly or indirectly and whether through a sale of the assets of the Club, WFIG, WFI or otherwise), such sale to be conducted in the same manner as a sale otherwise conducted pursuant to the exercise of the NFL's rights under Article 3.8 of the NFL Constitution. Each Purchaser agrees that he shall not object to any sale of the assets of, or direct or indirect ownership interests in, any Company or WFI made in accordance with the provisions of the NFL Financing Letters (including, without limitation, any sale of WFI's voting and/or non-voting interests in WFIG made in accordance with paragraph 2 (or any other applicable provisions) of the WFI Financing Letter).

16.  (a) Each of the Requesting Parties, on his, her or its own behalf and on behalf of each and all of his, her or its past, present or future Affiliates (collectively, the "Affiliated WFI Parties"), does hereby (i) irrevocably release and forever discharge the NFL and each and all of its past, present and future Affiliates (collectively, the "Affiliated NFL Parties;" including without limitation each and every member club of the NFL and such club's respective Affiliates (and, for the avoidance of doubt, the Affiliated NFL Parties shall, for purposes of this Letter Agreement, include WFI, the Companies and each of their respective past, present and future Affiliates)), from any and all past, present or (if based, in whole or in part, on facts, actions, claims or matters existing or occurring from the beginning of the world to the date of this Letter Agreement) future manner of action or actions, cause and causes of action, suits, debts, charges, actions, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, levies, judgments, expenses, executions, claims, demands and other obligations or liabilities whatsoever (collectively, "Claims"), in law or in equity, whether arising by statute or common law or

otherwise, both direct and indirect, or whatever kind or nature (including without limitation claims arising under federal or state antitrust laws, fiduciary claims, claims for contribution or indemnification, or otherwise), which any of the Affiliated WFI Parties have had, now have or hereafter can, shall or may have, and (ii) covenant and agree not to bring any action or make any demand or initiate or participate in or support, directly or indirectly, any Claim against the Affiliated NFL Parties, or any of them, in each case for or by reason of any matter, cause or thing arising with respect to, in connection with or relating in any manner whatsoever to the Acquisition and the Redemption (including, without limitation, the transactions contemplated by the Subscription Agreements), or to actions taken or omitted to be taken by the NFL or any NFL Affiliated Party with respect to the subject matter of any NFL Financing Letter. As used herein, "Affiliates" shall mean, in respect of a person identified herein, all direct or indirect owners, directors, officers, attorneys, advisors, bankers, consultants, servants, representatives, insurers, employees, shareholders, members, subsidiaries, partners, predecessors, principals, heirs, executors, administrators, trustees, beneficiaries, agents, successors, assigns and other affiliates.

(b) The Affiliated WFI Parties specifically and expressly contemplate that the aforegoing release and covenant not to sue covers known and unknown claims for unknown as well as known damages, claims for anticipated and unanticipated damages, and claims for expected and unexpected consequences of both known and unknown damages.

(c) Each of the Affiliated WFI Parties and the NFL agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by any party hereto or any successor or assignee of any party on or with respect to the aforegoing release and covenant not to sue or which in any way relates, directly or indirectly, to the agreements of the parties or the matters described herein shall be tried only by a court and not by a jury. EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.

17. Each of the Requesting Parties other than the Purchasers acknowledges and agrees that the terms of the Snyder Transfer Consent shall remain in full force and effect and binding upon such Requesting Parties, including Arlette Snyder as successor in interest to Gerald Snyder. For the avoidance of any doubt but without limiting the generality of the foregoing, Smith shall be bound by the terms of this Letter Agreement but shall not be bound by the terms of the Snyder Transfer Consent by virtue of his purchase of WFI stock from Arlette Snyder and Michele Snyder. Each of the Requesting Parties other than the Purchasers acknowledges and agrees that each of the representations and warranties made by it in the Snyder Transfer Consent remains true and accurate as of the date hereof, as if made anew as of the date hereof (except to the extent expressly modified herein). Without limiting the foregoing, each of the Requesting Parties other than the Purchasers represents and warrants that the copies of the following documents in the form attached to and certified in the Snyder Transfer Consent remain in full force and effect, and there have been no modifications of, restatements of, supplements to or amendments thereto: (i) the Club Governance Documents, (ii) the WFIG Governance Documents, (iii) the WFIS Governance Documents, (iv) the RPI Governance Documents and (v) the WFI Governance Documents.

