FILED UNDER SEAL

# Exhibit 16

March 30, 2005

Washington Football, Inc., a Maryland corporation ("WFI")
WFI Group, Inc. ("WFIG")

[REDACTED]

Dwight Schar ("Schar")

[REDACTED]

Robert Rothman ("Rothman" and collectively with Schar, the "Acquiring Parties")
Black Diamond Group

[REDACTED]

Daniel M. Snyder (the "Controlling Owner")

[REDACTED]

Pro-Football, Inc. (the "Club" and together with WFI and WFIG, the "Football Entities")

[REDACTED]

Fred Drasner (the "Transferor," and together with the Acquiring Parties, the Controlling Owner
    and the Football Entities, the "Requesting Parties")
[Address]

    Re:    NFL Consent to Certain Transactions

Ladies and Gentlemen:

        We refer to the WFI stock acquisition documents and agreements executed by the
Transferor and the Acquiring Parties (as more fully identified in Section 6 below, the "Consent
Documents").

Requesting Parties
Page 2

This Supplemental Consent Letter will serve to confirm that, subject to the terms and conditions contained herein and the accuracy of the representations and warranties of the Requesting Parties contained herein, the National Football League (the "NFL") consents to the acquisition transactions contemplated in the Consent Documents (such transactions, collectively, the "Acquisition"), pursuant to which each of the Acquiring Parties shall acquire from the Transferor, effective as of March 31, 2005, 66.3328 shares of WFI non-voting common stock (for an aggregate of 132.6656 shares of WFI non-voting common stock (all of such shares in the aggregate, the "Transferred Stock")).

The NFL's consent hereunder is limited to the Acquisition only and shall in no way be deemed to encompass any other transactions or events. The NFL's approval, in addition to being subject to the accuracy of the understandings set forth above, is subject to the following agreements, representations, warranties, and understandings, which are provided for the benefit of the NFL by the Requesting Parties:

1. Each of the Acquiring Parties and the Football Entities jointly and severally acknowledges and agrees that: (a) it remains bound by, and subject to, the covenants and agreements set forth in that certain letter agreement, dated as of August 22, 2003 (as such agreement may be amended or modified from time to time, the "Transfer Consent Letter"), among the NFL, the Requesting Parties, Fred Smith ("Smith") and certain other parties thereto, whereby the NFL approved the acquisition by Smith, Schar and Rothman of an aggregate of 404.004 shares (134.668 shares each) of WFI non-voting stock and the redemption of 67.334 shares of WFI non-voting stock from Drasner by WFI; (b) such Transfer Consent Letter remains in full force and effect; (c) each of the representations and warranties made by such party in the Transfer Consent Letter remains true and accurate as of the date hereof, as if made anew as of the date hereof (except to the extent expressly modified herein); and (d) with effect from and after the closing of the Acquisition, the terms of said Transfer Consent Letter shall apply, *mutadis mutandis*, to the Acquisition and to the additional shares of WFI non-voting common stock acquired by the Acquiring Parties pursuant to the Acquisition. Each of the Controlling Owner and the Football Entities further acknowledges and agrees that: (i) the terms of that certain letter agreement, dated as of July 14, 1999, among the NFL, WFI, the Controlling Owner, Michele Snyder, Gerald S. Snyder, the Transferor, Mortimer B. Zuckerman, WFIG, The Estate of Jack Kent Cooke, JKC Holding Company LLC, a Nevada limited liability company, and the Club (as such agreement may be amended or modified from time to time, the "Snyder Transfer Consent") shall remain in full force and effect and binding upon the parties thereto; (ii) each of such parties remains bound by, and subject to, the covenants and agreements set forth in the Snyder Transfer Consent; and (iii) each of the representations and warranties made by such party in the Snyder Transfer Consent remains true and accurate as of the date hereof, as if made anew as of the date hereof (except to the extent expressly modified herein).

