**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| ROBERT ROTHMAN, DWIGHT C. SCHAR, and FREDERICK W. SMITH,<br><br>        Plaintiffs,<br><br>        v.<br><br>DANIEL SNYDER,<br><br>        Defendant. | Case No. 8:20-cv-03290-PJM<br><br>Judge Peter J. Messitte<br><br>ORAL ARGUMENT SCHEDULED |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR LEAVE TO INTERVENE FOR THE PURPOSE OF OBTAINING
<u>PUBLIC ACCESS AND OPPOSING THE MOTION TO SEAL</u>**

**INTRODUCTION**

Plaintiffs have brought a facially overbroad motion to seal the entire record in this case in order to protect supposedly sensitive commercial information related to the proposed sale of their ownership stake in the Washington Football Team.  Nothing about this business dispute justifies the extraordinary step of withdrawing the entire record from the public eye.

Parties cannot overcome the strong presumption of public access to each judicial document unless they make a "*specific* and non-conclusory" showing of the prejudice that would result from disclosure of the document and explain why narrowly tailored alternatives are not possible.  *See Smith v. Westminster Mgmt., LLC*, 2018 WL 572867, at *4 (D. Md. Jan. 26, 2018) (emphasis added); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 266, 277 (4th Cir. 2014); L.R. 105.11.  Far from carrying that burden here, Plaintiffs and Defendant Snyder have made only general assertions that they are bound by private confidentiality agreements, and that disclosure may cause them unspecified competitive disadvantages.  Such generic arguments cannot support "*specific* findings . . . supporting closure" or the "rejections of less drastic alternatives."  *Doe*, 749 F.3d at 272 (emphasis added).  Indeed, the parties do not cite a single case in which a court actually granted a contested motion to seal the entire record.

Nor is sealing justified by the NFL and Defendant's separate arguments that this case belongs in arbitration.  To the contrary, "documents filed in connection to a Motion to Compel Arbitration or Dismiss are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment."  *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018).  Again, the parties do not cite a single case involving a contested motion to seal that says otherwise.  The relevant case law makes clear that if parties argue that a federal court lacks jurisdiction over a case that should be arbitrated, as Defendant

and the NFL have asserted here, the public has a clear right of access to the resulting decision and the documents supporting it. That is why federal courts regularly deny motions to seal pleadings and exhibits even when they send cases to arbitration.

For these reasons and others elaborated below, the Court should "expeditiously" unseal the record. *Doe*, 749 F.3d at 272. If the Court concludes that any sealing is appropriate, "it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* Even if the parties could point to some specific, protectable information in the record, they have failed to establish that it could not be addressed with narrowly tailored redactions rather than wholesale sealing.

## ARGUMENT

### I. THE POST'S MOTION TO INTERVENE SHOULD BE GRANTED.

The only contested issue on the Post's motion concerns whether the record should be unsealed. The parties do not challenge the Post's right to intervene in the first instance, nor could they. *See, e.g.*, *Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 Fed. App'x 123, 131 (4th Cir. 2001); L.R. 105.11. Thus, as a preliminary matter, the Court should grant the Post's motion to intervene in this case for the limited purpose of seeking public access, regardless of the Court's ultimate decision on the sealing issues.

### II. THE MOTION TO SEAL THE ENTIRE RECORD SHOULD BE DENIED.

#### A. The Public Has a Presumptive Common Law and First Amendment Right of Access to the Proceedings.

Plaintiffs alone contend that there is no "bright-line rule" affording the public access to complaints and motions for preliminary injunctions in all cases. Dkt. No. 51, at 6. But the Post never argued that there was. Instead, the First Amendment and the common law create a strong *presumption* of access that may be overcome—but only in "unusual circumstances." *Va. Dep't*

*of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004); Dkt. No. 39-1, at 4-7 (citing cases).  None of the cases cited by Plaintiffs holds otherwise.  *See* Dkt. No. 51, at 6.  In each of these cases—all of which involved uncontested motions—the court simply recognized that the parties had good cause for sealing limited portions of the record and went no further.  *See, e.g.*, *Wilson v. Thomas*, 2014 WL 7405462, at *4 (E.D.N.C. Dec. 23, 2014) (granting unopposed motion to seal "confidential medical information").  None questioned the fundamental premise that proceedings in federal court are presumptively open to the public and the press, a concept which is well-established in both Fourth Circuit precedent and the Local Rules.  *See, e.g.*, *Doe*, 749 F.3d at 272; L.R. 105.11.

