UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

ROBERT ROTHMAN, et al.,

                Plaintiffs,

   -against-

DANIEL SNYDER,

                Defendant.

**FILED UNDER SEAL**

Case No. PJM-20-3290

**FIRST SUPPLEMENTAL DECLARATION OF DANIEL M. SNYDER
IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION
CONCERNING VIOLATION OF THE COURT'S NOVEMBER 19, 2020 ORDER**

I, Daniel M. Snyder, declare as follows:

1. I respectfully submit this first supplemental declaration in opposition to Plaintiffs' Emergency Motion Concerning Violation of the Court's November 19, 2020 Order.

2. I am the Chairman and Principal Owner of Washington Football, Inc. ("WFI"). I provide this Declaration based on personal knowledge and would testify to the facts set forth herein if called upon to do so.

3. Plaintiffs submitted a supplemental filing yesterday in further support of their motion. Plaintiffs' supplemental filing is irrelevant to this proceeding, which has to do with the sale of minority interests, and not directly tied to their request for sanctions resulting from leaks of business negotiations. *See* Pls.' Notice of Supp. Authority in Support of Pls.' Mot. Concerning Violation of the Court's November 19, 2020 Order (Dkt. No. 77). I understand Plaintiffs failed to provide us with an opportunity to comment on redactions before filing, which would have provided an opportunity for me to object to the publication of such irrelevant and spurious material.

4. This morning, after I submitted my declaration, I learned of an article in *The Washington Post* that quoted statements from Plaintiffs' supplemental filing yesterday. A true and correct copy of *The Washington Post* article entitled "Washington Football Team Settled Sexual Misconduct Claim Against Daniel Snyder For $1.6 Million" written by Will Hobson, Beth Reinhard and Liz Clarke is attached as **Exhibit A** hereto.

5. *The Post*'s article includes several quotes from the filing that improperly give the misleading impression, based on Plaintiffs' position and status, that there was merit to the allegations of misconduct. Plaintiffs' purpose in submitting their supplemental filing is now clear: to try to continue to smear me in an effort to gain leverage in this business dispute.

6. As stated in my filings to this Court, I have been the subject of an extortion campaign by Plaintiff Dwight Schar based on the threat of leaking information about the meritless allegations for which, despite his knowledge that no evidence of wrongdoing was found after an investigation by a well-respected law firm, Plaintiff Schar nevertheless threatened to reveal to discredit me and embarrass my family, but which the insurance carrier decided to settle.

7. The extortion campaign started after the Plaintiffs filed their demand for arbitration. On July 5, 2020, the Washington Post began publishing articles concerning the Washington Football Team (the "Team") that characterized the Team and me personally in a negative manner.

8. The derogatory nature of *The Washington Post's* coverage escalated in its July 16, 2020 article, and has expanded in volume and scope thereafter.

9. I was not the source for any of the information in the July 5 or July 16, 2020 *Post* articles, or at any time thereafter, either directly or indirectly.

10. Discovery obtained by my lawyers in proceedings related to my defamation lawsuit against a global misinformation media site, MEAWW, and others in India has revealed that at least Dwight Schar has funneled information about me and the Team to Mary Ellen Blair, a former Executive Assistant with the Team, to be provided to *The Washington Post*.

11. In a declaration provided by Ms. Blair, she states that Mr. Schar told me to share information with *The Washington Post*.

12. Ms. Blair also states in the same affidavit that Mr. Schar's daughter bought her a "burner phone" in order to attempt to escape detection of Mr. Schar's conspiratorial communications. This is demonstrated by numerous calls from the burner phone to Mr. Schar's cell phone number.

13. Ms. Blair's affidavit and the text messages evidencing Mr. Schar's scheme have

been filed in court in India as part of my defamation claim, and have been published in full in several Indian legal periodicals, beginning on December 15, 2020.

14. This is far from the only instance in which I have been extorted by Mr. Schar and others associated with him about this meritless allegation. For the past 5 months, there have been repeated threats by Mr. Schar and others associated with him.

15. Mr. Schar threatened my personal attorney in a conversation on July 25, telling him that the threat he has been seeking to hold over me would come out if I didn't "just sell the team"; that I "won't have a choice"; that the story "will kill Dan"; and that I "will suffer a horrible existence".

16. Thereafter, the minority owners' investment banker John Moag threatened me with the exact same things by text message, saying: "If you continue your game, you know what I know and what I have never spoken about. And you know it has nothing to do with the media shit…it's the more serious shit. If you want a shit show, we are on for that too." Mr. Moag's attorney threatened one of my attorneys with the same threat.

17. In the face of all of these extortionate threats, I have always abided by all confidentiality obligations imposed on me, including by litigating issues with Mr. Schar and the other minority owners of the Team in a confidential NFL arbitration, rather than in this Court.

18. I am fighting on multiple fronts for interests that go beyond just me, including for the Team that I love, as well as my family, and can swear to this Court that the accusations I improperly leaked information to the press are false.

19. I firmly believe that Plaintiffs' motion and supplemental filing and the news articles that they have generated are the latest in the effort to extort me.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is correct and true.

Dated: December 22, 2020

                                 Daniel M. Snyder

1

# Washington Football Team settled sexual misconduct claim against Daniel Snyder for $1.6 million

By Will Hobson, Beth Reinhard and Liz Clarke
Dec. 22, 2020 at 1:58 p.m. GMT

The Washington Football Team paid a female former employee $1.6 million as part of a confidential settlement in 2009, according to a copy of the agreement reviewed by The Washington Post. The settlement was struck after the woman accused team owner Daniel Snyder of sexual misconduct, a person familiar with the matter said.