18. (a) Arlette Snyder hereby represents and warrants that, as of the date hereof, (i) no principal, interest or other obligations remain outstanding under the

financing described in that certain Letter Agreement, dated October 16, 2002, among Bank of America, as Administrative Agent and Personal Lender, Gerald S. Snyder, Arlette Snyder, the Club and the NFL, and (ii) she has not pledged, granted a security or other interest in, or otherwise assigned, any direct or indirect ownership interest in the Club as collateral for any personal loan, guaranty or other obligation.

(b) Schar hereby represents and warrants that, as of the date hereof, he has repaid in full the financing he incurred in order to acquire his interest in WFI and, therefore he has no longer pledged, granted a security or other interest in, or otherwise assigned, any direct or indirect ownership interest in the Club as collateral for any personal loan, guaranty or other obligation.

(c) Snyder, WFI and WFIG jointly and severally represent and warrant that, as of the date hereof, WFI has used a portion of the proceeds of the Acquisition payable to or for its account (i) to repay in full all principal, interest and other obligations previously outstanding under the Credit Agreement (as defined in the WFI Financing Letter), with the credit facilities provided thereunder being terminated, and (ii) to provide no less than ▮▮▮▮▮ in working capital to the Club. Snyder, WFI and WFIG further jointly and severally represent, warrant, covenant and agree that WFI's League Defined Debt (as such term is defined in the WFI Financing Letter) does not, and shall not at any time hereafter, exceed ▮▮▮▮▮, without the NFL's prior written consent.

If the foregoing provisions are acceptable to each of you, please so indicate your acceptance by countersigning where indicated below and returning a signed and dated counterpart of this Letter Agreement to the NFL.

Very truly yours,

*[signature: Paul Tagliabue]*

PAUL TAGLIABUE
Commissioner

Accepted and agreed to as of the date first above written:

WFI Stockholders:

_____  Date: 8/22, 2003
Daniel M. Snyder

_____  Date: 8/22, 2003
Michele D. Snyder

_____  Date: 8/22, 2003
Arlette Snyder

_____  Date: 7/22, 2003
Fred Drasner

_____  Date: _____, 2003
Fred Smith

_____  Date: _____, 2003
Dwight Schar

_____  Date: _____, 2003
Robert Rothman

WFI:

WASHINGTON FOOTBALL, INC.

By: _____  Date: 8/22, 2003
Name:
Title:

Requesting Parties
Page 14

Accepted and agreed to as of the date first above written:

**WFI Stockholders:**

_____  Date: _____, 2003
Daniel M. Snyder

_____  Date: _____, 2003
Michele D. Snyder

_____  Date: _____, 2003
Arlette Snyder

_____  Date: _____, 2003
Fred Drasner

*/s/ F. W. Smith*  Date: _____, 2003
Fred Smith

_____  Date: _____, 2003
Dwight Schar

_____  Date: _____, 2003
Robert Rothman

**WFI:**

**WASHINGTON FOOTBALL, INC.**

By: _____  Date: _____, 2003
    Name:
    Title:

Requesting Parties
Page 14

Accepted and agreed to as of the date first above written:

**WFI Stockholders:**

_____     Date: _____, 2003
Daniel M. Snyder

_____     Date: _____, 2003
Michele D. Snyder

_____     Date: _____, 2003
Arlette Snyder

_____     Date: _____, 2003
Fred Drasner

_____     Date: _____, 2003
Fred Smith

_____     Date: _____, 2003
Dwight Schar

*Robert Rothman* (signature)        Date: _____, 2003
Robert Rothman

**WFI:**

WASHINGTON FOOTBALL, INC.

By: _____     Date: _____, 2003
    Name:
    Title:

08/22/2003 11:19 7037267110 REDSKINS PAGE 07

Aug 21 03 02:38p      p.4

Requesting Parties
Page 14

Accepted and agreed to as of the date first above written:

WFI Stockholders:

_____  Date: _____, 2003
Daniel M. Snyder

_____  Date: _____, 2003
Michele D. Snyder

_____  Date: _____, 2003
Arlette Snyder

_____  Date: _____, 2003
Fred Drasner

_____  Date: _____, 2003
Fred Smith

[signature]
_____  Date: August 22, 2003
Dwight Schar

_____  Date: _____, 2003
Robert Rothman

WFI:

WASHINGTON FOOTBALL, INC.

By: _____  Date: _____, 2003
   Name:
   Title:

Requesting Parties
Page 15

Club:

PRO-FOOTBALL, INC.

By: _____   Date: 8/25_____, 2003
Name: NO Chinik
Title: SUP

WFIG:

WFI GROUP, INC.,

By: _____   Date: 9/22_____, 2003
Name: NO Chinite
Title: SUP