2. The consents provided by the NFL herein are limited to the Acquisition, and shall not apply to any other transactions or events, including any transactions or events consummated or purporting to be consummated without the prior written consent of the NFL prior to the date hereof (even if such transactions are reflected in the stock ownership representations provided by the Requesting Parties in the following Sections 4 and 5). The NFL retains all of its rights and remedies with respect to any failure of any Requesting Party to

Requesting Parties
Page 3

comply with, or any other breach of, any provision of the Transfer Consent Letter, the Snyder Transfer Consent or the NFL Constitution (as defined in the Transfer Consent Letter), including failures or breaches arising prior to the date hereof, and nothing in this Supplemental Consent Letter or any other NFL consent being provided in connection herewith shall be deemed a waiver, consent or release with respect to any such failure or breach. The Requesting Parties expressly acknowledge that (a) the Transferor has agreed with the NFL (as an inducement to the NFL to enter into this Supplemental Transfer Consent) to certain payment arrangements to settle his personal liability to the NFL for one such matter involving the repurchase of certain interests in WFI owned by Mortimer Zuckerman, and (b) that such individual settlement shall not affect the liability of any other Requesting Party in respect of such (or any other) prior failure or breach.

      3.  The approvals provided by the NFL herein are expressly conditioned upon (i) the consummation of the Acquisition on or before April 15, 2005 (or such later date as the Commissioner may approve), (ii) the delivery of executed counterparts of this letter by each of the Requesting Parties on or before the date of such consummation, (iii) all of the certifications and agreements provided herein by the Requesting Parties being true and correct, (iv) the delivery by Rothman of fully executed counterparts of that certain financing consent agreement, dated as of the date hereof, between Rothman, the NFL and JPMorgan Private Bank in the form attached hereto as Exhibit A, (v) the delivery by Schar of an executed counterpart of that certain certification letter, dated as of the date hereof, between Schar and the NFL in the form attached hereto as Exhibit B, (vi) the delivery by Schar of fully executed counterparts of a Supplemental Financing Consent Letter, dated as of even date hereof, between Schar, the NFL and Bank of America in the form attached hereto as Exhibit C, and (vi) the delivery by Rothman of fully executed counterparts of a Supplemental Financing Consent Letter, dated as of even date hereof, between Rothman, the NFL and Bank of America in the form attached hereto as Exhibit D.

      4.  Each of the Requesting Parties hereby jointly and severally represents and warrants to the NFL that: (a) in accordance with the Consent Documents, Schar and Rothman shall pay, in the aggregate, total consideration of ▓▓▓▓▓▓ to the Transferor for the Transferred Stock; (b) the Transferred Stock represents 10.0115% of the issued and outstanding common stock of WFI; (c) the Transferred Stock constitutes all of the Transferor's direct and indirect equity interests in WFI, WFIG, and the Club; and (d) effective upon the closing of the Acquisition, the Transferor will no longer own any shares of WFI non-voting or other stock or any other equity or economic interest, either directly or indirectly, in any of the Football Entities.

      5.  Each of the Acquiring Parties, the Controlling Owner, and the Football Entities hereby jointly and severally represents and warrants to the NFL that effective upon the closing the Acquisition; (a) Schar will own directly 201.0016 shares of WFI non-voting common stock, representing a 15.168% economic interest in WFI; (b) such ownership interest of Schar represents the entire ownership interest held by Schar, either directly or indirectly, in the Club; (c) Rothman owns directly 201.0016 shares of WFI non-voting common stock, representing a 15.168% economic interest in WFI; and (d) such ownership interest of Rothman represents the entire ownership interest held by Rothman, either directly or indirectly, in the Football Entities.

6. (a) The Requesting Parties certify that the Amended and Restated Stockholders Agreement, dated as of August 23, 2005, by and among WFI and the WFI stockholders (the "WFI Stockholders Agreement") remains in full force and effect.

(b) The Requesting Parties certify that attached hereto as Exhibit E, Exhibit F, and Exhibit G, respectively, are true, complete and correct copies of (i) that certain Letter Agreement, dated as of February 1, 2005, by and between Transferor and the Controlling Owner, (ii) that certain Acceptance of an Offer of Sale, dated as of February 9, 2005, by and between WFI and Schar, (iii) that certain Acceptance of an Offer of Sale, dated as of February 9, 2005, by and between WFI and Rothman, and all documents executed among such parties and delivered in connection therewith, as amended through the date hereof (collectively, the "Stock Purchase Agreement," and together with the WFI Stockholders Agreement and all other contracts, instruments or other documents executed in connection with the Acquisition, the "Consent Documents").