> **B.    The Parties Failed To Meet Their Burden To Overcome the First Amendment or Common Law Presumption of Access.**
>
> > **1.    The Parties' Generic Allegations of Sensitive Business Information Cannot Defeat the Public's Right of Access.**

The parties argue that the presumption of public access may be overcome where sealing is "essential to preserve higher values," Dkt. No. 54, at 3, and contend that the Court should protect their "sensitive and confidential business information," *id.* at 7; *see also* Dkt. No. 51, at 5 (similar).  But this is not the type of "higher value" that would override the strong public interest in observing the proceedings of the federal courts.  As an initial matter, the parties have not cited a single case where the court sealed *the entire record* in deference to claims of commercial harm.  To the contrary, in the cases on which they rely, the court sealed a handful of exhibits or permitted the parties to make redactions that were narrowly tailored to prevent specific harms.  *See, e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560 (D. Md. 2012) (granting motion to seal exhibits containing sensitive personnel records and denying motion to seal other exhibits); *Jarvis v. FedEx Officer & Print Servs., Inc.*, 2011 WL 826796 (D. Md. Mar. 7, 2011) (sealing

3

single exhibit attached to each of two motions). Mr. Snyder, for his part, rightly acknowledges that wholesale sealing of the record is unwarranted in this case. *See* Dkt. No. 54, at 8.

Even a partial sealing of the record requires "rigorous justification," which the parties have not offered here. *See Doe*, 749 F.3d at 266. Although courts have allowed parties to redact some confidential business information, they have "limited" the scope of these redactions "to information specifically identified as containing either sensitive private information or, alternatively, trade secrets." *Graham v. Famous Dave's of Am., Inc.*, 2020 WL 5653231, at *17 (D. Md. Sept. 23, 2020). "Simply because information revealed or used in litigation is arguably detrimental to the financial or business interests of a party does not make that information 'sensitive' or a trade secret." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009). Rather, the party seeking to protect confidential business information must make a "specific and non-conclusory" showing of harm that would result from disclosure. *Smith*, 2018 WL 572867, at *4; *see* L.R. 105.11 (requiring "specific factual representations").

The parties fail to make such a showing here. Plaintiffs argue that wholesale sealing of the record is necessary because disclosing the mere "*existence*" of their proposed sale would place the deal at risk of "cancellation." Dkt. No. 2-3, at 5 (emphasis added); *see also* Dkt. No. 51, at 5 ("the *existence* of the Confidential Proposal . . . must be kept strictly confidential" (emphasis added)). But not only have Plaintiffs failed to make a specific factual showing to substantiate this speculative concern; the record demonstrates that it is unfounded. Their own brief in opposition to the Post's motion indicates that negotiations to sell their interest have continued even after the Post and other news media reported not just the existence, but also key details of, the transaction—including the proposed price. *See* Dkt. No. 51, at 9 (noting that Plaintiffs continue to pursue the sale); *see also Va. Dep't of State Police*, 386 F.3d at 575

(disclosure is favored when "the public has already had access to the information contained in the records").[1]  Even if Plaintiffs had credibly satisfied their burden (and they have not), their argument would at most justify sealing the materials only until the transaction is consummated or terminated, mooting the supposed threat.