The alleged incident occurred on Snyder's private plane on a flight returning from the Academy of Country Music Awards in Las Vegas, said the person, who was not authorized to discuss the matter and spoke on the condition of anonymity. In court records filed Monday as part of an ongoing feud among the team's owners, Snyder's business partners referenced the woman's allegation, calling it "a serious accusation of sexual misconduct."

The revelation of a seven-figure settlement involving Snyder comes as the NFL conducts an investigation into sexual harassment inside the organization he has owned since 1999.

Key details of the agreement reviewed by The Post align with a settlement that surfaced during the NFL's investigation, and that the team's lawyers are fighting in federal court to keep under wraps.

Snyder and the team declined to comment or answer any questions about the settlement or allegations. NFL spokesman Brian McCarthy declined a request for comment about whether it was aware of this settlement or any related allegations.

The female employee made "certain allegations" in April 2009, according to a copy of the agreement, and was later fired. The agreement, which was signed on July 22 of that year by an attorney on behalf of Snyder and two other team executives, did not describe the nature of the allegations. In the agreement, neither Snyder nor the team acknowledged any wrongdoing.

Though the woman had been terminated for cause, she and the team agreed that her personnel file would be changed to show that she voluntarily resigned. The team also provided the woman with a letter of recommendation, signed by Mitch Gershman, then the team's chief operating officer, which described her as "well-respected by her colleagues here at The Washington Redskins and around the NFL" and said she "will be an asset to another organization."

The former employee did not respond to requests for comment, and her husband declined to comment this summer. Her attorney, Brendan Sullivan, declined to comment on Sunday. The Post is not identifying the woman because she is an alleged victim of sexual misconduct. Gershman did not respond to a request for comment.

Following a July report by The Post in which 15 women said they were sexually harassed while working for the team, Snyder hired D.C. attorney Beth Wilkinson to investigate. A month later, another 25 women made similar claims in another Post report, which also described lewd videos produced by the team from outtakes of cheerleader calendar shoots in 2008 and 2010.

EXHIBIT A

In a series of public statements, Snyder has denied knowledge of the existence of the lewd cheerleader videos and pledged to address problems in his team's workplace culture.

In August, the NFL assumed oversight of Wilkinson's probe.

She was scheduled to interview Snyder as part of the probe on Nov. 18, she said in a court filing.

On Nov. 9, David Donovan, the team's former general counsel, sued Wilkinson in an effort to stop her from disclosing information relating to a confidential settlement from 2009. Donovan dropped the case, but after a judge ruled that some documents should be made public, lawyers for the team intervened to propose redactions that would keep details of the settlement private.

It is unclear from the scant records made public whether this is the same settlement agreement reviewed by The Post, but Sullivan, the attorney for the woman who accused Snyder of misconduct in 2009, also is involved in the case prompted by Donovan's lawsuit. Sullivan submitted an affidavit in support of Wilkinson, court records show.

Court records in Donovan's lawsuit describe that settlement as involving five parties, and the settlement reviewed by The Post also has five parties: the woman, Snyder, the team, Donovan and Gershman. Donovan led the team's investigation into the woman's allegations that preceded the settlement The Post reviewed, according to the person familiar with the matter.

Lawyers for Wilkinson, Donovan, and the team are in ongoing negotiations over redactions to documents that eventually will be made public as part of that lawsuit, according to court records. A judge in that case has given the parties until Jan. 5 to come to an agreement. Last week, lawyers for The Post asked a judge to allow the newspaper to intervene in the case, arguing that "any redactions should be minimal," court records show.

In court filings, Wilkinson's lawyers have urged a judge to permit the release of documents relating to the settlement "so the public can understand what [Donovan] is trying to accomplish through this lawsuit and how it relates to the investigation writ-large."

Donovan declined to comment. Wilkinson did not respond to requests for comment and her attorney, Thomas Connolly, declined to comment.

The 2009 agreement reviewed by The Post was signed by Howard Shapiro, an attorney for Snyder; Gershman; and Donovan. Shapiro declined to comment. The agreement also released from any liability the owner of the Academy of Country Music Awards, Dick Clark Productions, which was then owned by an investment group including Snyder.

In a court filing on Monday, attorneys for the minority owners accused "Mr. Snyder or his agents" of being the sources of information that was the basis for a story published Saturday by the New York Times. Adam Van Grack, an attorney for minority owners Robert Rothman, Frederick Smith and Dwight Schar, declined to comment.

In that story, which focused on the escalating tensions between Snyder and the three owners seeking to sell their minority shares, the Times reported that in the wake of investigations by the team and an outside law firm into 2009 allegations, "The team fired the woman because it said she lied to the team's lawyers."

The story said the financial settlement that year was reached to avoid any potential negative publicity if the woman sued Snyder. The amount of the settlement was not specified.

In a court filing Monday, the minority owners said, "This self-serving and one-sided framing of a serious accusation of sexual misconduct against Mr. Snyder, which depicts the victim as someone who 'lied' and portrays the settlement solely as a payment 'to avoid negative publicity if the woman sued,' further confirms that Mr. Snyder or his agents are the source of the leaks of confidential information."

*Julie Tate and Alice Crites contributed.*