7. (a) Each of the Acquiring Parties and the Transferor, on his or its own behalf and on behalf of each and all of his or its past, present or future controlled Affiliates (collectively, the "Affiliated WFI Parties," which term shall not include Daniel M. Snyder, Washington Football, Inc. or any of its subsidiaries), does hereby (i) irrevocably release and forever discharge the NFL and each and all of its past, present and future Affiliates (collectively, the "Affiliated NFL Parties;" including without limitation each and every member club of the NFL and such club's respective Affiliates (and, for the avoidance of doubt, the Affiliated NFL Parties shall, for purposes of this Supplemental Consent Letter, include WFI, the Companies and each of their respective past, present and future Affiliates)), from any and all past, present or (if based, in whole or in part, on facts, actions, claims or matters existing or occurring from the beginning of the world to the date of this Supplemental Consent Letter) future manner of action or actions, cause and causes of action, suits, debts, charges, actions, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, levies, judgments, expenses, executions, claims, demands and other obligations or liabilities whatsoever (collectively, "Claims"), in law or in equity, whether arising by statute or common law or otherwise, both direct and indirect, of whatever kind or nature (including without limitation claims arising under federal or state antitrust laws, fiduciary claims, claims for contribution or indemnification, or otherwise), which any of the Affiliated WFI Parties have had, now have or hereafter can, shall or may have, and (ii) covenant and agree not to bring any action or make any demand or initiate or participate in or support, directly or indirectly, any Claim against the Affiliated NFL Parties, or any of them, in each case for or by reason of any matter, cause or thing arising with respect to, in connection with or relating in any manner whatsoever to any action taken or omitted to be taken by the NFL or any Affiliated NFL Party in its official capacity on behalf of the NFL or any committee thereof. As used herein, "Affiliates" shall mean, in respect of a person identified herein, all direct or indirect owners, directors, officers, attorneys, advisors, bankers, consultants, servants, representatives, insurers, employees, shareholders, members, subsidiaries, partners, predecessors, principals, heirs, executors, administrators, trustees, beneficiaries, agents, successors, assigns and other affiliates.

(b) The Affiliated WFI Parties specifically and expressly contemplate that the aforegoing release and covenant not to sue cover known and unknown claims for unknown as

Requesting Parties
Page 5

well as known damages, claims for anticipated and unanticipated damages, and claims for expected and unexpected consequences of both known and unknown damages.

(c) Each of the Affiliated WFI Parties and the NFL agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by any party hereto or any successor or assignee of any party on or with respect to the aforegoing release and covenant not to sue, or which in any way relates, directly or indirectly, to the agreements of the parties or the matters described herein shall be tried only by a court and not by a jury. EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.

8. Each Requesting Party agrees that the Consent Documents to which he or it is a party and any other agreements to which he or it is a party relating to the ownership, operation or governance of the Club, WFI, WFIG or any affiliate of the Club, WFI or WFIG, or any direct or indirect interest therein, will not contain any provision or impose any obligation in conflict with the Transfer Consent Letter or this Supplemental Consent Letter, and in the event of any conflict, the terms of this the Transfer Consent Letter or this Supplemental Consent Letter, as applicable, shall prevail. Each Requesting Party further agrees to note in each Consent Document to which he or it is a party that in the event of any inconsistency or conflict between the terms and provisions of any Consent Document and those contained in the Transfer Consent Letter or this Supplemental Consent Letter, the terms and provisions of said Transfer Consent Letter and this Supplemental Consent Letter shall control. Each Requesting Party agrees that no Consent Document to which he or it is a party shall be rescinded, canceled, terminated, amended or modified in any respect which may or will affect the conditions, obligations or duties set forth in the Transfer Consent Letter or this Supplemental Consent Letter or under the NFL Constitution or adversely affect the interests of the NFL or the NFL member clubs (and specifically including, without limitation, any amendment or other modification to any Consent Document to which any or all of WFI, WFIG, or the Club is a party and involving or otherwise relating to the voting rights, management or other indicia of control of such entities) without the prior written consent of the NFL.

9. This Supplemental Consent Letter shall be effective upon execution and delivery hereof by all of the parties hereto. This Supplemental Consent Letter may be executed in two or more counterparts, each of which may be executed by one or more of the parties hereto, but all of which when taken together shall constitute but one and the same agreement binding upon all of the parties hereto. This Supplemental Consent Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such state. This Supplemental Consent Letter shall be binding upon the successors and assigns of the parties hereto, except that no rights or entitlements of any Requesting Party hereunder may be assigned without the consent of the NFL, which may be given or withheld in its sole discretion.