Plaintiffs further argue that they are bound by a sweeping confidentiality agreement with their potential purchasers that supposedly covers the "entire subject matter of this action."  Dkt. No. 51, at 9.  But "it is well-established that parties cannot by agreement overcome the public's right of access to judicial records."  *Antech Diagnostics, Inc. v. Morwalk, Inc.*, 2013 WL 3353772, at *8 (D. Md. July 2, 2013) (denying motion to seal); *Callendar v. Anthes*, 2014 WL 1577787, at *9 (D. Md. Apr. 18, 2014) (collecting cases); *see also Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) (explaining that private confidentiality agreements do "not bind the court in any way"); *cf. Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002) (emphasizing that a confidentiality agreement does not give a party "any right to keep third parties from learning what this litigation is about").  The parties largely ignore the cases cited by the Post to this effect.  *See* Dkt. No. 39-1, at 9-10.[2]

---

[1] Plaintiffs cite out-of-circuit cases that supposedly support their position that information may remain sealed even if it has been leaked to the press.  These cases present much different factual circumstances and are not persuasive here.  *See In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 428 (9th Cir. 2011) (sealing the name of one of two priests accused of sexually assaulting children, notwithstanding "a small number of public disclosures," in light of the reputation-destroying nature of the allegations); *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1364-65 (N.D. Ga. 2002) (addressing leaks in dictum in case involving request to retroactively seal).  In addition, as one court in this District recently noted, when there is increased press attention on a case, the presumption of access is "logically strengthened" because the "public's desire to evaluate the Court's decisionmaking is likely augmented."  *Smith*, 2018 WL 572867, at *5.

[2] Defendant alone argues that the Post's cases are distinguishable, claiming that sealing may be justified "where the judicial proceedings are in their early stages when arbitration is compelled."  Dkt. No. 54, at 7.  But Defendant relies on a lone, unpersuasive case in which the court granted an uncontested motion to seal without substantial analysis or even a single citation.  *See Am.*

5

Rather than rely on generic references to confidentiality agreements, parties seeking permission to seal must in every case make a "specific and non-conclusory" showing of harm, *Smith*, 2018 WL 572867, at *4, that will enable the court to make its required independent determination as to whether to seal the records at issue, *Doe*, 749 F.3d at 272. In this case, Plaintiffs have failed to explain how their confidentiality agreement with the potential buyers could possibly justify shielding all facts and legal arguments from public view.

By its plain terms, the confidentiality agreement with the potential buyers bars Plaintiffs from disclosing the "terms" of the sale or "the fact that any discussions or negotiations are taking place." Dkt. No. 51, at 1-2. But the fact that Plaintiffs or their agreement say the information is confidential does not mean that the Court must simply take their word for it. *See, e.g.*, *Antech Diagnostics*, 2013 WL 3353772, at *8; *Bernsten*, 307 F. Supp. 3d at 168. And on closer scrutiny, the argument fails, for two reasons. First, the public is already aware of the "fact" of these negotiations, so Plaintiffs' interest in shielding anything other than specific deal terms is entirely moot. Second, Plaintiffs have not made a specific factual showing that disclosure of the "fact" of the negotiations, or any other specific information in the record, is *actually sensitive on its own terms*, that is, notwithstanding the confidentiality agreement, which is not binding on the Court. To take some examples, Plaintiffs have not made a showing that they would suffer "specific and non-conclusory" harm if the Court unsealed (1) the agreement Plaintiffs entered many years ago "upon acquiring their ownership interests," which the NFL claims should divest

---

*Bankers Ins. Co. of Fla. v. Nat'l Cas. Co.*, 2009 WL 257890, at *1 (E.D. Mich. Feb. 3, 2009). In contrast, and as discussed more fully below, abundant authority holds that the common law and First Amendment presumptions apply with equal force when motions to compel arbitration are pending. *See, e.g.*, *Bernsten*, 307 F. Supp. 3d at 168 (holding that "bargained-for confidentiality does not overcome the presumption of access to judicial documents" in connection with a motion to compel arbitration); *see also infra* Section II(B)(2).