10. Each Requesting Party acknowledges and agrees that the NFL will suffer immediate and irreparable harm in the event of a breach of this Supplemental Consent Letter by any Requesting Party of any of its obligations hereunder and will not have an adequate remedy at law, and therefore, the NFL shall, in addition to any other remedy available at law or in equity,

Requesting Parties
Page 6

be entitled to temporary, preliminary and permanent injunctive relief and a decree for specific performance in the event of a breach or threatened or attempted breach, without the necessity of showing any actual damage or irreparable harm or the posting of any bond or furnishing of any other security. This Supplemental Consent Letter shall be interpreted neutrally and without regard to the party that drafted it and, in particular, no rule of construction shall be applied as against any party hereto that would result in the resolution of an ambiguity contained herein against the drafting party.

11. Each of the Requesting Parties acknowledges and agrees that any claims, actions, charges, disputes, demands or other controversies between or among any of the parties hereto arising under or otherwise relating to this Supplemental Consent Letter shall, to the extent required by the NFL Constitution (as defined in the Transfer Consent Letter), be subject to, and submitted for, arbitration in accordance with the applicable provisions thereof.

12. Without limitation of the provisions of Section 7 hereof, each Requesting Party acknowledges and agrees that neither the NFL nor any Affiliated NFL Party has reviewed, prepared or participated in the preparation of any offering circular, private placement memorandum, information statement or other similar document concerning the Club, the Washington Redskins NFL franchise (the "Franchise") or the Consent Documents or the transactions contemplated thereunder, or any other offering materials relating to any of the foregoing (collectively, "Offering Materials"), and accordingly neither the NFL nor any Affiliated NFL Party will be liable to any Requesting Party as a result of, or otherwise incur any liability in connection with, any untrue statement or alleged untrue statement of a material fact contained in any Offering Materials or any omission or alleged omission to state in the Offering Materials a material fact required to be stated therein or necessary to make the statements therein not misleading, and the Requesting Parties hereby (a) irrevocably release and forever discharge the NFL and the Affiliated NFL Parties from any Claims, in law or in equity, whether arising by statute or common law or otherwise, both direct and indirect, of whatever kind or nature (including without limitation claims arising under federal or state antitrust laws, fiduciary claims, claims for contribution or indemnification, or otherwise), which any of the Requesting Parties have had, now have or hereafter can, shall or may have that may arise out of or that are based in any way on any Offering Materials, and (b) covenant and agree not to bring any action or make any demand or initiate or participate in or support, directly or indirectly, any Claim against the NFL or any Affiliated NFL Parties, or any of them, in each case for or by reason of any matter, cause or thing arising out of or based in any way on the Offering Materials. The Requesting Parties specifically and expressly contemplate that the aforegoing release and covenant not to sue covers known and unknown claims for unknown as well as known damages, claims for anticipated and unanticipated damages, and claims for expected and unexpected consequences of both known and unknown damages. Each of the Requesting Parties and the NFL agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by any party hereto or any successor or assignee of any party on or with respect to the aforegoing release and covenant not to sue or which in any way relates, directly or indirectly, to the agreements of the parties or the matters described herein shall be tried only by a court and not by a jury. EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING

Requesting Parties
Page 7

       If the foregoing provisions are acceptable to each of you, please so indicate your acceptance by countersigning where indicated below and returning a signed and dated counterpart of this Supplemental Consent Letter to the NFL.

       Very truly yours,


       PAUL TAGLIABUE
       Commissioner




**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

Requesting Parties
Page 8

The undersigned hereby acknowledge and agree to the foregoing terms and conditions set forth above.

**WASHINGTON FOOTBALL, INC.**

By: _____
    Name: Daniel M. Snyder
    Title: President

**WFI GROUP, INC.**

By: _____
    Name: _____
    Title: _____

**PRO-FOOTBALL, INC.**

By: _____
    Name: Daniel M. Snyder
    Title: President

_____
Dwight Schar

_____
Robert Rothman

_____
Daniel M. Snyder

Requesting Parties
Page 9


_____

Fred Drasner