6

the Court of jurisdiction over this dispute, Dkt. No. 47, at 1; (2) their longstanding contract with Mr. Snyder, which apparently gives rise to their contract claim; (3) their allegations regarding Mr. Snyder's alleged efforts to interfere with the Confidential Proposal, to which he is presumably not a party; or (4) the so-called Confidential Proposal, narrowly redacted, if necessary, for any truly protectable terms.[3]

This case is similar to *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 2012 WL 4497775 (N.D. Cal. Sept. 28, 2012), in which the NCAA moved to seal certain emails that reflected "non-public, high level internal discussion" of its licensing negotiations with certain business partners. *Id.* at *1. Although the NCAA represented in a declaration that these documents contained "extremely sensitive business information," the district court denied the motion to seal because the NCAA had failed "to show with particularity how it will be prejudiced" by giving "specific examples of the consequences of including these exhibits in the public record." *Id.* at *1, *3. So too here, the record is bereft of any meaningful information about how disclosure of *any* specific document, much less *every* single document, would cause a specific commercial injury.[4]

The motion to seal should be denied for the additional reason that the pleadings and exhibits Plaintiffs have moved to seal reflect "information and material at the heart of this

---

[3] Presumably, most provisions would be nothing more than ordinary business terms that are litigated on a daily basis in the federal courts. Plaintiffs do not identify any *specific* information in the Confidential Proposal that could harm them, or anyone else, if disclosed, beyond the "identify of the potential purchasers." Dkt. No. 51, at 8. But even where parties "wish to keep their identities private . . . such desires are not sufficient to overcome the presumption of access." *Smith*, 2018 WL 572867, at *6 (declining to grant motion to seal to protect the identities of individual LLC members). And, in any event, the names have already been reported.

[4] To the extent any such evidence of harm does exist, whether in the form of declarations or exhibits, these materials must be unsealed so that the Post has a fair opportunity to respond.

7

dispute." Dkt. No. 54, at 3. Although this Court has seen fit to protect information that is *both* commercially sensitive *and* "only tangentially related to the parties' dispute," *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 882 (D. Md. 2015), the "presumptive right to public observation is at its apogee when asserted with respect to documents relating to matters that directly affect an adjudication," *Bernsten*, 307 F. Supp. 3d at 167; *see also Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) ("we are not convinced . . . that the parties' interests in keeping the terms of their agreements confidential outweighs the public interest in access, particularly in light of the centrality of these documents to the adjudication of this case"). Thus, the parties' own representations about the importance of the pleadings and exhibits at issue provides reason enough to disclose them. *See* Dkt. No. 51, at 9 ("The entire subject matter of this action relates to the Confidential Proposal and the Confidential Negotiations.").[5]

### 2. The Dispute Regarding the Court's Jurisdiction Cannot Defeat the Public's Presumptive Right of Access.

The NFL and Defendant Snyder also argue that sealing is appropriate here because, in their view, the dispute should be arbitrated. *See* Dkt. No. 47, at 2-4; Dkt. No 54, at 5. They argue that the Court should decline to unseal documents unless and until it decides that it has jurisdiction to resolve the merits of the case. *Id.*

That is not the law. To the contrary, "documents filed in connection to a Motion to Compel Arbitration or Dismiss are judicial documents to which a presumption of immediate

---

[5] Plaintiffs try to analogize the Confidential Proposal here to the Memorandum of Terms in *Kantsevoy v. LumenR, LLC*, 2017 WL 11456498 (D. Md. Nov. 27, 2017), but the comparison is a poor one, for two reasons that were fundamental to the sealing decision in that case. First, the court emphasized that the Memorandum, unlike the Confidential Proposal, was "not of material importance to [its] disposition." *Id.* at *5. Second, the court held that the Memorandum contained "trade secrets," which are not present here. *Id.*

public access attaches under both the common law and the First Amendment." *Bernsten*, 307 F. Supp. 3d at 166; *see also, e.g.*, *Badinelli v. Tuxedo Club*, 2018 WL 6411275, at *1 (S.D.N.Y. Dec. 6, 2018) (rejecting plaintiff's motion "to seal this case's entire record, including the complaint and papers submitted in support and opposition to a motion to compel arbitration and dismiss or stay"). Indeed, courts regularly deny motions to seal even where they simultaneously *grant* motions to compel arbitration. *See, e.g.*, *Graham v. Santander Consumer USA, Inc.*, 2018 WL 2462881, at *6 (D. Md. June 1, 2018) (granting motion to compel arbitration but denying motion to seal without redaction); *Erichsen v. RBC Cap. Mkts.*, 883 F. Supp. 2d 562, 575 (E.D.N.C. 2012) (granting motion to compel arbitration, but denying motion to seal exhibits filed with motion); *Orlob-Radford v. Midland Funding LLC*, 2016 WL 5859002, at *9 (E.D. Wash. Oct. 5, 2016) (granting motion to compel arbitration, but denying motion to seal underlying contract and briefs related to the motion).

      The few cases cited by Defendant and the NFL in support of their argument are overstated and inapposite, for at least two reasons. First, they rely almost exclusively on cases where no litigant or third-party opposed the motion to seal. But the decisions in such uncontested cases "are not persuasive" here. *Minter*, 258 F.R.D. at 122; *see also Smith*, 2018 WL 572867, at *7 (distinguishing as unconvincing cases where "the motions to seal were unopposed"). For example, the lead case cited three times by Defendant concerned an uncontested motion to seal. *See Walker v. Gore*, 2008 WL 4649091, at *3 (S.D. Ind. Oct. 20, 2008). While the court did grant a provisional sealing order, it expressly cautioned that "*the news media might still seek disclosure of the complaint and exhibits*," and warned that if the

9

press sought access, "the court would not be bound by [its] decisions." *Id.* (emphasis added). That case, like the other uncontested cases, has no salience here.[6]

Second, *none* of the cases cited by either Defendant or the NFL supports wholesale sealing of the entire record on the basis that the underlying dispute may have to be arbitrated.

To the extent Defendant suggests that this is merely a "preliminary" or "advisory" proceeding, Dkt. No. 54, at 5, he is incorrect. *See, e.g.*, *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."). There is a live case or controversy before this Article III court concerning, among other issues, the fundamental question of whether the court has jurisdiction, or whether the dispute must be arbitrated. *Compare, e.g.*, Dkt. No. 52 (Memorandum of Law Regarding the NFL Commissioner's Exclusive Jurisdiction to Arbitrate the Parties' Dispute filed by National Football League), *with* Dkt. No. 50 (Plaintiffs' Response in Opposition).[7] The public's presumptive right of access extends to such pleadings and decisions. *See, e.g.*, *Smith*, 2018 WL 572867, at *4 ("[T]he Court

---

[6] The only other case cited by Defendant in support of its argument was also uncontested. *See Am. Bankers Ins. Co. of Fla.*, 2009 WL 257890, at *2. Similarly, the NFL cites only cases in which sealing was not seriously in dispute. The NFL argues that the court in *Barkley v. Pizza Hut of America, Inc.* granted a motion to seal arbitration awards, Dkt. No. 47, at 4, but ignores that "the parties agree[d]" to seal those awards. *See* 2015 WL 5915817, at *2, 4 (M.D. Fla. Oct. 8, 2015). The court also denied sealing with regard to multiple other documents, including an expert report that Pizza Hut argued contained its "proprietary, competitively sensitive and confidential information that, if disclosed, could allow [its] competitors to undercut it in the labor market." *Id*. Similarly, the motion to seal in *UBS Financial Services, Inc. v. Padussis*, was apparently contested only as to a single transcript, 127 F. Supp. 3d 483, 501 (D. Md. 2015), *aff'd*, 842 F.3d 336 (4th Cir. 2016), while the motion in *Century Indemnity* was entirely uncontested, *see Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 592 F. Supp. 2d 825, 827 (E.D. Pa. 2009).

[7] These briefs are not public, but should be. And it is apparent from both the descriptions of the briefs on the public docket sheet as well as the public briefing on this motion that there is a jurisdictional dispute. *See, e.g.*, Dkt. No. 47, at 2.

10

can see no reason why the public's interest in judging the decisions made by this, or any, Court, would not extend to its decision whether jurisdiction is proper."); *see also Bernsten*, 307 F. Supp. 3d at 166. Indeed, "decisions on motions to compel arbitration *rate high on the presumption continuum*" for access. *Badinelli*, 2018 WL 6411275, at *1 (emphasis added).

Finally, the theory articulated by Defendant and the NFL fails for another reason: they do not explain how the Court could render a dispositive jurisdictional holding in their favor without construing the very documents that they attempt to shield. "When this Court issues its Opinion on [the jurisdictional] Motion, the public deserves to see what judicial document it relied on." *Bernsten*, 307 F. Supp. 3d at 167 (citing cases); *see also id.* at 169 ("a complete reading of the Agreements is necessary for the very adjudication [defendant] seeks: compelling arbitration and/or dismissing the Complaint"); *Sky Angel U.S., LLC*, 2013 WL 3465352, at *10 (declining to seal "the contract that is at the heart of this lawsuit"). Relatedly, if the Court agrees with the Defendant and the NFL that it lacks jurisdiction to resolve the dispute, that holding will be dispositive. And the Fourth Circuit has long recognized that there is a First Amendment right of access to "materials made part of a dispositive motion in civil cases." *Minter*, 258 F.R.D. at 121 (citing cases).

In sum, cases involving motions to compel arbitration or related jurisdictional disputes are not exempt from the public's common law and First Amendment rights of access. And in cases like this one where sealing is actually contested, the case law squarely supports access.

### C. The Judicial Records Must Be Considered Individually, and Should Be Unsealed.

Before a court can grant a motion to seal any document in the record, "it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Doe*, 749 F.3d at 272; *see also* L.R. 105.11. Because the presumptive right of

access applies to each judicial record, the court must "review the documents individually." *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) (holding that it was "legal error" for the district court to make only "generalized statements about the record as a whole").

Here, the parties make essentially no specific arguments about the dozens of individual documents that they are trying to seal. They do not provide the Court with any argument that could support "specific findings" required for sealing each of these documents.

### 1. The Complaint Should Be Unsealed.

The parties do not cite a single contested case in which a court allowed the relief they request here—total sealing of the complaint. Plaintiffs cite authority for the proposition that courts will occasionally allow "*portions* of complaints and preliminary injunctions to remain under seal." Dkt. No. 51, at 6 (emphasis added). But their extreme motion to seal is not so limited; they assert that the "*entire record* should remain under seal." *Id.* (emphasis added). It is clear on the face of their brief that Plaintiffs have no authority to support that blanket request.[8]

The parties also fail to identify cases suggesting that the public lacks a presumptive First Amendment right of access to a complaint. They simply ignore the substantial authority cited by the Post recognizing that such a right exists. *See* Dkt. No. 39-1, at 8-9. And Plaintiffs' argument that courts may permit limited redactions is entirely consistent with this presumption.

Nowhere in any of the parties' briefing is there any "*specific* factual representation" concerning the *specific* allegations in the complaint that they wish to keep under seal, much less a coherent explanation for why the Court should take the unprecedented step of withholding the

---

[8] In addition, the only case Plaintiffs rely on in support of their argument that even *portions* of complaints can be sealed was an inapposite dispute among three pro se parties, with no substantial sealing analysis. *See N.C. Supported Emp. v. N.C. Dep't of Health & Human Servs.*, 2010 WL 4696556, at *7 (E.D.N.C. Nov. 12, 2010). Nothing in the opinion suggests that the motion to seal was contested in that case, either.

entire complaint from public view. It cannot be the case that every allegation in the complaint, from the jurisdictional allegations to those describing Defendant's purported interference with the sale of the minority shares, must remain under seal. *See, e.g.*, *Badinelli*, 2018 WL 6411275, at *1 (denying motion to seal "the entire record, including the complaint," notwithstanding a confidentiality agreement,); *Callendar*, 2014 WL 1577787, at *9 (denying motion to seal counterclaims, third-party complaint, and answer, despite argument that the allegations contained therein would violate NDA).[9]

### 2. The TRO Briefing Should Be Unsealed.

The Post argued at length that the public has a First Amendment right of access to briefing on the motion for preliminary injunction. *See* Dkt. No. 39-1, at 12-13 (citing cases). The parties do not engage any of this authority. Plaintiffs, again, admit that their cases stand only for the proposition that "*portions* of . . . the preliminary injunction[]" filings could remain under seal. *See* Dkt. No. 51, at 6-7 (emphasis added).[10] Again, the Plaintiffs' own brief makes clear that there is no authority for the blanket sealing they seek. And the NFL and Defendant do not dispute that a First Amendment presumption generally exists for access to such materials.

---

[9] As one court noted in unsealing a complaint in similar circumstances, "[i]t is ironic that plaintiff is fighting to avoid arbitration (where it would be free to keep the dispute private) and yet is insisting in this court on keeping all information hidden, even to the point of violating a court order. This complete secrecy has no place in federal court and must end." *Promega Corp. v. Max-Planck-Gesellschaft zur Forderung der Wiessenscaften E.V.*, 2010 WL 4683713, at *6 (W.D. Wis. Nov. 20, 2010). The court also ordered that "if the parties wish to file anything under seal in the future, the sealed document must be accompanied by a redacted, unsealed version." *Id.*

[10] Both of Plaintiffs' cases supporting even partial sealing involved uncontested motions, and offer no substantive analysis. *See Brightview Grp., LP v. Teeters*, 2020 WL 4808869, at *1 (D. Md. Feb. 7, 2020); *Wilson v. Thomas*, 2014 WL 7405462, at *4 (E.D.N.C. Dec. 23, 2014).

The parties fail to make any specific factual representations that could overcome the First Amendment right of access to the injunction materials. The docket makes clear that the parties submitted not only memoranda, but also multiple declarations and several dozen exhibits in support. *See, e.g.*, Dkt. No. 9 (motion with multiple declarations and 13 exhibits), Dkt. No. 12 (additional exhibit), Dkt. Nos. 26-27 (declaration with 19 exhibits). The parties do not attempt to justify sealing these individual filings in any specific way. Their generic arguments that the filings contain commercially sensitive information[11] are nothing more than "generalized statements about the record as a whole" that cannot support sealing as a matter of law. *Brown*, 929 F.3d at 48; *see also Doe*, 749 F.3d at 272; *Minter*, 258 F.R.D. at 120-123. Because the parties have not "offered the requisite specific factual representations justifying secrecy," the injunction materials should be unsealed. *Allstate Ins. Co. v. Warns*, 2012 WL 681792, at *18 (D. Md. Feb. 29, 2012) (holding that movant could not overcome First Amendment presumption that preliminary injunction materials should be unsealed).[12]

---

[11] Plaintiffs broadly argue that "The Complaint, the preliminary injunction motion, and supporting documents filed in connection with the preliminary injunction motion contain or reflect details about the Confidential Proposal and Confidential Negotiations that have not been disclosed publicly." Dkt. No. 51, at 7. The NFL argues only that "in opposing plaintiffs' request for an injunction, defendant has also submitted (albeit under seal) additional materials that are also the subject of proceedings in the private arbitration." Dkt. No. 47, at 6. Defendant does not specifically discuss the preliminary injunction filings.

[12] The Post appreciates that the Court has unsealed "a docket sheet describing the nature of the filings." Dkt. No. 44. The Post notes, however, that many of the filings remain unidentified on the docket sheet. Specifically, the voluminous attachments to the parties' briefing on the TRO in particular are masked behind generic names (e.g., Dkt. No. 27-1, i.e., "Exhibit 2"). Without further disclosure, the Post and public are unable to effectively assert arguments about why the individual documents should be unsealed. *See* Dkt. No. 39-1, at 11-12.

### 3. The Jurisdictional Briefing Should Be Unsealed.

At the time the Post filed its motion to intervene, the docket remained under seal and the Post had no knowledge that the NFL was itself contesting jurisdiction. But there can be little doubt that briefing by the NFL (Dkt. No. 44) and the parties (Dkt. Nos. 50, 53) respecting the Court's power to hear the case are the type of pleadings to which a presumptive First Amendment right of access applies. *See United States v. Applebaum (In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d))*, 707 F.3d 283, 290 (4th Cir. 2013) (defining "judicial documents" as those which "play a role in the adjudicative process, or adjudicate substantive rights"). The parties do not make "specific factual representations" about why these briefs must remain under seal, or why they could not be redacted.

### 4. Other Documents Should Be Unsealed.

The parties' briefs do not address numerous other filings on the court's docket, which plainly should not be sealed, either. These include, for instance, even facially benign documents like notices of appearance and motions to appear pro hac vice. *See, e.g.*, Dkt. Nos. 3-7, 18-20, 29, 34. The Post doubts that the parties actually believe such filings must be held under seal. But Plaintiffs' failure to exclude them from its wholesale sealing request is further evidence that the request is not narrowly tailored.

### D. Plaintiffs Fail To Carry Their Burden To Show that Narrowly Tailored Redactions Are Inadequate.

As a matter of the First Amendment, Fourth Circuit procedure, and the Local Rules, Plaintiffs bear the burden to establish that "less drastic alternatives" to total closure are not feasible here. *Doe*, 749 F.3d at 272; L.R. 105.11. Plaintiffs devote less than a page of their brief to addressing this critical point, as they did in their initial motion to seal. And their lone argument—that "discussion of confidential information is pervasive and cannot be practicably

redacted"—is conclusory and supported by no case law. Dkt. No. 51, at 9. It is nothing more than a "generalized statement[] about the record as a whole" that cannot support sealing as a matter of law. *See, e.g.*, *Brown*, 929 F.3d at 48.

Plaintiffs have not made a serious effort to show that every document in the record must be fully sealed and cannot be redacted. The Post respectfully submits that it would be impossible to make such a showing. And Defendant himself acknowledges that narrowly tailored redactions would be feasible here. *See* Dkt. No. 54, at 8-9.

### III. THE COURT SHOULD UNSEAL THE RECORDS "EXPEDITIOUSLY."

The Court "must make on-the-record findings . . . and act on a sealing request as expeditiously as possible." *Doe*, 749 F.3d at 272-73; *see also Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d Cir. 2006) (holding that the district court erred "in failing to act expeditiously"); Dkt. No. 33-1. The Fourth Circuit has "emphasize[d] the public and press generally have a *contemporaneous* right of access to court documents and proceedings when the right applies," because "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment." *Doe*, 749 F.3d at 272 (emphasis added).

Here, the NFL argues that "if some documents . . . may need to be unsealed," then the Court should give the parties an *additional* opportunity to make a document-by-document showing. Dkt. No. 47, at 6. The NFL cites no authority to support its view that litigants should get multiple attempts to meet their burden. The two-step proposal is irreconcilable with the clear mandate for expeditious review, required by the First Amendment, Fourth Circuit procedure, and the Local Rules. *See Doe*, 749 F.3d at 272; L.R. 105.11 (movant must make "specific factual representations to justify the sealing" *in the motion to seal*).

## CONCLUSION

For the foregoing reasons, this Court should grant the Post's motion to intervene and deny the pending motion to seal.

Dated:  December 4, 2020	Respectfully submitted,

  /s/ Thomas G. Hentoff
Thomas G. Hentoff (Bar No. 11384)
Nicholas G. Gamse (*pro hac vice*)
Katherine Moran Meeks (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Phone:  (202) 434-5000
Fax:  (202) 434-5029
thentoff@wc.com
ngamse@wc.com
kmeeks@wc.com

*Attorneys for WP Company LLC d/b/a The Washington Post*

## CERTIFICATE OF SERVICE

      I, Thomas G. Hentoff, hereby certify that on December 4, 2020, I electronically filed the foregoing Reply in Support of the Motion for Leave to Intervene for the Purpose of Obtaining Public Access and Opposing the Motion to Seal by CM/ECF.  As required by Federal Rule of Civil Procedure 5(a), all parties required to be served have been served.

                                                 /s/ Thomas G. Hentoff
                                                 *Counsel for Intervenor WP Company LLC d/b/a*
                                                 *The Washington Post*